**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
COLONIAL BANK,

               *Plaintiff*,

       v.

CHASE MORTGAGE FINANCE CORP.;
JPMORGAN CHASE & CO.; J.P. MORGAN
SECURITIES LLC; CITICORP MORTGAGE
SECURITIES, INC.; CITIMORTGAGE, INC.;
CITIGROUP GLOBAL MARKETS INC.; FIRST
HORIZON ASSET SECURITIES INC.; FIRST
HORIZON HOME LOAN CORPORATION;
ALLY SECURITIES LLC; CREDIT SUISSE
SECURITIES (USA) LLC; DEUTSCHE BANK
SECURITIES INC.; FTN FINANCIAL
SECURITIES CORP.; HSBC SECURITIES
(USA) INC.; MERRILL LYNCH, PIERCE,
FENNER & SMITH INC.; RBS SECURITIES
INC.; UBS SECURITIES LLC; and WELLS
FARGO ASSET SECURITIES CORPORATION,

               *Defendants*.

No. 12 Civ. 6166 (LLS) (MHD)

---

**JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 3

DISCUSSION .......................................................................................................................... 6

I.  THE FDIC EXTENDER STATUTE ALTERS ONLY STATUTES OF
    LIMITATIONS, NOT STATUTES OF REPOSE ............................................................. 6

    A.  The Plain Text of the FDIC Extender Statute Alters Only Statutes of
        Limitations, not Statutes of Repose ......................................................................... 8

    B.  Congress' Understanding of the Distinctions Between Statutes of
        Limitations and of Repose Further Demonstrates that the FDIC Extender
        Statute Alters Only Statutes of Limitations, not Statutes of Repose ..................... 11

    C.  FIRREA's Structure and Purpose Further Demonstrate that the FDIC
        Extender Statute Alters Only Statutes of Limitations, not Statutes of Repose ...... 13

II.  *WALDBURGER* ABROGATES THE SECOND CIRCUIT'S RULING IN *UBS* ............ 16

III.  IF THE COURT DOES NOT GRANT JUDGMENT ON THE PLEADINGS, THE
      ISSUE SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL ........................ 20

CONLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*,
  2004 WL 1926322 (N.D. Tex. Aug. 27, 2004) ........................................................ 9

*Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*,
  419 F.3d 355 (5th Cir. 2005) ........................................................................... 5, 8

*CTS Corp. v. Waldburger*,
  134 S. Ct. 2175 (2014) ................................................................................ *passim*

*Dodds v. Cigna Sec. Inc.*,
  12 F.3d 346 (2d Cir. 1993) .................................................................................. 3

*FDIC v. Deglau*,
  207 F.3d 153 (3d Cir. 2000) .............................................................................. 19

*Federal Housing Finance Agency v. UBS Americas, Inc.*,
  712 F.3d 136 (2d Cir. 2013) ......................................................................... *passim*

*Federal Housing Finance Agency v. Countrywide Fin. Corp.*,
  900 F. Supp. 2d 1055 (C.D. Cal. 2012) ............................................................... 8, 9

*Goad v. Celotex Corp.*,
  831 F.2d 508 (4th Cir. 1987) ...................................................................... 6, 11, 14

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  966 F. Supp. 2d 1031 (C.D. Cal. 2013) ............................................................. 11, 13

*In re Lehman Bros. Sec. & ERISA Litig.*,
  800 F. Supp. 2d 477 (S.D.N.Y. Apr. 13, 2011) ......................................................... 6

*In re S. African Apartheid Litig.*,
  2014 WL 1569423 (S.D.N.Y. Apr. 17, 2014) .......................................................... 16

*Investment Co. of the Sw. v. Reese*,
  875 P.2d 1086 (N.M. 1994) ............................................................................... 14

*Kennedy v. United States Veterans Admin.*,
  2011 WL 6296732 (S.D. Ohio Dec. 16, 2011) .......................................................... 8

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350 (1991) .......................................................................................... 1

*Lawrence v. Chater*,
  516 U.S. 163 (1996) .......................................................................................... 6

*McDonald v. Sun Oil Co.*,
   548 F.3d 774 (9th Cir. 2008) ............................................................................... 5, 9

*Morton v. Mancari*,
   417 U.S. 535 (1974) ............................................................................................ 19

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
   551 U.S. 644 (2007) ............................................................................................ 19

*NCUA v. RBS Sec. Inc.*,
   900 F. Supp. 2d 1222 (D. Kan. 2012) .............................................................. 8, 22

*Nomura Home Equity Loan v. National Credit Union Administration*,
   727 F.3d 1246 (10th Cir. 2013) ............................................................. 2, 5, 8, 19

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79 (1994) ......................................................................................... 18, 19

*P. Stolz Family P'ship L.P. v. Daum*,
   355 F.3d 92 (2d Cir. 2004) ........................................................................ 1, 3, 6, 10

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) .............................................................................. 7, 15

*Resolution Trust Corp. v. Olson*,
   768 F. Supp. 283 (D. Ariz. 1991) ........................................................................ 8

*City of Pontiac Gen. Empls.' Ret. Sys. v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011) ................................................................................. 7

*Rosenberg v. Town of N. Bergen*,
   293 A.2d 662 (N.J. 1972) ...................................................................................... 6

*Sikhs for Justice v. Indian Nat. Cong. Party*,
   2014 WL 1683798 (S.D.N.Y. Apr. 25, 2014) .................................................... 16

*Stuart v. Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998) ................................................................................. 7

*Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*,
   288 F.3d 405 (9th Cir. 2002) .......................................................................... 7, 15

*Waldburger v. CTS Corp.*,
   723 F.3d 434 (4th Cir. 2013) .............................................................................. 18

*Wellons v. Hall*,
   558 U.S. 220 (2010) ......................................................................................... 2, 6

## STATUTES AND REGULATIONS

11 U.S.C. § 108 ..................................................................................................... 13

12 U.S.C. § 1787 ..................................................................................................... 5

12 U.S.C. § 1821 ..................................................................................................*passim*

12 U.S.C. § 4617 ...................................................................................................5, 16

15 U.S.C. 77m .......................................................................................................1, 3

28 U.S.C. § 1292 ...................................................................................................3, 20

42 U.S.C. § 9658 ........................................................................................................2

17 CFR § 230.430B ....................................................................................................3

### Legislative Materials

131 Cong. Rec. E2249-02 (May 16, 1985) ..............................................................11

131 Cong. Rec. S10274-02 (July 29, 1985) ............................................................11

132 Cong. Rec. H2275-01 (Apr. 30, 1986) .............................................................12

132 Cong. Rec. S13235-01 (Sept. 22, 1986) ..........................................................12

132 Cong. Rec. S5764-01 (May 12, 1986) .............................................................12

133 Cong. Rec. E218-01 (Jan. 22, 1987) ...............................................................12

133 Cong. Rec. E3145-02 (July 29, 1987) ..............................................................12

133 Cong. Rec. E930-03 (Mar. 12, 1987) ..............................................................12

134 Cong. Rec. S14587-02 (Oct. 5, 1988) .........................................................12, 13

135 Cong. Rec. E2243-01 (June 21, 1989) .............................................................13

135 Cong. Rec. E73-03 (Jan. 3, 1989) ...................................................................12

135 Cong. Rec. S5057-02 (May 9, 1989) ...............................................................13

## PRELIMINARY STATEMENT

The Federal Deposit Insurance Corporation ("FDIC"), as receiver for Colonial Bank, brought this suit under the Securities Act of 1933 (the "1933 Act") in late 2012 – more than three years after the securities at issue were offered to the public in 2006 and 2007.  The FDIC's claims, therefore, are time-barred under the "absolute" three-year statute of repose contained in Section 13 of the 1933 Act, 15 U.S.C. § 77m.  *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 103 (2d Cir. 2004).[1]  The three-year repose period constitutes "an absolute limitation [that] applies whether or not the investor could have discovered the violation."  *Id.*; *see also Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) ("The 3-year limit is a period of repose inconsistent with tolling.").

The FDIC contends that the so-called "FDIC Extender Statute," 12 U.S.C. § 1821(d)(14), enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), saves its claims by supplanting Section 13's three-year repose period.  The FDIC Extender Statute, however, by its express terms, alters only the "statute of *limitations*" applicable to certain claims by the FDIC.  12 U.S.C. § 1821(d)(14).  The FDIC Extender Statute does not alter, or even mention, any applicable statute of *repose*, which, "[u]nlike a statute of limitations, . . . is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit."  *P. Stolz*, 355 F.3d at 102.  When a statute on its face displaces the "statute of limitations" and nothing more, that is what it does and nothing more; it need only be applied as written.

The Supreme Court's decision last month in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) ("*Waldburger*"), addressed this very issue in the context of a similar extender provision contained in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), which, like the FDIC Extender Statute, alters the "statute of limitations during which a civil action [under state law] may be brought" but says nothing about statutes of repose.

---

[1] Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted unless otherwise indicated.

42 U.S.C. § 9658(b)(2).  The Supreme Court explained that, although "[s]tatutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts[,] . . . the time periods specified are measured from different points, . . . and the statutes seek to attain different purposes and objectives."  *Waldburger*, 134 S. Ct. at 2182.  Accordingly, the Supreme Court held that the CERCLA extender statute means what it says – it applies only to statutes of limitations, not statutes of repose, consistent with the text and structure of that statute.

The Supreme Court's holding necessarily overturns the reasoning of earlier lower court decisions, such as *Federal Housing Finance Agency v. UBS Americas, Inc.*, 712 F.3d 136 (2d Cir. 2013) ("*UBS*"), that had concluded that extender statutes referring only to a "statute of limitations" should be read to displace statutes of repose.  Indeed, just one week after deciding *Waldburger*, the Supreme Court confronted the petition for writ of *certiorari* in *Nomura Home Equity Loan v. National Credit Union Administration*, which squarely presented the question of whether an extender statute contained in FIRREA – just like the FDIC Extender Statute at issue here – displaces the three-year statute of repose contained in Section 13 of the 1933 Act.  *Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin.*, _ S. Ct. _, 2014 WL 2675836, at *1 (June 16, 2014).  The Court granted *certiorari*, summarily vacated the Tenth Circuit's decision holding that the extender statute in that case displaced Section 13, and remanded "for further consideration in light of *CTS Corp. v. Waldburger*."  *Id*.  The Court's decision to grant *certiorari*, vacate, and remand reflects its conclusion that there is a "reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration."  *Wellons v. Hall*, 558 U.S. 220, 225 (2010).

For the reasons discussed below, *Waldburger* makes clear that the FDIC Extender Statute likewise does not displace Section 13's absolute three-year repose period.  To the extent *UBS* may be read to the contrary, that decision is no longer good law in light of *Waldburger.*  Consequently, judgment should be entered in favor of Defendants.  If, however, the Court determines that it is bound by *UBS* notwithstanding the Supreme Court's *Waldburger* decision, Defendants request

that the Court certify the issue for immediate appeal under 28 U.S.C. § 1292(b) so that the Second Circuit, like the Tenth, may have the opportunity to reconsider the issue in light of *Waldburger*. Such an appeal would permit the issue to be resolved definitively before the Court, the parties, and numerous third parties expend substantial additional resources on further litigation of this case.

## BACKGROUND

Section 13 of the 1933 Act provides the applicable limitations and repose periods for claims under Sections 11 and 15 of the Act.  *See* 15 U.S.C. § 77m (prescribing periods for Section 11 claims); *Dodds v. Cigna Sec. Inc.*, 12 F.3d 346, 349 n.1 (2d Cir. 1993) ("Since Section 15 merely creates a derivative liability for violations of Sections 11 and 12, Section 13 applies to it as well.").  Section 13 first sets forth a one-year statute of *limitations* running from actual or constructive "discovery of the untrue statement or omission."  15 U.S.C. § 77m.  It then imposes a three-year statute of *repose*, providing that "[i]n no event shall any action be brought to enforce a liability created under section [11] . . . more than three years after the security was bona fide offered to the public."  *Id.*  Section 13's "three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation."  *P. Stolz*, 355 F.3d at 103.

The FDIC's claims are facially time-barred under this statute.  The FDIC asserts only Section 11 and 15 claims relating to mortgage-backed securities that were offered to the public in 2006 and 2007, and purchased by Colonial Bank in 2007.  (*See* Am. Compl. (Dkt. #72), Schedules 1-11, Items 38(a) & 38(b) (alleging dates of securities offerings and dates of purchase).)[2]  The FDIC did not assert those claims until late 2012 – well over three years after the securities at issue were offered to the public.   Its claims are thus barred by the statute of repose unless the Court construes the FDIC Extender Statute to displace the three-year repose period.

The FDIC Extender Statute provides:

Statute of limitations for actions brought [by the FDIC] as conservator or receiver[:]

---

[2] For the securities at issue in this case, the "bona fide" offering date is, at the latest, the date of the prospectus supplement.  *See* SEC Rule 430B(f)(2), 17 CFR § 230.430B(f)(2).

(A)    In general[:] Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be –

   (i)    in the case of any contract claim, the longer of [] (I) the 6-year period beginning on the date the claim accrues; or (II) the period applicable under State law; and

   (ii)    in the case of any tort claim . . . , the longer of [] (I) the 3-year period beginning on the date the claim accrues; or (II) the period applicable under State law.

(B)    Determination of the date on which a claim accrues[:] For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of [] (i) the date of the appointment of the [FDIC] as conservator or receiver; or [] (ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(A)-(B).

By their terms, the foregoing provisions do two primary things.  First, they set "the applicable statute of *limitations* with regard to any action brought by the [FDIC]" as either three or six years depending on whether the claim is a tort or contract claim.  *Id.* § 1821(d)(14)(A).  Second, they provide that "the date on which the statute of *limitations* begins to run on any claim . . . shall be the later of (i) the date of the appointment of the [FDIC] as conservator or receiver; or (ii) the date on which the cause of action *accrues*."  *Id.* § 1821(d)(14)(B).[3]  The statute thus speaks exclusively in terms of the statute of limitations and does not purport to affect any applicable statute of repose.

Defendants argued in their initial motion to dismiss that the FDIC's 1933 Act claims were time-barred under Section 13's statute of repose notwithstanding the FDIC Extender Statute because this statute extends only statutes of *limitations*, not statutes of *repose*.  (*See* Joint Mem. of L. in Supp. of Defs.' Mot. to Dismiss Am. Compl. (Dkt. #76) at 37-40.)  However, before Defendants filed their reply brief, the Second Circuit decided *UBS*, 712 F.3d 136, which held that a similar extender statute applicable in actions by the Federal Housing Finance Agency ("FHFA")

---

[3] A subsequent provision of the FDIC Extender Statute also revives certain state law claims as to which "the statute of limitation" already has expired.  *Id.* § 1821(d)(14)(C).

supplanted Section 13's statute of repose.[4]  Thereafter, Defendants withdrew their statute of repose argument, while expressly "reserv[ing] the right to reassert this argument at a later juncture." (Joint Mem. of L. in Further Supp. of Defs.' Mot. to Dismiss Am. Compl. (Dkt. #81) at 4 n.4.) Accordingly, this Court did not rule on the issue in deciding Defendants' motion to dismiss.  Each Defendant subsequently asserted the statute of repose as a defense in its responsive pleading. (Defs.' Responsive Pleadings (Dkt. Nos. 109 at 41; 110 at 23; 111 at 23; 112 at 39, 113 at 36; 114 at 40, 115 at 23; 116 at 23; 117 at 38).)

On June 9, 2014, the Supreme Court issued its *Waldburger* decision, resolving a circuit split as to whether CERCLA's failure to "mention . . . peremptory statutes or statutes of repose" means that it applies only to statutes of limitations.  *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) ("[T]he reach of the plain language of § 9658 does not extend to statutes of repose."); *contra McDonald v. Sun Oil Co.*, 548 F.3d 774, 783 (9th Cir. 2008) ("[I]t is evident that the term 'statute of limitations' in [Section 9658] was intended by Congress to include statutes of repose.").  Reversing the decision of the Fourth Circuit, and abrogating the Ninth Circuit's ruling in *McDonald*, the Supreme Court concluded that the CERCLA extender statute only applies to statutes of limitations, not to statutes of repose, and rejected the principal rationales underlying the Second Circuit's *UBS* decision.  *Waldburger*, 134 S. Ct. 2175.

Shortly thereafter, on June 16, 2014, the Supreme Court vacated the Tenth Circuit's decision in *National Credit Union Administration Board v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013) ("*NCUA*") and remanded the case "for further consideration in light of *CTS Corp. v. Waldburger*."  *Nomura Home Equity Loan, Inc.*, No. 13-576, 2014 WL 2675836 (June 16, 2014).  In *NCUA*, the Tenth Circuit, like the Second Circuit, held that another extender

---

[4] *See* 12 U.S.C. § 4617(b)(12) (the "FHFA Extender Statute"), enacted as part of the Housing and Economic Recovery Act of 2008 ("HERA").

statute, similar to the FDIC and FHFA Extender Statutes, displaced Section 13's statute of repose.[5]

The Supreme Court's action in *NCUA* demonstrates that there is a "reasonable probability" that the

reasoning underlying the Tenth Circuit's decision – and by extension the Second Circuit's *UBS*

decision – is no longer good law in light of *Waldburger.  Wellons*, 558 U.S. at 225; *accord*

*Lawrence v. Chater*, 516 U.S. 163, 167 (1996).

Following these developments, Defendants promptly requested a pre-motion conference

for purposes of setting a briefing schedule on a motion for judgment on the pleadings under Rule

12(c) to address the impact of *Waldburger* on this action.  (Defs.' Ltr. to Court (Dkt. #129).)  On

June 20, 2014, the Court granted Defendants' request for expedited briefing on the instant motion

for judgment on the pleadings, and ordered a discovery stay pending its resolution.

**DISCUSSION**

## I.  THE FDIC EXTENDER STATUTE ALTERS ONLY STATUTES OF LIMITATIONS, NOT STATUTES OF REPOSE.

The Supreme Court's ruling in *Waldburger* compels judgment in favor of Defendants here,

because the reasoning employed by the Court to conclude that a similar extender statute did not

supplant applicable statutes of repose is on all fours with this case.  Statutes of limitations and

statutes of repose are "fundamentally different" in numerous respects.  *In re Lehman Bros. Sec. &*

*ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. Apr. 13, 2011); *see also Waldburger*, 134 S. Ct.

at 2182-83.  For example, a statute of limitations is a *procedural* limit on the plaintiff's ability to

pursue a remedy, whereas a statute of repose is a *substantive* component of the plaintiff's

underlying cause of action.  As the Second Circuit explained in construing Section 13:

> Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's
> remedy, but rather *defines the right involved* in terms of the time allowed to bring
> suit. . . . [A] statute of repose does not bar a cause of action; its effect, rather, is to
> prevent what might otherwise be a cause of action *from ever arising*.

---

[5] *See* 12 U.S.C. § 1787(b)(14) (the "NCUA Extender Statute").  Both the FDIC Extender Statute
and the NCUA Extender Statute were enacted as part of FIRREA.

*P. Stolz*, 355 F.3d at 102-03 (quoting *Rosenberg v. Town of N. Bergen*, 293 A.2d 662, 667 (N.J. 1972)); *accord Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) ("Statutes of repose are meant to be a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights.").

Additionally, statutes of limitations and statutes of repose typically run from different events. A "statute of limitations . . . establishes the time period within which lawsuits may be commenced after a cause of action has accrued," which, as in the case of Section 13, typically is upon actual or constructive discovery of the claim. *Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95, 101 n.1 (2d Cir. 2013) (construing Section 13 of the 1933 Act), *cert. granted*, 134 S. Ct. 1515 (2014). A statute of repose, by contrast, runs from the defendant's violation or another legislatively decreed date based on when a specific event occurs, such as, in the case of Section 13, the date the securities were offered to the public. Accordingly, a statute of repose "extinguishes a cause of action after a fixed period of time *regardless* of when the cause of action accrued." *Id.*; *accord City of Pontiac Gen. Empls.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 176 (2d Cir. 2011) (stating that whereas "a statute of limitations cannot begin to run until the plaintiff's claim has accrued," "a statute of repose . . . begins to run from the defendant's violation"). Indeed, a statute of repose "may bar commencement of an action even *before* the cause of action accrues." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627-28 (2d Cir. 1998).

Statutes of limitations and statutes of repose also serve entirely different purposes. Statutes of limitations are concerned with fairness to the plaintiff – which is why they typically do not run until actual or constructive discovery, and often can be tolled for equitable reasons. Statutes of repose, by contrast, "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Waldburger*, 134 S. Ct. at 2183; *accord IndyMac MBS, Inc.*, 721 F.3d at 106 ("[S]tatutes of repose . . . run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not have, discovered that she has a cause of action. . . . [S]tatutes of repose create a *substantive* right to be free from liability after a

legislatively-determined period of time."); *Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc.*, 288 F.3d 405, 409 (9th Cir. 2002) (explaining that a statute of repose "[i]s not concerned with the plaintiff's diligence; it is concerned with the *defendant's peace*").

In *Waldburger*, the Supreme Court acknowledged that the two types of statutes are fundamentally different, extensively discussed the differences between them, and concluded that the CERCLA extender provision altered only statutes of limitations based primarily on three factors: (i) the text of the statute; (ii) Congress's understanding of the distinction between statutes of limitations and statutes of repose when it chose to use only the phrase "statute of limitations"; and (iii) the structure and purpose of the statute. Each of these factors applies equally here.

### A.     The Plain Text of the FDIC Extender Statute Alters Only Statutes of Limitations, not Statutes of Repose.

Turning first to the text of the statute, the Supreme Court held in *Waldburger* that three features of CERCLA's text demonstrate that that statute does not alter statutes of repose. Those same features are present on the face of the FDIC Extender Statute.

*First*, the Court found it "instructive" that CERCLA "uses the term 'statute of limitations' four times (not including the caption), but not the term 'statute of repose.'" *Waldburger*, 134 S. Ct. at 2185. The FDIC Extender Statute and its related revival provision likewise use the term "statute of limitations" or "statute of limitation" four times (not counting the caption), but never use the term "statute of repose." 12 U.S.C. § 1821(d)(14)(A), (d)(14)(B), (d)(14)(C)(i). That the statute explicitly speaks in terms of the statute of limitations, not statutes of repose, demonstrates that it alters only the former, not the latter. *See, e.g.*, *Burlington*, 419 F.3d at 362 (holding that a federal statute that expressly preempts only statutes of limitations does not also preempt statutes of repose, because "the differences between statutes of limitations and statutes of repose are substantive, not merely semantic"). This same textual analysis has been applied by other courts, even before the Supreme Court's ruling in *Waldburger*. [6]

---

[6] *See Kennedy v. U.S. Veterans Admin.*, No. 2:11-cv-150, 2011 WL 6296732, at *3 (S.D. Ohio Dec. 16, 2011) ("[Congress'] purposeful enactment of an applicable [federal] statute of limitations [in the Federal Tort Claims Act] that rejected application of state limitations periods without

*Second*, the Supreme Court examined the structure of the statute and noted that its substantive provisions could only refer to statutes of limitations, not statutes of repose, because the statute's operation was tied to the concept of "accrual."  The Court explained that CERCLA referred to "'the period' during which a 'civil action' under state law 'may be brought,'"  which "presupposes that a covered civil action exists," *i.e.*, that it has accrued.  *Waldburger*, 134 S. Ct. at 2187.  On the other hand, "[a] statute of repose . . . is not related to the accrual of any cause of action."  *Id.*  Instead, a statute of repose simply "mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued."  *Id.*  The Supreme Court reasoned that CERCLA's reference to when a civil action "may be brought," *i.e.*, implying that a civil action exists and has accrued, therefore demonstrated that the statute did not apply to statutes of repose.  *Waldburger*, 134 S. Ct. at 2187; *accord Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, No. Civ. A5:04-CV-047-C, 2004 WL 1926322, at *10 (N.D. Tex. Aug. 27, 2004) ("For statutes of repose, the accrual date is irrelevant.").

This reasoning applies with even greater force here, because the FDIC Extender Statute *explicitly* ties its extension of time to when a cause of action "accrues."  Specifically, the FDIC

---

similar[ly] . . . rejecti[ng] . . . state . . . statute[s] of repose weighs against Plaintiff's argument that the federal statute of limitation preempts the state statute of repose.") (*rev'd on another ground*, 526 F. App'x 450 (6th Cir. 2013); *Resolution Trust Corp. v. Olson*, 768 F. Supp. 283, 285 (D. Ariz. 1991) (The FDIC Extender Statute "deal[s] only with procedural statutes of limitations and not substantive statutes of repose."); Tentative Ruling, *NCUA v. RBS Sec., Inc.*, 11-CV-5887-GW (C.D. Cal. Mar. 14, 2013) (Williams Decl. Ex. A) (confirmed in Order dated Feb. 26, 2014 (Williams Decl. Ex. B)) (The NCUA Extender Statute "plainly refers to statutes of limitation.  It makes no mention whatsoever of statutes of repose."); Tentative Ruling, *NCUA v. Goldman Sachs & Co.*, 11-CV-6521-GW (C.D. Cal. Mar. 15, 2012) (Williams Decl. Ex. C) (same; confirmed in Order dated Sept. 4, 2012 (Williams Decl. Ex. D)), *appeal docketed*, No. 14-55309 (9th Cir. Feb. 26, 2014).  Those courts that had reached contrary conclusions have done so in reliance on reasoning and precedents rejected by the Supreme Court in *Waldburger*.  The district court ruling affirmed by the now-vacated Tenth Circuit opinion in *NCUA*, for example, relied on what it saw as general "conflation" of the two terms in legal usage, and on *McDonald*'s (now abrogated) holding that "the term statute of limitations in [the CERCLA Extender Statute] also means 'statute of repose.'"  *NCUA v. RBS Sec. Inc.*, 900 F. Supp. 2d 1222, 1241 (D. Kan. 2012).  Similarly, the court in *FHFA v. Countrywide Financial Corp.* found that "*McDonald* is controlling as the Ninth Circuit's approach in interpreting statutes that refer to periods of limitation," and rejected defendants' arguments against application of the FHFA Extender Statute as "ignor[ing] the relevant inquiry of *McDonald*."  900 F. Supp. 2d 1055, 1065 (C.D. Cal. 2012).

Extender Statute provides that the limitations period shall be the longer of either the three- or six-year period "beginning on the date the claim *accrues*" or the period applicable under state law. 12 U.S.C. § 1821(d)(14)(A)(i), (ii).  It then provides, in a subsection entitled, "Determination of the date on which a claim *accrues*," that "the date on which the statute of limitations *begins to run* shall be" the date the FDIC becomes receiver or "the date on which the cause of action *accrues*." *Id.* § 1821(d)(14)(B).  As a basic textual matter, a statute that presupposes a "claim" and that operates by postponing its "accrual" – as does the FDIC Extender Statute – does not implicate repose periods, which "can run to completion even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues." *P. Stolz*, 355 F.3d at 103.  Thus, under *Waldburger*, statutory language presupposing the existence of a cause of action and incorporating concepts of accrual – present both in the CERCLA extender statute at issue in *Waldburger*, and more explicitly in the FDIC Extender Statute at issue here – refers to a statute of limitations, not a statute of repose.  *Waldburger*, 134 S. Ct. at 2187.

*Third*, the Supreme Court observed that "[t]he text [of CERCLA] includes language describing the covered period in the *singular*."  *Id.* at 2186-87.  As the Court noted, "[t]he statute uses the terms '*the* applicable limitations *period*,' ' *such period* shall commence,' and '*the statute* of limitations established under State law.'"  *Id.*  at 1285.  The Court concluded that "[t]his would be an awkward way to mandate the pre-emption of two different time periods [limitations and repose] with two different purposes."  *Id.* at 2187.

The FDIC Extender Statute's language is virtually identical.  It refers in the singular to "*the* applicable *statute* of limitations," "*the date* on which *the statute* of limitations begins to run," and "*the period* applicable under State law."  12 U.S.C. § 1821(d)(14)(A), (d)(14)(A)(i)(II), (d)(14)(A)(ii)(II), (d)(14)(B).  As in *Waldburger*, such language "would be an awkward way" for Congress to refer to two different time periods, serving two different purposes, with two different starting and ending dates.  *Waldburger*, 134 S. Ct. at 2186-87.

In short, as in *Waldburger*, the FDIC Extender Statute's plain text "is best read to encompass only statutes of limitations," *id.* at 2187, given that the statute's text refers only to the

statute of limitations and not to statutes of repose, it incorporates concepts of accrual which have no applicability to statutes of repose, and it refers to the "statute of limitations" in the singular instead of in the plural.

**B.** **Congress' Understanding of the Distinctions Between Statutes of Limitations and of Repose Further Demonstrates that the FDIC Extender Statute Alters Only Statutes of Limitations, not Statutes of Repose.**

The Supreme Court's textual analysis in *Waldburger* rested in part on its conclusion that the differences between statutes of limitations and statutes of repose were understood when the extender provisions were added to CERCLA in 1986, such that Congress' failure to reference "statutes of repose" reflected a deliberate decision not to "exercise the full scope of its pre-emption power." *Id.* at 2186. The Court acknowledged that, in the years leading up to 1986, some dictionaries, scholars, and judges had described the two types of statutes as "equivalent." *Id.* at 2185. The Court concluded, however, that it is "apparent that the distinction between statutes of limitations and statutes of repose was understood by some courts and scholars before 1986." *Id.* (citing Restatement (Second) of Torts § 899, cmt. g (1977)). In addition, based on reports in *1982* from a Senate Committee that recommended revisions to both "statutes of limitations" *and* "statutes of repose," the Court remarked that "[t]he scholars and professionals who were discussing this matter (and indeed were advising Congress) knew of a clear distinction between the two." *Id.* at 2186.

FIRREA was enacted in 1989 – three years *after* the CERCLA extender provisions. If Congress understood the differences between statutes of limitations and statutes of repose in 1986, it understood those differences in 1989, as the contemporaneous record reflects. *See, e.g.*, *Goad*, 831 F.2d at 511 (noting *in 1987* "[t]he distinction between statutes of limitation and statutes of repose"). Indeed, as one court explained in holding that the FDIC Extender Statute does not apply to state statutes of repose, "the Congressional Record both prior to and contemporaneous with the enactment of FIRREA suggest[s] that Congress understood the meaning of the term 'statute of repose' but nevertheless failed to use it in the extender statute." *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d at 1037. For example:

- In 1985, the "Cultural Property *Repose* Act" was introduced by members of the House of Representatives and of the Senate.  The bill would have imposed a five-year repose period for certain claims in certain circumstances, and in other circumstances "a 10-year *repose* would apply."  131 Cong. Rec. S10274-02 (July 29, 1985), 1985 WL 724776 (statement of Sen. Charles Mathias); *see also* 131 Cong. Rec. E2249-02 (May 16, 1985), 1985 WL 717402 (statement of Rep. Richard Gephardt during extension of remarks).

- In 1986, a bill entitled "The General Aviation Tort Reform Act" sought to establish a federal cause of action relating to aviation accidents.  *See* 132 Cong. Rec. H2275-01 (Apr. 30, 1986), 1986 WL 793206 (statement of Rep. John Hammerschmidt.  Because the bill as initially drafted could have barred claims stemming from an aircraft defect even before the defect appeared in the aircraft, the sponsor wanted "to hear from both sides of the question before settling on a specific statute of *repose*."  *Id.*

- Also in 1986, an amendment to a proposed products liability bill was introduced which called for "a uniform statute of limitations that runs for 2 years from the discovery of the harm and its cause," and provided that certain other claims "are subject to a 25-year statute of *repose*."  132 Cong. Rec. S5764-01 (May 12, 1986), 1986 WL 775180 (statement of Sen. John Danforth).

- Later in 1986, several senators – including the senator that later would sponsor FIRREA – introduced an amendment to a products liability bill which sought to establish a "statute of *repose* [that] will end the 'long table of liability' problem which unfairly penalizes, almost exclusively, domestic product sellers and manufacturers."  132 Cong. Rec. S13235-01 (Sept. 22, 1986), 1986 WL 784464 (statement of Sen. Kasten, speaking on behalf of Senators Inouye, Gorton, Kassebaum, Stevens, and Riegle).

- In 1987, the "Economic *Statute of Repose* Act" was introduced in the House to address, in the words of its sponsor, "one particular segment of the product liability crisis, the need for a basic statute of limitations, *or in this case, a statute of repose*."  133 Cong. Rec. E3145-02 (July 29, 1987), 1987 WL 943517 (statement of Rep. Richard Schulze during extension of remarks).  This same bill was reintroduced in January 1989, about six months before FIRREA was enacted.  *See* 135 Cong. Rec. E73-03 (Jan. 3, 1989), 1989 WL 201312 (statement of Rep. Richard Schulze during extension of remarks).

- Also in 1987, products liability legislation was introduced that sought to establish a statute of limitations that runs "2 years from the date the claimant discovered the harm" while "the *Statute of Repose* will be 12 years for non-toxic harm and 25 years for toxic harm."  133 Cong. Rec. E218-01 (Jan. 22, 1987), 1987 WL 929220 (statement of Rep. William Dannemeyer during extension of remarks).

- Another products liability bill introduced in 1987 attempted to establish a "2-year statute of limitations" that "will run from the time the claimant in the action discovered, or in the exercise of due diligence should have discovered, the harm for which the action is brought" and a "*statute of repose*" barring claims for suits filed "more than 10 years after the date a product which caused physical harm to the claimant in the action is sold."  133 Cong. Rec. E930-03 (Mar. 12, 1987), 1987 WL 932710 (statement of Rep. Stewart McKinney during extension of remarks).

- In 1988, a senator expressed concerns about "the 20 years statute of *repose*" contained in certain proposed aircraft accident legislation because "someone who was injured in a general aviation accident could not even initiate a claim for compensation if the accident involved an aircraft or its components which was more than 20 years old." 134 Cong. Rec. S14587-02 (Oct. 5, 1988), 1988 WL 176889 (statement of Sen. Howard Metzenbaum). Senator McCain, however, supported the bill because he did "not think it is unreasonable to establish a 2-year statute of limitations and a 20-year *statute of repose* for aircraft and replacement parts." *Id.* Another senator reintroduced the bill in 1989 (after it failed to pass the first time), reiterating that it "establishes a 20-year *statute of repose* on manufacturer liability, which starts on the date of delivery." 135 Cong. Rec. S5057-02 (May 9, 1989), 1989 WL 175288 (statement of Sen. John Chafee).

- In 1989 – the same year FIRREA was enacted – a bill entitled "The Product Liability Reform Act" attempted to "establish[ ] an outer limit of 25 years, *called a statute of repose*, where a capital good product – that is, industry machinery – is involved in an accident that results in traumatic injury." 135 Cong. Rec. E2243-01 (June 21, 1989), 1989 WL 179494 (statement of Rep. Thomas Luken during extension of remarks). Also in 1989, as noted, two of the other bills referenced above were reintroduced.

The foregoing are just examples. "Indeed, an electronic search of the Congressional Record from 1985 until the enactment of FIRREA reveals at least forty-four separate uses of the phrase 'statute of repose' across twenty-seven different statements by members of Congress," *In re Countrywide Fin. Corp. Mortg. Backed Secs. Litig.*, 966 F. Supp. 2d at 1039, a number that rises to "fifty-seven separate mentions . . . across thirty different statements" if one searches for "'statute of repose' combined with closely related phrases such as 'statute of limitations and repose,'" *id.* at 1039 n.3.

Congress thus understood by the time it enacted FIRREA that statutes of limitations and statutes of repose are different. It knew how to displace "statutes of repose" if it wanted to do so. Because "Congress did not make the . . . distinction [in the statute], it is proper to conclude that Congress did not exercise the full scope of its pre-emption power" and thus left Section 13's statute of repose and other statutes of repose untouched. *Waldburger*, 134 S. Ct. at 2186.

## C.    FIRREA'S Structure and Purpose Further Demonstrate that the FDIC Extender Statute Alters Only Statutes of Limitations, not Statutes of Repose.

The FDIC has argued that, regardless of what the text of the statute *says*, it should be *construed* in favor of the FDIC because it was designed "to give the FDIC the power to maximize potential recoveries by offering the agency a longer period in which to act." (Pl.'s Mem. of L. in

13

Opp'n to Defs.' Mot. to Dismiss Am. Compl. (Dkt. #79) at 8 (quoting *Investment Co. of the Sw. v. Reese*, 875 P.2d 1086, 1093 (N.M. 1994)).)  The FDIC's argument is foreclosed by *Waldburger*'s reminder that "Congressional intent is discerned primarily from the statutory *text*."  *Waldburger*, 134 S. Ct. at 2185.  It is the *text* that defines the means by which Congress sought to further a statute's purported purpose.  And it is the *text* that delimits what Congress was *not* willing to do, such as displace the "substantive definition[s] of rights" embodied in statutes of repose.  *Goad*, 831 F.2d at 511.

The Supreme Court rejected two arguments in *Waldburger* that are analogous to the FDIC's arguments in this regard.  *First*, the Court held that it was "error" for the court of appeals in that case to have "invoke[ed] the proposition that remedial statutes should be interpreted in a liberal manner," because this cannot be "treated . . . as a substitute for a conclusion grounded in the statute's text and structure."  *Waldburger*, 134 S. Ct. at 2185.  As the Court explained, "almost every statute might be described as remedial in the sense that all statutes are designed to remedy some problem," but "no legislation pursues its purposes at all costs."  *Id.*  The Court's opinion makes clear that unless a statute's language and structure say otherwise, its general remedial purpose will not permit courts to alter substantive rights prescribed by statutes of repose.

*Second*, the Court rejected an argument that "pre-emption of statutes of repose advances [the CERCLA extender provisions'] purpose [of] help[ing] plaintiffs bring tort actions caused by toxic contaminants."  *Id.* at 2188.  The Supreme Court concluded that the plaintiffs had read the statute's intent at too high a "level of generality," noting that CERCLA "does not provide a complete remedial framework" and "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions."  *Id.*  The Court concluded that "in light of Congress' decision to leave those many areas of state law untouched," statutes of repose do not "pose an unacceptable obstacle to CERCLA's purposes."  *Id.*

Similarly here, the FDIC has urged a reading of FIRREA's purpose that is too general.  The FDIC Extender Statute is structurally and functionally similar to CERCLA; it "does not provide a

complete remedial framework" but instead leaves "untouched" all substantive and procedural rules applicable to claims brought by the FDIC, *id.*, extending only the date on which tort and contract claims "accrue[]" and the length of the statute of limitations applicable to such claims running from such accrual. 12 U.S.C. § 1821(d)(14)(A)(i), (d)(14)(A)(ii), (d)(14)(B). As in *Waldburger*, "in light of Congress' decision to leave those many areas of state law untouched," statutes of repose do not "pose an unacceptable obstacle" to FIRREA's purposes. *Waldburger*, 134 S. Ct. at 2188.

Moreover, the FDIC's argument that the purpose of the FDIC Extender Statute is to give the FDIC more time to bring claims merely confirms that the statute applies to statutes of limitation but not repose. This purpose is identical to the purpose of other legal doctrines that provide plaintiffs with relief from statutes of limitations but not statutes of repose (*e.g.*, the "discovery rule" and "equitable tolling"). This purpose, however, has nothing to do with a statute of *repose*, which, as noted, is not concerned with fairness to the plaintiff but rather reflects "a legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Waldburger*, 134 S. Ct. at 2183; *accord IndyMac MBS, Inc.*, 721 F.3d at 106; *Underwood Cotton Co., Inc.*, 288 F.3d at 409.

In short, *Waldburger*'s reasoning applies equally, and in many respects, with even greater force, to the FDIC Extender Statute. Because that statute does not displace Section 13's absolute three-year statute of repose, judgment should be entered for Defendants.[7]

---

[7] *Waldburger*'s directive to interpret extender statutes by reference to their text and structure also underscores the correctness of several related arguments Defendants have advanced in this case: (i) The FDIC Extender Statute does not apply to federal claims, given that the extender provisions and the related revival provisions reference only state law claims and contract and tort claims; (ii) the FDIC Extender Statute does not apply to statutory claims, given that, again, it references only contract and tort claims; (iii) in any event, the FDIC Extender Statute does not displace, or impliedly repeal, Section 13's statute of repose in particular, given that securities claims are *sui generis* (sounding neither in contract nor in tort), and given that Section 13 rests on policy judgments that are unique to the securities context and that should not be judicially overturned absent clear indication from Congress that that is what Congress intended. Defendants incorporate by reference the arguments they previously presented on these points, and urge the Court to grant judgment on the pleadings on these bases as well. (*See* Joint Mem. in Supp. of Defs.' Mot. to Dismiss Compl. (Dkt. #70) at 33-35; Joint Mem. of L. in Supp. of Defs.' Motion to Dismiss Am. Compl. (Dkt. #76) at 38-39.)

## II.     *WALDBURGER* ABROGATES THE SECOND CIRCUIT'S RULING IN *UBS*.

In *UBS*, the Second Circuit held that a similar but not identical extender statute in HERA applied to statutes of repose.  *UBS* is no longer good law in light of *Waldburger* and therefore is not binding here; it is axiomatic that "a decision of the Second Circuit is [not] binding [if] it has been called into question by an intervening Supreme Court decision," including if "its rationale is overruled, implicitly or expressly, by the Supreme Court."  *In re S. African Apartheid Litig.*, Nos. 02 MDL 1499 etc., 2014 WL 1569423, at *4 (S.D.N.Y. Apr. 17, 2014); *accord Sikhs for Justice, Inc. v. Indian Nat'l Cong. Party*, No. 10 Civ. 2940, 2014 WL 1683798, at *5 (S.D.N.Y. Apr. 25, 2014).  Here, the court's reasoning in *UBS* is expressly contravened by *Waldburger* in numerous respects.

*First*, *UBS* reasoned that HERA's extension of "the applicable statute of limitations" "precluded the possibility that some other limitations period [*i.e.*, a statute of repose] might apply" and instead indicated that "Congress intended one statute of limitations – § 4617(b)(12) of HERA – to apply to all claims brought by FHFA as conservator."  *UBS*, 712 F.3d at 141-42, 143 (emphasis omitted).  The Supreme Court reached the opposite conclusion in *Waldburger*, concluding that similar references in CERCLA to "the applicable limitations period" mean that the statute alters just one period, not "two different time periods with two different purposes." *Waldburger*, 134 S. Ct. at 2187.

*Second*, *UBS* reasoned that statutes of limitations and of repose are only "distinct in theory," listing various instances where the terms have been used interchangeably.  *UBS*, 712 F.3d at 142-43.  The Supreme Court, however, looked at the same basic historical record and explained at length how the differences are not just theoretical, but substantive and fundamental.  The Court, while noting that the term "statute of limitations" sometimes has been used loosely, ultimately concluded that "the concept that statutes of repose and statutes of limitations are distinct was well enough established" by the time Congress enacted the CERCLA extender provisions in 1986. *Waldburger*, 134 S. Ct. at 2186.  As set out above, those distinctions were even more entrenched –

as evidenced throughout the Congressional Record – by the time Congress enacted the FDIC

Extender Statute three years later in 1989.

*Third*, *UBS* repeatedly relied on its description of HERA's purpose as "giv[ing] FHFA the

time to investigate and develop potential claims" and "to restore Fannie Mae and Freddie Mac to

financial stability." *UBS*, 712 F.3d at 142-43. The Supreme Court in *Waldburger*, however,

cautioned against reading statutory purpose so generally where, as with the FDIC Extender Statute,

supposedly "remedial" legislation leaves an underlying statutory framework "untouched."

*Waldburger*, 134 S. Ct. at 2188.

Unlike the emphasis *Waldburger* places on discerning congressional intent "primarily

from the statutory text," *id.* at 2185, the *UBS* panel's ruling was premised on a broad conception of

the statute's remedial purpose. The Second Circuit reasoned:

> Congress enacted HERA and created FHFA in response to the housing and
> economic crisis, precisely because it wanted to address the dire financial condition
> of Fannie Mae and Freddie Mac. As HERA makes clear, Congress intended FHFA
> to take action to "collect all obligations and money due" to the GSEs, to restore
> them to a "sound and solvent condition." . . . Of course, the collapse of the
> mortgage-backed securities market was a major cause of the GSEs' financial
> predicament, and it must have been evident to Congress when it was enacting
> HERA that FHFA would have to consider potential claims under the federal
> securities and state Blue Sky laws. It would have made no sense for Congress to
> have carved out securities claims from the ambit of the extender statute, as doing so
> would have undermined Congress's intent to restore Fannie Mae and Freddie Mac
> to financial stability.

*UBS*, 712 F.3d at 142-43. The Second Circuit diverged from the text-focused analytical approach

required by *Waldburger* in presuming that the result that benefits the party seeking additional time

to plead claims has to be the better reading of the statute. As the Supreme Court recognized,

however, a "which party does the statute favor" approach to statutory interpretation is particularly

inappropriate where a statute operates only by creating a limited exception to generally applicable

state law rather than a "complete remedial framework." *Waldburger*, 134 S. Ct. at 2188. The rule

that statutory text trumps suppositions regarding remedial intent – reiterated in *Waldburger* – is

equally applicable to the FDIC (or FHFA) Extender Statute, which, like the CERCLA extender

statute, is an exception to the general rule that the FDIC as conservator or receiver "[stands] in the

shoes of the insolvent [financial institution] to work out its claims under state law."  *O'Melveny &*

*Myers v. FDIC*, 512 U.S. 79, 87 (1994).

Notably, the Fourth Circuit's opinion in *Waldburger* concluded that statutes of repose were

displaced based on a purpose-driven analysis substantially similar to the Second Circuit's analysis

in *UBS*:

> [W]e reject a reading of § 9658 that excludes application of its provisions to North
> Carolina's ten-year limitation.  Such an interpretation may seem to be textually
> sound under one possible reading of the statute, but it offers too narrow an approach
> and one that thwarts Congress's unmistakable goal of removing barriers to relief
> from toxic wreckage.  Refusing to apply § 9658 to statutes of repose allows states to
> obliterate legitimate causes of action before they exist.  Because this is precisely the
> barrier that Congress intended § 9658 to address, we will not read the statute in a
> manner that makes it inapplicable in such a circumstance.  Doing so cannot be
> termed an honest attempt to "effectuate Congress's intent."

*Waldburger v. CTS Corp.*, 723 F.3d 434, 444 (4th Cir. 2013).  As noted above, in reversing the

Fourth Circuit, the Supreme Court explicitly criticized that court for "invoking the proposition that

remedial statutes should be interpreted in a liberal manner," and concluded that "[t]he Court of

Appeals was in error when it treated this as a substitute for a conclusion grounded in the statute's

text and structure."  *Waldburger*, 134 S. Ct. at 2185.  The same is true of the Second Circuit's

opinion in *UBS*.

Moreover, *Waldburger* has now given the circuit courts guidance on which features of the

statutory text a court should consider when analyzing whether the term "statute of limitations" is

meant to supplant a statute of repose.  The Second Circuit in *UBS* did not address several such

features that compelled the Supreme Court to hold in *Waldburger* that the extender provision at

issue did not displace statutes of repose.  These features, such as the fact that the statute

incorporates concepts of accrual which in no way apply to statutes of repose and repeatedly refers

to the "statute of limitations" in the singular rather than plural, should not be ignored.

The Second Circuit's approach in *UBS* cannot be saved by the argument, advanced by the

FDIC here, that a presumption in favor of the *government* should apply here, rather than the

general presumption of liberality in construction of remedial statutes held to be inadequate in

*Waldburger*.  *Waldburger* did not treat the CERCLA extender statute as so ambiguous that

recourse to non-textual presumptions was appropriate; to the contrary, it resolved the issue by examining the text and structure of the statute itself.  The same approach and textual considerations apply to the FDIC and FHFA Extender Statutes.  Further, the government interest in the solvency of regulated financial institutions (or in recouping taxpayer losses attributable to their insolvency) has already been rejected by the Supreme Court as a basis for applying special pro-government rules of decision.  *See O'Melveny & Myers*, 512 U.S. at 83.  Moreover, as in *O'Melveny*, the FDIC Extender Statute, like the FHFA and NCUA Extender Statutes, does not benefit the federal agency in its capacity as "the government," but rather as a representative plaintiff standing in the shoes of an insolvent financial institution.  *See O'Melveny & Myers*, 512 U.S. at 85 ("[T]he FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the insolvent bank].").  Any attempt by the FDIC to benefit from common law rules or presumptions favoring the government should be rejected.  *Cf. FDIC v. Deglau*, 207 F.3d 153, 270-71 (3d Cir. 2000) (federal common law doctrines favoring the FDIC in suits as receiver do not survive *O'Melveny*).

The FDIC's similar assertion that *Waldburger* involved only state law claims and relied on a presumption against preemption (*see* FDIC's Ltr. to Court (Dkt. #130) at 1-2), provides no basis for the Court to disregard the holding and rationale of *Waldburger*.  As an initial matter, a similar presumption exists against reading federal statutes (such as the FDIC Extender Statute) as implicitly repealing other federal laws (such as Section 13 of the 1933 Act).  *See, e.g., Morton v. Mancari*, 417 U.S. 535, 551 (1974); *see also Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 664 (2007) (implied repeals or amendments of federal statutes are disfavored).  In any event, the majority opinion in *Waldburger* is based not upon preemption principles, but on the plain language and structure of the statutory text.  Indeed, only three Justices joined Part I.D of the *Waldburger* opinion discussing the presumption against preemption, and those Justices described the presumption as merely "an *additional* reason" for concluding that the CERCLA extender statute did not did displace repose periods.  Four more Justices agreed with the majority's textual

analysis, while rejecting the presumption against preemption.  Finally, any doubt about *Waldburger's* relevance to the federal claims at issue here is dispelled by the Supreme Court's subsequent order vacating the Tenth Circuit's decision in *NCUA* – which also concerns federal 1933 Act claims – for reconsideration in light of *Waldburger*.

Because *UBS* has been implicitly overruled by *Waldburger*, it is not controlling here and is no bar to entering judgment for Defendants.

### III.   IF THE COURT DOES NOT GRANT JUDGMENT ON THE PLEADINGS, THE ISSUE SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL.

In the event the Court is not inclined to grant this motion, because of *UBS* or otherwise, then Defendants respectfully request that the Court certify the issue for an interlocutory appeal under 28 U.S.C. § 1292(b), so that the Second Circuit, like the Tenth, may have a chance to revisit its decision.  Certification would be warranted because (i) the issue "involves a controlling question of law," in that if the issue is resolved in Defendants' favor, that would control the outcome of the entire case; (ii) there is "substantial ground for difference of opinion," because Defendants plainly have "substantial grounds," as set forth above, for their position; and (iii) an "immediate appeal may materially advance the ultimate termination of the litigation," in that, if the appeal is resolved in Defendants' favor, the case would end without the need for protracted and expensive fact and expert discovery, summary judgment motion practice, and ultimately, trial.  *Id.*  Indeed, prompt resolution by the Second Circuit would not only benefit the parties in this action (and numerous third-party mortgage originators, present and former individual employees, and numerous other third parties), but it would resolve the identical issue arising in several other significant cases currently pending in the Southern District of New York as well as at least one other court within the Second Circuit.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings should be granted.

Respectfully submitted,

Dated: July 3, 2014
         New York, New York


SIMPSON THACHER & BARTLETT LLP

By:  /s/ Andrew T. Frankel
Thomas C. Rice (trice@stblaw.com)
Andrew T. Frankel (afrankel@stblaw.com)
Abigail W. Williams
(awilliams@stblaw.com)

425 Lexington Avenue
New York, New York 10017
Phone: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for Defendants Deutsche
Bank Securities Inc. and RBS
Securities Inc.*


CRAVATH, SWAINE & MOORE LLP

By:  /s/ Richard W. Clary
Richard W. Clary (rclary@cravath.com)
Julie A. North (jnorth@cravath.com)
Richard J. Stark (rstark@cravath.com)
Michael T. Reynolds
(mreynolds@cravath.com)
Lauren A. Moskowitz
(lmoskowitz@cravath.com)

Worldwide Plaza
Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700

*Attorneys for Defendant Credit Suisse
Securities (USA) LLC*


MAYER BROWN LLP

By: /s/ Michael O. Ware
Mark G. Hanchet (mhanchet@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
Scott A. Chesin (sachesin@mayerbrown.com)
Charles S. Korschun
(ckorschun@mayerbrown.com)

1675 Broadway
New York, New York 10019
Phone: (212) 506-2500
Fax: (212) 262-1910

*Attorneys for Defendant HSBC Securities
(USA) Inc.*


CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By:  /s/ Roger A. Cooper
Roger A. Cooper (racooper@cgsh.com)
Jared Gerber (jgerber@cgsh.com)

1 Liberty Plaza
New York, New York 10006
Phone: (212) 225-2000
Fax: (212) 225-3999

*Attorneys for Defendant Merrill
Lynch, Pierce, Fenner & Smith Inc.*

MUNGER TOLLES & OLSON LLP

By:  /s/ James C. Rutten
James C. Rutten (james.rutten@mto.com)

355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Phone: (213) 683-9100
Fax: (213) 687-3702

*Attorneys for Defendant Wells Fargo Asset
Securities Corporation*

SULLIVAN & CROMWELL LLP

By:  /s/ Bruce E. Clark
Bruce E. Clark (clarkb@sullcrom.com)

125 Broad Street
New York, New York 10004-2498
Phone: (212) 558-4000
Fax: (212) 558-3588

Amanda F. Davidoff
(davidoffa@sullcrom.com)
1700 New York Avenue, NW
Washington, D.C. 20006-5805
Phone: (202) 956-7500
Fax: (202) 956-6993

*Attorneys for Defendants First Tennessee
Bank National Association (successor by
Merger to First Horizon Home Loan
Corporation), FTN Financial Securities
Corp., First Horizon Asset Securities, Inc.,
and UBS Securities LLC*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  /s/ Bruce Birenboim
Brad S. Karp (bkarp@paulweiss.com)
Bruce Birenboim
(bbirenboim@paulweiss.com)
Susanna M. Buergel
(sbuergel@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3390

*Attorneys for Defendants Citicorp Mortgage
Securities Inc., CitiMortgage, Inc., and
Citigroup Global Markets Inc.*

22