**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR COLONIAL BANK, | |
| *Plaintiff*, | |
| v. | No. 12 Civ. 6166 (LLS) (MHD) |
| CHASE MORTGAGE FINANCE CORP.; JPMORGAN CHASE & CO.; J.P. MORGAN SECURITIES LLC; CITICORP MORTGAGE SECURITIES, INC.; CITIMORTGAGE, INC.; CITIGROUP GLOBAL MARKETS INC.; FIRST HORIZON ASSET SECURITIES INC.; FIRST HORIZON HOME LOAN CORPORATION; ALLY SECURITIES LLC; CREDIT SUISSE SECURITIES (USA) LLC; DEUTSCHE BANK SECURITIES INC.; FTN FINANCIAL SECURITIES CORP.; HSBC SECURITIES (USA) INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; RBS SECURITIES INC.; UBS SECURITIES LLC; and WELLS FARGO ASSET SECURITIES CORPORATION, | |
| *Defendants*. | |

---

### NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

1.      Defendants hereby submit the following supplemental authorities in support of their pending Motion for Judgment on the Pleadings.

2.      In *FDIC as Receiver for Guaranty Bank v. Merrill Lynch, Pierce, Fenner & Smith, et al.*, No. A-14-CA-126 (W.D. Tex. Aug. 18, 2014) (Ex. A), and *FDIC as Receiver for Guaranty Bank v. Goldman, Sachs & Co., et al.*, No. A-14-CA-129 (W.D. Tex. Aug. 18, 2014) (Ex. B), the court held that the FDIC's claims were barred under the applicable statute of repose in

accord with the Supreme Court's holding in *CTS v. Waldburger*, 134 S. Ct. 2175 (2014), and granted defendants' motions for judgment on the pleadings.[1]

3.      On August 19, 2014, a panel of the Court of Appeals for the Tenth Circuit in *Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, No. 12-3295 (10th Cir. Aug. 19, 2014) (Ex. C), reinstated its prior decision affirming denial of a motion to dismiss on the ground that the applicable statute of repose did not apply, which had been vacated by the Supreme Court and remanded for reconsideration in light of *Waldburger*.  *See Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin.*, 134 S. Ct. 2818 (June 16, 2014).

4.      The issues addressed in the *FDIC-Guaranty* and *NCUA* cases have been discussed in the parties' prior submissions to this Court, which need not be repeated here.  The fact that the first two courts to address these issues after *CTS v. Waldburger* have reached opposite conclusions concerning the significance of the Supreme Court's decision and the text, purposes and history of nearly identical FIRREA extender provisions, however, highlights that, in the event this Court does not dismiss the FDIC's claims as time-barred consistent with *CTS v. Waldburger* and the recent *FDIC-Guaranty* decisions, then certification under 28 U.S.C. §1292(b) is appropriate to allow the Second Circuit to weigh in on these important and case-dispositive issues. These rulings confirm, at a minimum, that there is "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), as to whether the FDIC Extender Statute should be read to override statutes of repose in light of *CTS v. Waldburger*.

For all of the reasons set forth in Defendants' moving papers, Defendants' Motion for Judgment on the Pleadings should be granted.

---

[1]      Defendants attach the decisions in both cases, though they are substantively identical.

Respectfully submitted,

Dated: August 19, 2014
          New York, New York

SIMPSON THACHER & BARTLETT LLP

By: /s/ Andrew T. Frankel_____
Thomas C. Rice (trice@stblaw.com)
Andrew T. Frankel (afrankel.@stblaw.com)
Abigail W. Williams
(awilliams@stblaw.com)

425 Lexington Avenue
New York, New York 10017
Phone: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for Defendants Deutsche
Bank Securities Inc. and RBS
Securities Inc.*

CRAVATH, SWAINE & MOORE LLP

By: /s/ Richard W. Clary_____
Richard W. Clary (rclary@cravath.com)
Julie A. North (jnorth@cravath.com)
Richard J. Stark (rstark@cravath.com)
Michael T. Reynolds
(mreynolds@cravath.com)
Lauren A. Moskowitz
(lmoskowitz@cravath.com)

Worldwide Plaza
Eighth Avenue
New York, New York 10019
Phone: (212) 474-1000
Fax: (212) 474-3700

*Attorneys for Defendant Credit Suisse
Securities (USA) LLC*

MAYER BROWN LLP

By: /s/ Michael O. Ware_____.
Mark G. Hanchet (mhanchet@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
Charles S. Korschun (ckorschun@mayerbrown.com)

1675 Broadway
New York, New York 10019
Phone: (212) 506-2500
Fax: (212) 262-1910

*Attorneys for Defendant HSBC Securities
(USA) Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: /s/ Roger A. Cooper_____
Roger A. Cooper
(racooper@cgsh.com)
Jared Gerber (jgerber@cgsh.com)

1 Liberty Plaza
New York, New York 10006
Phone: (212) 225-2000
Fax: (212) 225-3999

*Attorneys for Defendant Merrill
Lynch, Pierce, Fenner & Smith Inc.*

MUNGER TOLLES & OLSON LLP

By:  /s/ James C. Rutten
James C. Rutten (james.rutten@mto.com)
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Phone: (213) 683-9100
Fax: (213) 687-3702

*Attorneys for Defendant Wells Fargo Asset
Securities Corporation*

SULLIVAN & CROMWELL LLP

By:  /s/ Bruce E. Clark
Bruce E. Clark (clarkb@sullcrom.com)
125 Broad Street
New York, New York 10004-2498
Phone: (212) 558-4000
Fax: (212) 558-3588

Amanda F. Davidoff
(davidoffa@sullcrom.com)
1700 New York Avenue, NW
Washington, D.C. 20006-5805
Phone: (202) 956-7500
Fax: (202) 956-6993

*Attorneys for Defendants First Tennessee
Bank National Association (successor by
Merger to First Horizon Home Loan
Corporation), FTN Financial Securities
Corp., First Horizon Asset Securities, Inc.,
and UBS Securities LLC*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2014 AUG 18  PM 3: 26

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

FEDERAL   DEPOSIT   INSURANCE
CORPORATION   AS   RECEIVER   FOR
GUARANTY BANK,
        **Plaintiff,**

-vs-
                                                **Case No.  A-14-CA-126-SS**

MERRILL   LYNCH,   PIERCE,   FENNER   &
SMITH INC. and RBS SECURITIES INC.,
        **Defendants.**

## O R D E R

    BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., and RBS Securities Inc.'s Motion for Judgment on the Pleadings [#41], Plaintiff Federal Deposit Insurance Corporation's Response [#45], and Defendants' Reply [#46]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion.

### Background

    In 2004 and 2005, Guaranty Bank paid some $2.1 billion for twenty residential mortgage-backed securities certificates, including three certificates from the Defendants in this case. Guaranty Bank subsequently failed, and the FDIC was appointed as receiver on August 21, 2009. The FDIC filed this lawsuit in Texas state court on August 17, 2012, alleging the live Defendants and several

others violated the Securities Act of 1933 and the Texas Securities Act by making material misstatements and omissions concerning the mortgages underlying the securities.

The case was initially removed to this Court, but the FDIC prevailed on a motion to remand and the case was returned to the state court. *See FDIC v. J.P. Morgan Secs. LLC*, No. 1:12-CV-878-SS (W.D. Tex. Dec. 5, 2012). The case proceeded before the state district court, and the parties eventually briefed and argued a summary judgment motion. Before the state court could render a decision on that dispositive motion, the FDIC settled all of its 1933 Act claims, leaving only its TSA claims against the live Defendants. The case was then removed to this Court for the second time.

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Defendants contend the FDIC's TSA claims are barred by the TSA's five-year statute of repose,[1] relying heavily on the United States Supreme Court's recent decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which held state statutes of repose are not preempted by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA). The FDIC counters the TSA's statute of repose is preempted by the FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). Because the FDIC Extender Statute allows the FDIC up to three years from the date on which it is appointed as receiver for a failed bank to bring claims on behalf of the bank, the FDIC contends its TSA claims are timely.

---

[1] TEX. REV. CIV. STAT. ANN. art. 581-33(h)(2)(b) (providing "[n]o person may sue" under the TSA "more than five years after the sale" of the securities at issue); *see also Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 401 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.) (discussing the TSA's "five-year repose period"); *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1018, 1023–24 & n.3 (C.D. Cal. 2013) (*Guaranty I*) (holding article 581-33(H)(2)(b) is a five-year statute of repose, and collecting Texas cases so holding).

# Analysis

## I.    Legal Standard

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II.    Application

Defendants' no-preemption argument is premised on an application of the Supreme Court's reasoning in *Waldburger* to the FDIC Extender Statute contained in FIRREA. Because *Waldburger* is central to the parties' dispute, the Court begins with a discussion of the case. Then, following the analytical path laid by the Supreme Court, the Court analyzes the FDIC Extender Statute's text, legislative history, and statutory purpose. Ultimately, a faithful application of *Waldburger*'s logic to the FDIC Extender Statute compels the conclusion the TSA's statute of repose is not preempted, and operates to bar the FDIC's untimely claims.

### A.    The *Waldburger* Decision

In *Waldburger*, the Supreme Court was called upon to interpret 42 U.S.C. § 9658, a provision of CERCLA. 134 S. Ct. at 2180. Section 9658 extends the "discovery rule" to toxic tort cases because of the latent nature of many chemical-induced injuries, and "by its terms pre-empts statutes of limitations applicable to state-law tort actions in certain circumstances." *Id.* The question before the Court was whether § 9658 also preempts state statutes of repose.

-4-

The Supreme Court granted certiorari to resolve a split of authority among the lower courts on this question. The Fourth Circuit below had held § 9658 is ambiguous, but should be construed to preempt state statutes of repose in order to give effect to CERCLA's remedial purpose. *Id.* at 2181–82. In so holding, the Fourth Circuit agreed with the Ninth Circuit, which had addressed the question several years earlier. *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008), *abrogated by Waldburger*, 131 S. Ct. at 2180. On the other side of the divide, the Fifth Circuit and the Supreme Court of South Dakota had both held § 9658 only preempts state statutes of limitations, not state statutes of repose. *See Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) (*BNSF*); *Clark Cnty. v. Sioux Equip. Corp.*, 753 N.W.2d 406, 417 (S.D. 2008). The Supreme Court sided with the latter courts, holding § 9658 does not preempt state statutes of repose. *Waldburger*, 132 S. Ct. at 2180.

The Supreme Court began its analysis by distinguishing between statutes of limitations and statutes of repose. *Id.* at 2182. Recognizing "both are mechanisms used to limit the temporal extent or duration of liability for tortious acts," the Court distinguished the two by virtue of their timing, purposes, and objectives. *Id.* Statutes of limitations "create[] a time limit for suing in a civil case, based on the date when the claim accrued," generally meaning the date "when the injury occurred or was discovered." *Id.* (internal quotation marks omitted). By contrast, statutes of repose "put[] an outer limit on the right to bring a civil action" based on "the date of the last culpable act or omission of the defendant" rather than the date of accrual. *Id.* The Court characterized a statute of repose as "equivalent to a cutoff," noting it may bar a suit even "before the plaintiff has suffered a resulting injury" or learned of a claim. *See id.* at 2182–83 (internal quotation marks omitted). Statutes of repose provide "a fresh start or freedom from liability." *Id.* at 2183. To highlight this distinction, the

-5-

Court noted statutes of limitations are often subject to equitable tolling in extraordinary

circumstances, but statutes of repose are not. *Id.*

    With those distinctions in mind, the Court turned to its analysis of § 9658. The Court began

by analyzing the text of the statute,[2] because "Congressional intent is discerned primarily from the

statutory text." *Id.* at 2185. The framework of § 9658 expressly makes preemption "an '[e]xception'

to the regular rule." *Id.* (quoting 42 U.S.C. § 9658(a)(1)). The phrase "statute of limitations" is used

---

[2] Section 9658 reads, in relevant part, as follows:

**(a) State statutes of limitations for hazardous substance cases**

    **(1) Exception to State statutes**

    In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

    **(2) State law generally applicable**

    Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

. . .

**(b) Definitions**

. . .

    **(2) Applicable limitations period**

    The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

    **(3) Commencement date**

    The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

    **(4) Federally required commencement date**

    **(a) In general**

    Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

    **(b) Special rules**

    In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

    (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

    (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.

"four times (not including the caption)," but "statute of repose" never appears. *Id.* The Court found

this feature "instructive, but . . . not dispositive" because Congress has a history of using the term

"statute of limitations" in a broad manner, including when enacting statutes of repose. *Id.* (citing 15

U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) and 42 U.S.C. § 2278 as examples of federal statutes of repose

labeled statutes of limitations).

Because Congress sometimes calls statutes of repose statutes of limitations, the Court looked

for "other evidence of the meaning of the term 'statute of limitations' as it is used in § 9658." *Id.* The

Court examined a range of historical legal materials in an attempt to discern what the drafters of

CERCLA might have understood when they enacted the statute in 1986. *Id.* at 2185–86. The Court

concluded "the distinction between statutes of limitations and statutes of repose was understood by

some courts and scholars before 1986." *Id.* at 2185. The distinction was sufficiently established that

a 1982 Study Group Report commissioned by Congress in the process of enacting CERCLA referred

to both statutes of limitations and statutes of repose, and expressly recommended Congress repeal

both kinds of statutes. *Id.* at 2186. Given this historical background, the Court found Congress's

failure to expressly refer to statutes of repose indicative of Congress's intent to "not exercise the full

scope of its pre-emption power." *Id.*

Returning to its textual analysis, the Court noted § 9658 repeatedly refers to the period of

time it covers in the singular. *Id.* at 2186–87. "The statute uses the terms 'the applicable limitations

period,' 'such period shall commence,' and 'the statute of limitations established under State law.'

This would be an awkward way to mandate the pre-emption of two different time periods with two

different purposes." *Id.* Additionally, by defining the applicable limitations period "as 'the period'

during which a 'civil action' under state law 'may be brought,'" § 9658 "presupposes that 'a

[covered] civil action' exists." *Id.* at 2187 (quoting 42 U.S.C. § 9658(b)(2)). Because a statute of

repose "can prohibit a cause of action from coming into existence," this language presupposing an

accrued claim "is best read to encompass only statutes of limitations." *Id.* Finally, § 9658 authorizes

equitable tolling for minor and incompetent plaintiffs, which is one of the "critical distinction[s]"

between statutes of limitations (which allow tolling) and statutes of repose (which do not). *Id.*

(internal quotation marks omitted).

      Turning to the purpose of CERCLA, the Court rejected the argument § 9658 impliedly

preempts state statutes of repose because such statutes prevent Congress's goals from being

accomplished—namely, "help[ing] plaintiffs bring tort actions for harm caused by toxic

contaminants." *Id.* at 2188. The Court criticized this framing of CERCLA's purpose as too general,

explaining CERCLA is only one part of a complex network of legal remedies. *See id.* "Section 9658

leaves untouched States' judgments about causes of action, the scope of liability, the duration of the

period provided by statutes of limitations, burdens of proof, rules of evidence, and other important

rules governing civil actions." *Id.* Given Congress's decision to leave those vast swaths of state law

untouched, the Court found "[t]he case for federal pre-emption . . . particularly weak." *Id.* (internal

quotation marks omitted).

      Finally, despite finding preemption foreclosed by "the natural reading of § 9658's text," the

Court noted the traditional presumption against preemption gave additional support to its conclusion.

*Id.* at 2188–89. Even assuming § 9658 could be plausibly read to favor preemption of state statutes

of repose, the presumption cautions in favor of "a narrow interpretation" given the States' traditional

role in establishing tort law. *Id.* Accordingly, the Court concluded § 9658 does not preempt state

statutes of repose.

**B.     The FDIC Extender Statute**

The FDIC contends its claims are timely because the FDIC Extender Statute contained in FIRREA preempts the TSA's five-year statute of repose. The FDIC Extender Statute provides, in relevant part:

**(14) Statute of limitations for actions brought by conservator or receiver**

**(A) In general**

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
. . .

**(ii)** in the case of any tort claim . . . the longer of—

**(I)** the 3-year period beginning on the date the claim accrues; or
**(II)** the period applicable under State law.

**(B) Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

**(i)** the date of the appointment of the [FDIC] as conservator or receiver; or

**(ii)** the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(A)–(B).

The Court's task is to analyze this provision in light of the Supreme Court's decision in *Waldburger*.

## 1.    Statutory Text

The Court begins with the text of the statute, because "Congressional intent is discerned primarily from the statutory text." *Waldburger*, 134 S. Ct. at 2185; *see also BNSF*, 419 F.3d 362 ("A court considers the language used in a statute as conclusive unless Congress has clearly expressed a contrary intent."). Like § 9658 of CERCLA, the FDIC Extender Statute uses the term "statute of limitations" several times, but never mentions statutes of repose. *E.g.*, 12 U.S.C. § 1821(d)(14)(A), (B). "This is instructive, but not dispositive." *Waldburger*, 134 S. Ct. at 2185. If Congress had intended to preempt state statutes of repose, it certainly could have said so; its failure to do so is therefore an important indication of its intent, unless Congress has elsewhere expressed a specific desire to include statutes of repose within the sweep of the FDIC Extender Statute. *See id.* at 2185–86; *see also BNSF*, 419 F.3d at 364 ("The plain language of § 9658, however, refers to state statutes of limitations—not state statutes of repose. This court is bound by that plain language, absent express congressional intent to the contrary. Congress did not express a contrary intent in this instance." (footnote omitted)).

Also like § 9658, the FDIC Extender Statute is tied to the concept of accrual. Just as § 9658 presupposes a claim exists and therefore can be brought, the FDIC Extender Statute's operation hinges on the date the FDIC's claims[3] accrue. The FDIC Extender Statute states "the applicable statute of limitations . . . shall be" the longer of the "period beginning on the date the claim accrues" or "the period applicable under State law." 12 U.S.C. § 1821(d)(14)(A)(i)–(ii). The next subsection of the statute is dedicated to determining the accrual date of claims. *Id.* § 1821(d)(14)(B) (captioned "Determination of the date on which a claim accrues"). Because statutes of repose "may preclude

---

[3] In this instance, any claims are technically Guaranty Bank's claims, inherited by the FDIC as its receiver.

an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm ever

occurs," the statutory focus on claim accrual suggests the statute should be "read to encompass only

statutes of limitations." *Waldburger*, 134 S. Ct. at 2187.[4]

Continuing this trend, the FDIC Extender Statute is also nearly identical to § 9658 in its

repeated references to a singular time period. The FDIC Extender Statute sets forth "the applicable

statute of limitations," "the date on which the statute of limitations begins to run," and references

both "the period applicable under State law" and "the date on which the cause of action accrues."

12 U.S.C. § 1821(d)(14)(A)–(B). "This would be an awkward way to mandate the pre-emption of

two different time periods with two different purposes." *Waldburger*, 134 S. Ct. at 2187.

The FDIC attempts to distinguish the FDIC Extender Statute from § 9658 by arguing the

FDIC Extender Statute "replaces" state law limitations periods, whereas § 9658 merely "alters"

them. No such distinction can be drawn between the statutes. Section 9658 alters state limitations

periods only when the state limitations period commences from an earlier date. 42 U.S.C.

§ 9658(a)(1) ("[I]f the application limitations period for such action (as specified in the State statute

of limitations or under common law) provides a commencement date *which is earlier than* the

federally required commencement date, such period shall commence at the federally required

commencement date in lieu of the date specified in such State statute." (emphasis added)). In other

words, § 9658 imposes a federal discovery rule on toxic tort claims even where state limitations

---

[4] The FDIC argues Congress also uses the term "accrues" when enacting statutes of repose, suggesting the accrual language in the FDIC Extender Statute does not evince any intent to exclude statutes of repose. The first half of this argument is undeniably true, both of Congress and state legislatures. The state statute of repose at issue in *Waldburger* even used the term "accrue." *See* N.C. GEN. STAT. ANN. § 1-52(16) ("[N]o cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action."). But the FDIC's conclusion does not follow from its premise. As the Supreme Court explained in *Waldburger*, statutes of repose are "not related to the accrual of any cause of action," and therefore it makes no sense to read a statute setting forth accrual dates as preempting statutes of repose. 134 S. Ct. at 2187 (internal quotation marks omitted).

periods would not include such a rule. *See id.* § 9658(b)(4)(A) (defining the "federally required commencement date" as "the date the plaintiff knew (or reasonably should have known)" the injury was "caused or contributed to by" a toxic substance). In either case, the "applicable limitations period" is drawn from the state statute of limitations. *Id.* § 9658(b)(2). Similarly, the FDIC Extender Statute alters state statutes of limitations only when they are shorter than the alternative federal limitations period; if the state statute is more generous, its terms continue to apply. *See* 12 U.S.C. § 1821(d)(14)(A)(ii) (the "applicable statute of limitations" for tort claims is "the longer of" the three-year federal limitations period or the state law limitations period).

The FDIC also argues the FDIC Extender Statute is materially different from § 9658 because § 9658's preemption clause is structured as an "exception" to the general rule that state statutes of limitations apply. By contrast, says the FDIC, the FDIC Extender Statute applies broadly to "any action brought by [the FDIC]." 12 U.S.C. § 1821(d)(14)(A). This is also a distinction not found in the statutes. Section 9658, though couched as an exception, plainly applies to "any action" within the scope of CERCLA's environmental tort protections. 42 U.S.C. § 9658(a)(1). The "exception" merely limits the use of the "federally required commencement date," which itself is merely an incarnation of the discovery rule. *Id.* Section 9658 thus ensures all claims within CERCLA's coverage receive the benefit of the discovery rule, either by operation of state law or by operation of § 9658's "exception" to state law. Similarly, the FDIC Extender Statute leaves in place state statutes of limitations unless they are shorter than the statute's supplied federal limitations period. *See* 12 U.S.C. § 1821(d)(14)(A)(ii); *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1018, 1027 (C.D. Cal. 2013) (*Guaranty I*) ("[T]he extender provision saves state statutes of limitations from preemption to the extent they exceed the prescribed federal limitations period.").

-12-

Both statutes thus modify state law in some, but not all, circumstances, and expressly apply to "any action" within their respective scopes.

The only substantial distinction the FDIC can draw between § 9658 and the FDIC Extender Statute is the lack of equitable tolling in the latter. Defendants are quick to point out other portions of FIRREA do speak in terms of tolling. *See, e.g.*, 12 U.S.C. § 1821(d)(5)(F)(i) (providing "the filing of a claim with the receiver shall constitute a commencement of an action" for purposes of tolling any statutes of limitations); *id.* § 1821(d)(8)(E)(i) (same). But these provisions do not provide for *equitable tolling*, which was the focus of the *Waldburger* Court's analysis on this point. Moreover, the tolling provisions cited above concern the tolling of state statutes of limitations for claimants filing claims with the FDIC as receiver; those claims are not the same claims subject to the FDIC Extender Statute. Although the case for preemption would be stronger if the FDIC Extender Statute authorized equitable tolling like § 9658 does, the absence of an equitable tolling provision alone does not mandate preemption of state statutes of repose.

## 2. Legislative History

The history of the FDIC Extender Statute and Congress's understanding of statutes of limitations versus statutes of repose is also relevant insofar as it may shed light on what Congress meant when it repeatedly used the phrase "statute of limitations" in the FDIC Extender Statute. *See Waldburger*, 134 S. Ct. at 2186–87 (examining "other evidence of the meaning of the term 'statute of limitations' as used in § 9658"). The history of the FDIC Extender Statute does not provide any evidence Congress meant anything other than what it said in the statute: state statutes of limitations (not repose) are preempted under the circumstances set forth in § 1821(d)(14). Moreover, the understanding Congress had of statutes of limitations and statutes of repose at the time CERCLA

-13-

was passed in 1986 can fairly be imported to Congress three years later when it enacted the FDIC Extender Statute.[5] As the Supreme Court explained in *Waldburger*, although use of those two terms "has not always been precise," the distinction between the two was reflected in the 1982 Study Group Report Congress commissioned as part of CERCLA's enactment. 134 S. Ct. at 2187. Additionally, in rejecting the FDIC's motion to reconsider its prior ruling holding the FDIC Extender Statute did not preempt the TSA's statute of repose, the *Guaranty I* court found "statements in the Congressional Record both prior to and contemporaneous with the enactment of FIRREA suggest that Congress understood the meaning of the term 'statute of repose' but nevertheless failed to use it in the extender statute." *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1031, 1037 (C.D. Cal. 2013) (*Guaranty II*).

### 3.    Statutory Purpose

Like the unsuccessful respondents in *Waldburger*, the FDIC suggests clear statutory text should be massaged to mean something else in order to advance the generalized goal of the statute. Here, the FDIC contends the FDIC Extender Provision must be interpreted to preempt state statutes of repose in order to ensure the FDIC has adequate time to investigate and bring claims inherited from failed banks.[6] This is the same basic goal-oriented reasoning rejected by *Waldburger*. 134 S.

---

[5] Analyzing the issue without the benefit of *Waldburger*, the *Guaranty I* court found the use of the phrase "statute of limitations" was ambiguous because "Congress and federal courts continued to confuse the terms 'statute of limitations' and 'statute of repose' in 2008." *Guaranty I*, 966 F. Supp. 2d at 1026. Despite this ambiguity, the court found no legislative history sufficient to "overcome the presumption that Congress did not intend to preempt areas of traditional state regulation," and held the TSA's statute of repose was not preempted. *Id.* at 1027.

[6] This is, in essence, a "conflict preemption" argument. The *Guaranty I* court rejected this argument, finding any conflict was insufficient to justify preemption. 996 F. Supp. 2d at 1028–29 (collecting cases holding "a federal interest in preserving the deposit insurance fund is insufficient to preempt state laws"). The Court agrees with *Guaranty I*'s assessment of this argument. *See id.* at 1029–30 ("Preemption in this case would effectively permit the FDIC to succeed to a substantially different right than that held by Guaranty Bank. FIRREA does not manifest Congress'[s] intent to alter the very nature of state claims to better enable the FDIC to enrich the deposit insurance fund." (citations omitted)).

-14-

Ct. at 2185 (noting "no legislation pursues its purposes at all costs" (internal quotation marks omitted)). FIRREA, like CERCLA, "does not provide a complete remedial framework." *Id.* at 2188. Instead, FIRREA is part of a broader network of laws, including large amounts of state law, used to advance the goals of the FDIC. Like CERCLA, FIRREA "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* As in *Waldburger*, then, the case for preemption here is "particularly weak." *Id.* (internal quotation marks omitted).

In sum, a faithful application of *Waldburger*'s analytical framework to the FDIC Extender Statute compels the conclusion the FDIC Extender Statute does not preempt state statutes of repose. *See Guaranty I*, 966 F. Supp. 2d at 1024–30 (reaching the same conclusion pre-*Waldburger*); *Guaranty II*, 966 F. Supp. 2d 1036–45 (rejecting numerous arguments raised by the FDIC urging reconsideration of *Guaranty I*).[7]

## C.     The FDIC's Pre-*Waldburger* Authorities

The FDIC also relies on a number of pre-*Waldburger* authorities interpreting the FDIC Extender Statute. Unfortunately for the FDIC, none of the cited authorities conduct the same analysis as the Supreme Court did in *Waldburger*, and none requires this Court to hold in the FDIC's favor.

Two Fifth Circuit cases form the vanguard of the FDIC's army of authorities. The first, *FDIC v. Barton*, 96 F.3d 128 (5th Cir. 1996), did not address the issue raised in this case. To the extent

---

[7] The FDIC is understandably upset by the *Guaranty I* court's decision to dismiss its TSA claims. The FDIC now characterizes the *Guaranty I* decision as contrary to that court's own precedent. However, the *Guaranty I* court addressed that argument, explaining its prior decisions "never held explicitly that Section 1821(D)(14) extends *state* statutes of repose." 966 F. Supp. 2d at 1023. Noting that question had "troubled the Court for some time," the Court thoroughly analyzed the issue and held the FDIC Extender Statute does not preempt state statutes of repose. *Id.*

*Barton* is relevant at all, it is relevant only in that it recognizes FIRREA, through the FDIC Extender Statute, "provides a federal statute of limitations for claims brought by [the FDIC] as receiver." 96 F.3d at 132. That proposition is not disputed here, but it also says nothing about whether FIRREA also preempts state statutes of repose. The second Fifth Circuit case is *Stonehedge/FASA-Tex. JDC v. Miller*, 110 F.3d 793, 1997 WL 119899 (5th Cir. 1997) (unpublished). First, *Stonehedge* is not a published opinion and is therefore not binding precedent. Second, *Stonehedge* rejected the notion that statutes of limitations and statutes of repose should be treated differently, explaining the preemption analysis "does not turn on whether the state statute is 'procedural' [meaning a statute of limitations] or 'substantive' [meaning a statute of repose]." 1997 WL 119899, at *2. This reasoning is directly contrary to both *Waldburger* and binding Fifth Circuit precedent. *See Waldburger*, 132 S. Ct. at 2185–87; *BNSF*, 419 F.3d at 363–64 (explaining the important differences between statutes of limitations and statutes of repose, and holding § 9658's plain language only preempts the former). Third, *Stonehedge* ultimately concluded the state law at issue, a provision of the Texas Property Code, was a statute of limitations, not a statute of repose. 1997 WL 119899, at *3. Given these distinctions, *Stonehedge* offers no support for the FDIC's position.[8]

Next up is *Federal Housing Finance Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir. 2013), which held a similar extender statute found in the Housing and Economic Recovery Act of 2008 preempted state statutes of repose as well as state statutes of limitations. First, *UBS* is not

---

[8] Somewhat surprisingly, the FDIC makes no effort to address *BNSF*, a published Fifth Circuit opinion holding § 9658 does not preempt a Texas statute of repose using analysis remarkably similar to the Supreme Court's in *Waldburger*. *See BNSF*, 419 F.3d at 363–64. The logic of that case, which properly interpreted CERCLA's extender provision nearly a decade before the Supreme Court addressed the issue in *Waldburger*, applies with equal force to the FDIC Extender Statute, and suggests state statutes of repose are not preempted. *See id.* at 364 ("The plain language of § 9658, however, refers to state statutes of limitations—not state statutes of repose. This court is bound by that plain language, absent express congressional intent to the contrary.").

binding law in this circuit, and the Court may disregard it for that reason alone. Second, *UBS*'s conclusion is irreconcilable with the Supreme Court's interpretation of § 9658 in *Waldburger*, and it is ultimately the Supreme Court's analysis which must control. Because the Court declines to follow *UBS*, the Court is unpersuaded by the several district court opinions the FDIC cites which rely primarily on *UBS* in reaching their conclusions.

To the extent any of these authorities suggest the FDIC Extender Provision is at least ambiguous, *Waldburger* mandates the narrower interpretation—holding state statutes of repose are not preempted—must control. *See Waldburger*, 134 S. Ct. at 2188–89 (applying the presumption against preemption).[9] The Court also rejects the FDIC's argument any ambiguity in the FDIC Extender Statute should be construed in favor of the government. First, the statute is not ambiguous: it plainly applies only to statutes of limitations. Second, the FDIC in its role as receiver "steps into the shoes" of Guaranty Bank, and should therefore be treated as any other private litigant. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86–87 (1994) (internal quotation marks omitted) (declining the FDIC's invitation to create federal common law to supplement FIRREA in light of its "high federal interest").

## Conclusion

In sum, the FDIC Extender Statute, like the CERCLA extender statute, preempts only state law statutes of limitations; it says nothing about state statutes of repose. Given this holding, there is no dispute the TSA's five-year statute of repose bars all of the FDIC's claims against the

---

[9] The portion of the Supreme Court's opinion in *Waldburger* which applied the presumption against preemption did not garner majority support. The four justices who joined all but that portion of the opinion did so because, as explained by Justice Scalia in his concurrence, "ordinary principles of statutory construction demonstrate that 42 U.S.C. § 9658 pre-empts only statutes of limitation and not statutes of repose." *Waldburger*, 134 S. Ct. at 2189 (Scalia, J., concurring). The same is true of the FDIC Extender Statute, but, to the extent the presumption does apply, it counsels against preemption.

remaining Defendants in this case. The latest claim brought by the FDIC in this case was extinguished by the statute of repose on December 30, 2010, five years from the date Guaranty Bank purchased the securities. The FDIC has therefore failed to state any claim for which relief can be granted.

Accordingly,

IT IS ORDERED that Defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., and RBS Securities Inc.'s Motion for Judgment on the Pleadings [#41] is GRANTED;

IT IS FINALLY ORDERED that all remaining claims brought by Plaintiff Federal Deposit Insurance Corporation in the above-styled cause are DISMISSED WITH PREJUDICE as time-barred by the Texas Securities Act's statute of repose.

SIGNED this the _18th_ day of August 2014.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



FILED

2014 AUG 18 PM 3: 26

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR
GUARANTY BANK,

            **Plaintiff,**

-vs-

                                         Case No. A-14-CA-129-SS

GOLDMAN, SACHS & CO. and DEUTSCHE
BANK SECURITIES INC.,

            **Defendants.**

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Goldman, Sachs & Co. and Deutsche Bank Securities Inc.'s Motion for Judgment on the Pleadings [#51], Plaintiff Federal Deposit Insurance Corporation's Response [#55], and Defendants' Reply [#56]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders GRANTING the motion.

### Background

In 2004 and 2005, Guaranty Bank paid some $2.1 billion for twenty residential mortgage-backed securities certificates, including four certificates from the Defendants in this case. Guaranty Bank subsequently failed, and the FDIC was appointed as receiver on August 21, 2009. The FDIC filed this lawsuit in Texas state court on August 17, 2012, alleging the live Defendants and several others violated the Securities Act of 1933 and the Texas Securities Act by making material misstatements and omissions concerning the mortgages underlying the securities.

The case was initially removed to this Court, but the FDIC prevailed on a motion to remand and the case was returned to the state court. *See FDIC v. Ally Secs. LLC*, No. 1:12-CV-872-SS (W.D. Tex. Dec. 5, 2012). The case proceeded before the state district court, and the parties eventually briefed and argued a summary judgment motion. Before the state court could render a decision on that dispositive motion, the FDIC settled all of its 1933 Act claims, leaving only its TSA claims against the live Defendants. The case was then removed to this Court for the second time.

Defendants now move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Defendants contend the FDIC's TSA claims are barred by the TSA's five-year statute of repose,[1] relying heavily on the United States Supreme Court's recent decision in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which held state statutes of repose are not preempted by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA). The FDIC counters the TSA's statute of repose is preempted by the FDIC Extender Statute, 12 U.S.C. § 1821(d)(14), a provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). Because the FDIC Extender Statute allows the FDIC up to three years from the date on which it is appointed as receiver for a failed bank to bring claims on behalf of the bank, the FDIC contends its TSA claims are timely.

---

[1] TEX. REV. CIV. STAT. ANN. art. 581-33(h)(2)(b) (providing "[n]o person may sue" under the TSA "more than five years after the sale" of the securities at issue); *see also Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 401 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.) (discussing the TSA's "five-year repose period"); *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1018, 1023–24 & n.3 (C.D. Cal. 2013) (*Guaranty I*) (holding article 581-33(H)(2)(b) is a five-year statute of repose, and collecting Texas cases so holding).

## Analysis

### I.    Legal Standard

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Motions for judgment on the pleadings are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks omitted). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

Defendants' no-preemption argument is premised on an application of the Supreme Court's reasoning in *Waldburger* to the FDIC Extender Statute contained in FIRREA. Because *Waldburger* is central to the parties' dispute, the Court begins with a discussion of the case. Then, following the analytical path laid by the Supreme Court, the Court analyzes the FDIC Extender Statute's text, legislative history, and statutory purpose. Ultimately, a faithful application of *Waldburger*'s logic to the FDIC Extender Statute compels the conclusion the TSA's statute of repose is not preempted, and operates to bar the FDIC's untimely claims.

### A. The *Waldburger* Decision

In *Waldburger*, the Supreme Court was called upon to interpret 42 U.S.C. § 9658, a provision of CERCLA. 134 S. Ct. at 2180. Section 9658 extends the "discovery rule" to toxic tort cases because of the latent nature of many chemical-induced injuries, and "by its terms pre-empts statutes of limitations applicable to state-law tort actions in certain circumstances." *Id.* The question before the Court was whether § 9658 also preempts state statutes of repose.

-4-

The Supreme Court granted certiorari to resolve a split of authority among the lower courts on this question. The Fourth Circuit below had held § 9658 is ambiguous, but should be construed to preempt state statutes of repose in order to give effect to CERCLA's remedial purpose. *Id.* at 2181–82. In so holding, the Fourth Circuit agreed with the Ninth Circuit, which had addressed the question several years earlier. *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008), *abrogated by Waldburger*, 131 S. Ct. at 2180. On the other side of the divide, the Fifth Circuit and the Supreme Court of South Dakota had both held § 9658 only preempts state statutes of limitations, not state statutes of repose. *See Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005) (*BNSF*); *Clark Cnty. v. Sioux Equip. Corp.*, 753 N.W.2d 406, 417 (S.D. 2008). The Supreme Court sided with the latter courts, holding § 9658 does not preempt state statutes of repose. *Waldburger*, 132 S. Ct. at 2180.

The Supreme Court began its analysis by distinguishing between statutes of limitations and statutes of repose. *Id.* at 2182. Recognizing "both are mechanisms used to limit the temporal extent or duration of liability for tortious acts," the Court distinguished the two by virtue of their timing, purposes, and objectives. *Id.* Statutes of limitations "create[] a time limit for suing in a civil case, based on the date when the claim accrued," generally meaning the date "when the injury occurred or was discovered." *Id.* (internal quotation marks omitted). By contrast, statutes of repose "put[] an outer limit on the right to bring a civil action" based on "the date of the last culpable act or omission of the defendant" rather than the date of accrual. *Id.* The Court characterized a statute of repose as "equivalent to a cutoff," noting it may bar a suit even "before the plaintiff has suffered a resulting injury" or learned of a claim. *See id.* at 2182–83 (internal quotation marks omitted). Statutes of repose provide "a fresh start or freedom from liability." *Id.* at 2183. To highlight this distinction, the

-5-

Court noted statutes of limitations are often subject to equitable tolling in extraordinary circumstances, but statutes of repose are not. *Id.*

With those distinctions in mind, the Court turned to its analysis of § 9658. The Court began by analyzing the text of the statute,[2] because "Congressional intent is discerned primarily from the statutory text." *Id.* at 2185. The framework of § 9658 expressly makes preemption "an '[e]xception'

---

[2] Section 9658 reads, in relevant part, as follows:

**(a) State statutes of limitations for hazardous substance cases**

    **(1) Exception to State statutes**

    In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

    **(2) State law generally applicable**

    Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

. . .

**(b) Definitions**

. . .

    **(2) Applicable limitations period**

    The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

    **(3) Commencement date**

    The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

    **(4) Federally required commencement date**

    **(a) In general**

    Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

    **(b) Special rules**

    In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

    (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

    (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.

to the regular rule." *Id.* (quoting 42 U.S.C. § 9658(a)(1)). The phrase "statute of limitations" is used "four times (not including the caption)," but "statute of repose" never appears. *Id.* The Court found this feature "instructive, but . . . not dispositive" because Congress has a history of using the term "statute of limitations" in a broad manner, including when enacting statutes of repose. *Id.* (citing 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa) and 42 U.S.C. § 2278 as examples of federal statutes of repose labeled statutes of limitations).

Because Congress sometimes calls statutes of repose statutes of limitations, the Court looked for "other evidence of the meaning of the term 'statute of limitations' as it is used in § 9658." *Id.* The Court examined a range of historical legal materials in an attempt to discern what the drafters of CERCLA might have understood when they enacted the statute in 1986. *Id.* at 2185–86. The Court concluded "the distinction between statutes of limitations and statutes of repose was understood by some courts and scholars before 1986." *Id.* at 2185. The distinction was sufficiently established that a 1982 Study Group Report commissioned by Congress in the process of enacting CERCLA referred to both statutes of limitations and statutes of repose, and expressly recommended Congress repeal both kinds of statutes. *Id.* at 2186. Given this historical background, the Court found Congress's failure to expressly refer to statutes of repose indicative of Congress's intent to "not exercise the full scope of its pre-emption power." *Id.*

Returning to its textual analysis, the Court noted § 9658 repeatedly refers to the period of time it covers in the singular. *Id.* at 2186–87. "The statute uses the terms 'the applicable limitations period,' 'such period shall commence,' and 'the statute of limitations established under State law.' This would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *Id.* Additionally, by defining the applicable limitations period "as 'the period'

during which a 'civil action' under state law 'may be brought,'" § 9658 "presupposes that 'a [covered] civil action' exists." *Id.* at 2187 (quoting 42 U.S.C. § 9658(b)(2)). Because a statute of repose "can prohibit a cause of action from coming into existence," this language presupposing an accrued claim "is best read to encompass only statutes of limitations." *Id.* Finally, § 9658 authorizes equitable tolling for minor and incompetent plaintiffs, which is one of the "critical distinction[s]" between statutes of limitations (which allow tolling) and statutes of repose (which do not). *Id.* (internal quotation marks omitted).

Turning to the purpose of CERCLA, the Court rejected the argument § 9658 impliedly preempts state statutes of repose because such statutes prevent Congress's goals from being accomplished—namely, "help[ing] plaintiffs bring tort actions for harm caused by toxic contaminants." *Id.* at 2188. The Court criticized this framing of CERCLA's purpose as too general, explaining CERCLA is only one part of a complex network of legal remedies. *See id.* "Section 9658 leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* Given Congress's decision to leave those vast swaths of state law untouched, the Court found "[t]he case for federal pre-emption . . . particularly weak." *Id.* (internal quotation marks omitted).

Finally, despite finding preemption foreclosed by "the natural reading of § 9658's text," the Court noted the traditional presumption against preemption gave additional support to its conclusion. *Id.* at 2188–89. Even assuming § 9658 could be plausibly read to favor preemption of state statutes of repose, the presumption cautions in favor of "a narrow interpretation" given the States' traditional

role in establishing tort law. *Id.* Accordingly, the Court concluded § 9658 does not preempt state statutes of repose.

**B.     The FDIC Extender Statute**

The FDIC contends its claims are timely because the FDIC Extender Statute contained in FIRREA preempts the TSA's five-year statute of repose. The FDIC Extender Statute provides, in relevant part:

> **(14) Statute of limitations for actions brought by conservator or receiver**
>
> **(A) In general**
>
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
> . . .
>> **(ii)** in the case of any tort claim . . . the longer of—
>>> **(I)** the 3-year period beginning on the date the claim accrues; or
>>> **(II)** the period applicable under State law.
>
> **(B) Determination of the date on which a claim accrues**
>
> For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
>> **(i)** the date of the appointment of the [FDIC] as conservator or receiver; or
>>
>> **(ii)** the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(A)–(B).

The Court's task is to analyze this provision in light of the Supreme Court's decision in *Waldburger.*

## 1.      Statutory Text

The Court begins with the text of the statute, because "Congressional intent is discerned primarily from the statutory text." *Waldburger*, 134 S. Ct. at 2185; *see also BNSF*, 419 F.3d 362 ("A court considers the language used in a statute as conclusive unless Congress has clearly expressed a contrary intent."). Like § 9658 of CERCLA, the FDIC Extender Statute uses the term "statute of limitations" several times, but never mentions statutes of repose. *E.g.*, 12 U.S.C. § 1821(d)(14)(A), (B). "This is instructive, but not dispositive." *Waldburger*, 134 S. Ct. at 2185. If Congress had intended to preempt state statutes of repose, it certainly could have said so; its failure to do so is therefore an important indication of its intent, unless Congress has elsewhere expressed a specific desire to include statutes of repose within the sweep of the FDIC Extender Statute. *See id.* at 2185–86; *see also BNSF*, 419 F.3d at 364 ("The plain language of § 9658, however, refers to state statutes of limitations—not state statutes of repose. This court is bound by that plain language, absent express congressional intent to the contrary. Congress did not express a contrary intent in this instance." (footnote omitted)).

Also like § 9658, the FDIC Extender Statute is tied to the concept of accrual. Just as § 9658 presupposes a claim exists and therefore can be brought, the FDIC Extender Statute's operation hinges on the date the FDIC's claims[3] accrue. The FDIC Extender Statute states "the applicable statute of limitations . . . shall be" the longer of the "period beginning on the date the claim accrues" or "the period applicable under State law." 12 U.S.C. § 1821(d)(14)(A)(i)–(ii). The next subsection of the statute is dedicated to determining the accrual date of claims. *Id.* § 1821(d)(14)(B) (captioned "Determination of the date on which a claim accrues"). Because statutes of repose "may preclude

---

[3] In this instance, any claims are technically Guaranty Bank's claims, inherited by the FDIC as its receiver.

an alleged tortfeasor's liability before a plaintiff is entitled to sue, before an actionable harm ever occurs," the statutory focus on claim accrual suggests the statute should be "read to encompass only statutes of limitations." *Waldburger*, 134 S. Ct. at 2187.[4]

Continuing this trend, the FDIC Extender Statute is also nearly identical to § 9658 in its repeated references to a singular time period. The FDIC Extender Statute sets forth "the applicable statute of limitations," "the date on which the statute of limitations begins to run," and references both "the period applicable under State law" and "the date on which the cause of action accrues." 12 U.S.C. § 1821(d)(14)(A)–(B). "This would be an awkward way to mandate the pre-emption of two different time periods with two different purposes." *Waldburger*, 134 S. Ct. at 2187.

The FDIC attempts to distinguish the FDIC Extender Statute from § 9658 by arguing the FDIC Extender Statute "replaces" state law limitations periods, whereas § 9658 merely "alters" them. No such distinction can be drawn between the statutes. Section 9658 alters state limitations periods only when the state limitations period commences from an earlier date. 42 U.S.C. § 9658(a)(1) ("[I]f the application limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date *which is earlier than* the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute." (emphasis added)). In other words, § 9658 imposes a federal discovery rule on toxic tort claims even where state limitations

---

[4] The FDIC argues Congress also uses the term "accrues" when enacting statutes of repose, suggesting the accrual language in the FDIC Extender Statute does not evince any intent to exclude statutes of repose. The first half of this argument is undeniably true, both of Congress and state legislatures. The state statute of repose at issue in *Waldburger* even used the term "accrue." *See* N.C. GEN. STAT. ANN. § 1-52(16) ("[N]o cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action."). But the FDIC's conclusion does not follow from its premise. As the Supreme Court explained in *Waldburger*, statutes of repose are "not related to the accrual of any cause of action," and therefore it makes no sense to read a statute setting forth accrual dates as preempting statutes of repose. 134 S. Ct. at 2187 (internal quotation marks omitted).

periods would not include such a rule. *See id.* § 9658(b)(4)(A) (defining the "federally required commencement date" as "the date the plaintiff knew (or reasonably should have known)" the injury was "caused or contributed to by" a toxic substance). In either case, the "applicable limitations period" is drawn from the state statute of limitations. *Id.* § 9658(b)(2). Similarly, the FDIC Extender Statute alters state statutes of limitations only when they are shorter than the alternative federal limitations period; if the state statute is more generous, its terms continue to apply. *See* 12 U.S.C. § 1821(d)(14)(A)(ii) (the "applicable statute of limitations" for tort claims is "the longer of" the three-year federal limitations period or the state law limitations period).

The FDIC also argues the FDIC Extender Statute is materially different from § 9658 because § 9658's preemption clause is structured as an "exception" to the general rule that state statutes of limitations apply. By contrast, says the FDIC, the FDIC Extender Statute applies broadly to "any action brought by [the FDIC]." 12 U.S.C. § 1821(d)(14)(A). This is also a distinction not found in the statutes. Section 9658, though couched as an exception, plainly applies to "any action" within the scope of CERCLA's environmental tort protections. 42 U.S.C. § 9658(a)(1). The "exception" merely limits the use of the "federally required commencement date," which itself is merely an incarnation of the discovery rule. *Id.* Section 9658 thus ensures all claims within CERCLA's coverage receive the benefit of the discovery rule, either by operation of state law or by operation of § 9658's "exception" to state law. Similarly, the FDIC Extender Statute leaves in place state statutes of limitations unless they are shorter than the statute's supplied federal limitations period. *See* 12 U.S.C. § 1821(d)(14)(A)(ii); *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp. 2d 1018, 1027 (C.D. Cal. 2013) (*Guaranty I*) ("[T]he extender provision saves state statutes of limitations from preemption to the extent they exceed the prescribed federal limitations period.").

-12-

Both statutes thus modify state law in some, but not all, circumstances, and expressly apply to "any action" within their respective scopes.

The only substantial distinction the FDIC can draw between § 9658 and the FDIC Extender Statute is the lack of equitable tolling in the latter. Defendants are quick to point out other portions of FIRREA do speak in terms of tolling. *See, e.g.*, 12 U.S.C. § 1821(d)(5)(F)(i) (providing "the filing of a claim with the receiver shall constitute a commencement of an action" for purposes of tolling any statutes of limitations); *id.* § 1821(d)(8)(E)(i) (same). But these provisions do not provide for *equitable tolling*, which was the focus of the *Waldburger* Court's analysis on this point. Moreover, the tolling provisions cited above concern the tolling of state statutes of limitations for claimants filing claims with the FDIC as receiver; those claims are not the same claims subject to the FDIC Extender Statute. Although the case for preemption would be stronger if the FDIC Extender Statute authorized equitable tolling like § 9658 does, the absence of an equitable tolling provision alone does not mandate preemption of state statutes of repose.

## 2. Legislative History

The history of the FDIC Extender Statute and Congress's understanding of statutes of limitations versus statutes of repose is also relevant insofar as it may shed light on what Congress meant when it repeatedly used the phrase "statute of limitations" in the FDIC Extender Statute. *See Waldburger*, 134 S. Ct. at 2186–87 (examining "other evidence of the meaning of the term 'statute of limitations' as used in § 9658"). The history of the FDIC Extender Statute does not provide any evidence Congress meant anything other than what it said in the statute: state statutes of limitations (not repose) are preempted under the circumstances set forth in § 1821(d)(14). Moreover, the understanding Congress had of statutes of limitations and statutes of repose at the time CERCLA

was passed in 1986 can fairly be imported to Congress three years later when it enacted the FDIC

Extender Statute.[5] As the Supreme Court explained in *Waldburger*, although use of those two terms

"has not always been precise," the distinction between the two was reflected in the 1982 Study

Group Report Congress commissioned as part of CERCLA's enactment. 134 S. Ct. at 2187.

Additionally, in rejecting the FDIC's motion to reconsider its prior ruling holding the FDIC Extender

Statute did not preempt the TSA's statute of repose, the *Guaranty I* court found "statements in the

Congressional Record both prior to and contemporaneous with the enactment of FIRREA suggest

that Congress understood the meaning of the term 'statute of repose' but nevertheless failed to use

it in the extender statute." *In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.*, 966 F. Supp.

2d 1031, 1037 (C.D. Cal. 2013) (*Guaranty II*).

## 3. Statutory Purpose

Like the unsuccessful respondents in *Waldburger*, the FDIC suggests clear statutory text

should be massaged to mean something else in order to advance the generalized goal of the statute.

Here, the FDIC contends the FDIC Extender Provision must be interpreted to preempt state statutes

of repose in order to ensure the FDIC has adequate time to investigate and bring claims inherited

from failed banks.[6] This is the same basic goal-oriented reasoning rejected by *Waldburger*. 134 S.

---

[5] Analyzing the issue without the benefit of *Waldburger*, the *Guaranty I* court found the use of the phrase "statute of limitations" was ambiguous because "Congress and federal courts continued to confuse the terms 'statute of limitations' and 'statute of repose' in 2008." *Guaranty I*, 966 F. Supp. 2d at 1026. Despite this ambiguity, the court found no legislative history sufficient to "overcome the presumption that Congress did not intend to preempt areas of traditional state regulation," and held the TSA's statute of repose was not preempted. *Id.* at 1027.

[6] This is, in essence, a "conflict preemption" argument. The *Guaranty I* court rejected this argument, finding any conflict was insufficient to justify preemption. 996 F. Supp. 2d at 1028–29 (collecting cases holding "a federal interest in preserving the deposit insurance fund is insufficient to preempt state laws"). The Court agrees with *Guaranty I*'s assessment of this argument. *See id.* at 1029–30 ("Preemption in this case would effectively permit the FDIC to succeed to a substantially different right than that held by Guaranty Bank. FIRREA does not manifest Congress'[s] intent to alter the very nature of state claims to better enable the FDIC to enrich the deposit insurance fund." (citations omitted)).

Ct. at 2185 (noting "no legislation pursues its purposes at all costs" (internal quotation marks omitted)). FIRREA, like CERCLA, "does not provide a complete remedial framework." *Id.* at 2188. Instead, FIRREA is part of a broader network of laws, including large amounts of state law, used to advance the goals of the FDIC. Like CERCLA, FIRREA "leaves untouched States' judgments about causes of action, the scope of liability, the duration of the period provided by statutes of limitations, burdens of proof, rules of evidence, and other important rules governing civil actions." *Id.* As in *Waldburger*, then, the case for preemption here is "particularly weak." *Id.* (internal quotation marks omitted).

In sum, a faithful application of *Waldburger*'s analytical framework to the FDIC Extender Statute compels the conclusion the FDIC Extender Statute does not preempt state statutes of repose. *See Guaranty I*, 966 F. Supp. 2d at 1024–30 (reaching the same conclusion pre-*Waldburger*); *Guaranty II*, 966 F. Supp. 2d 1036–45 (rejecting numerous arguments raised by the FDIC urging reconsideration of *Guaranty I*).[7]

## C.   The FDIC's Pre-*Waldburger* Authorities

The FDIC also relies on a number of pre-*Waldburger* authorities interpreting the FDIC Extender Statute. Unfortunately for the FDIC, none of the cited authorities conduct the same analysis as the Supreme Court did in *Waldburger*, and none requires this Court to hold in the FDIC's favor.

Two Fifth Circuit cases form the vanguard of the FDIC's army of authorities. The first, *FDIC v. Barton*, 96 F.3d 128 (5th Cir. 1996), did not address the issue raised in this case. To the extent

---

[7] The FDIC is understandably upset by the *Guaranty I* court's decision to dismiss its TSA claims. The FDIC now characterizes the *Guaranty I* decision as contrary to that court's own precedent. However, the *Guaranty I* court addressed that argument, explaining its prior decisions "never held explicitly that Section 1821(D)(14) extends *state* statutes of repose." 966 F. Supp. 2d at 1023. Noting that question had "troubled the Court for some time," the Court thoroughly analyzed the issue and held the FDIC Extender Statute does not preempt state statutes of repose. *Id.*

*Barton* is relevant at all, it is relevant only in that it recognizes FIRREA, through the FDIC Extender

Statute, "provides a federal statute of limitations for claims brought by [the FDIC] as receiver." 96

F.3d at 132. That proposition is not disputed here, but it also says nothing about whether FIRREA

also preempts state statutes of repose. The second Fifth Circuit case is *Stonehedge/FASA-Tex. JDC*

*v. Miller*, 110 F.3d 793, 1997 WL 119899 (5th Cir. 1997) (unpublished). First, *Stonehedge* is not a

published opinion and is therefore not binding precedent. Second, *Stonehedge* rejected the notion

that statutes of limitations and statutes of repose should be treated differently, explaining the

preemption analysis "does not turn on whether the state statute is 'procedural' [meaning a statute of

limitations] or 'substantive' [meaning a statute of repose]." 1997 WL 119899, at *2. This reasoning

is directly contrary to both *Waldburger* and binding Fifth Circuit precedent. *See Waldburger*, 132

S. Ct. at 2185–87; *BNSF*, 419 F.3d at 363–64 (explaining the important differences between statutes

of limitations and statutes of repose, and holding § 9658's plain language only preempts the former).

Third, *Stonehedge* ultimately concluded the state law at issue, a provision of the Texas Property

Code, was a statute of limitations, not a statute of repose. 1997 WL 119899, at *3. Given these

distinctions, *Stonehedge* offers no support for the FDIC's position.[8]

Next up is *Federal Housing Finance Agency v. UBS Americas Inc.*, 712 F.3d 136 (2d Cir.

2013), which held a similar extender statute found in the Housing and Economic Recovery Act of

2008 preempted state statutes of repose as well as state statutes of limitations. First, *UBS* is not

---

[8] Somewhat surprisingly, the FDIC makes no effort to address *BNSF*, a published Fifth Circuit opinion holding § 9658 does not preempt a Texas statute of repose using analysis remarkably similar to the Supreme Court's in *Waldburger. See BNSF*, 419 F.3d at 363–64. The logic of that case, which properly interpreted CERCLA's extender provision nearly a decade before the Supreme Court addressed the issue in *Waldburger*, applies with equal force to the FDIC Extender Statute, and suggests state statutes of repose are not preempted. *See id.* at 364 ("The plain language of § 9658, however, refers to state statutes of limitations—not state statutes of repose. This court is bound by that plain language, absent express congressional intent to the contrary.").

-16-

binding law in this circuit, and the Court may disregard it for that reason alone. Second, *UBS*'s

conclusion is irreconcilable with the Supreme Court's interpretation of § 9658 in *Waldburger*, and

it is ultimately the Supreme Court's analysis which must control. Because the Court declines to

follow *UBS*, the Court is unpersuaded by the several district court opinions the FDIC cites which rely

primarily on *UBS* in reaching their conclusions.

To the extent any of these authorities suggest the FDIC Extender Provision is at least

ambiguous, *Waldburger* mandates the narrower interpretation—holding state statutes of repose are

not preempted—must control. *See Waldburger*, 134 S. Ct. at 2188–89 (applying the presumption

against preemption).[9] The Court also rejects the FDIC's argument any ambiguity in the FDIC

Extender Statute should be construed in favor of the government. First, the statute is not ambiguous:

it plainly applies only to statutes of limitations. Second, the FDIC in its role as receiver "steps into

the shoes" of Guaranty Bank, and should therefore be treated as any other private litigant. *See*

*O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86–87 (1994) (internal quotation marks omitted)

(declining the FDIC's invitation to create federal common law to supplement FIRREA in light of

its "high federal interest").

### Conclusion

In sum, the FDIC Extender Statute, like the CERCLA extender statute, preempts only state

law statutes of limitations; it says nothing about state statutes of repose. Given this holding, there

is no dispute the TSA's five-year statute of repose bars all of the FDIC's claims against the

---

[9] The portion of the Supreme Court's opinion in *Waldburger* which applied the presumption against preemption did not garner majority support. The four justices who joined all but that portion of the opinion did so because, as explained by Justice Scalia in his concurrence, "ordinary principles of statutory construction demonstrate that 42 U.S.C. § 9658 pre-empts only statutes of limitation and not statutes of repose." *Waldburger*, 134 S. Ct. at 2189 (Scalia, J., concurring). The same is true of the FDIC Extender Statute, but, to the extent the presumption does apply, it counsels against preemption.

remaining Defendants in this case. The latest claim brought by the FDIC in this case was extinguished by the statute of repose on December 30, 2010, five years from the date Guaranty Bank purchased the securities. The FDIC has therefore failed to state any claim for which relief can be granted.

Accordingly,

IT IS ORDERED that Defendants Goldman, Sachs & Co. and Deutsche Bank Securities Inc.'s Motion for Judgment on the Pleadings [#51] is GRANTED;

IT IS FINALLY ORDERED that all remaining claims brought by Plaintiff Federal Deposit Insurance Corporation in the above-styled cause are DISMISSED WITH PREJUDICE as time-barred by the Texas Securities Act's statute of repose.

SIGNED this the *18* day of August 2014.

_Sam Sparks_

SAM SPARKS
UNITED STATES DISTRICT JUDGE

# EXHIBIT C

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

_____

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
liquidating agent of U.S. Central Federal
Credit Union and of Western Corporate
Federal Credit Union,

     Plaintiff - Appellee,

v.

NOMURA HOME EQUITY LOAN, INC.,
et al.,

     Defendants - Appellants,

and

FREMONT MORTGAGE SECURITIES
CORP., et al.,

     Defendants.

------------------------------

SECURITIES INDUSTRY AND
FINANCIAL MARKETS
ASSOCIATION; UNITED STATES OF
AMERICA,

     Amici Curiae.

Nos. 12-3295 & 12-3298
(D.C. Nos. 2:11-CV-02340-JWL-JPO &
2:11-CV-02649-JWL-JPO)

_____

## ORDER

_____

Before **KELLY**, **MCKAY**, and **MATHESON**, Circuit Judges.

_____

These matters are before the court following our receipt of the United States Supreme Court's order granting certiorari, vacating our August 27, 2013 decision, and remanding for reconsideration in light of *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014). *See Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, 134 S. Ct. 2818 (2014). The Supreme Court's judgment issued on July 18, 2014. On July 11, 2014 the parties filed supplemental briefs. In addition, on July 11, 2014 the United States filed a brief amicus curiae.

Upon consideration, we reinstate our original opinion, and also direct the clerk to issue our Opinion on Remand. Both our remand opinion and original decision shall be attached to this order. The mandate recalled on July 24, 2014 shall reissue forthwith.

Entered for the Court

*[signature]*

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

**August 19, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
liquidating agent of U.S. Central Federal
Credit Union and of Western Corporate
Federal Credit Union,

       Plaintiff - Appellee,

v.

NOMURA HOME EQUITY LOAN, INC.;
WACHOVIA CAPITAL MARKETS,
LLC, n/k/a Wells Fargo Securities, LLC;
WACHOVIA MORTGAGE LOAN AND
TRUST, LLC; NOVASTAR MORTGAGE
FUNDING CORP.; FINANCIAL ASSET
SECURITIES CORP.; RBS
ACCEPTANCE, INC., f/k/a Greenwich
Capital Acceptance, Inc.; RBS
SECURITIES, INC., f/k/a Greenwich
Capital Markets, Inc.,

       Defendants - Appellants,

   and

FREMONT MORTGAGE SECURITIES
CORP.; INDYMAC MBS, INC.; LARES
ASSET SECURITIZATION, INC.;
RESIDENTIAL FUNDING MORTGAGE
SECURITIES II, INC.,

       Defendants.

-------------------------------

SECURITIES INDUSTRY AND
FINANCIAL MARKETS

Nos. 12-3295 and 12-3298

ASSOCIATION; UNITED STATES OF
AMERICA,

          Amici Curiae.

_____

**OPINION ON REMAND**
_____

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. Nos. 2:11-CV-02340-JWL-JPO and 2:11-CV-02649-JWL-JPO)**
_____

Barry Levenstam, Jenner & Block, Chicago, Illinois  (Barbara S. Steiner, Matthew J.
Thomas, and Casey T. Grabenstein, Jenner & Block, Chicago, Illinois; W. Perry Brandt,
Bryan Cave LLP, Kansas City, Missouri; Arthur E. Palmer, Goodell, Stratton, Edmonds
& Palmer, LLP, Topeka, Kansas; Jeffrey J. Kalinowski and Richard H. Kuhlman, Bryan
Cave LLP, St. Louis, Missouri; William F. Alderman, Orrick, Herrington & Sutcliffe
LLP, San Francisco, California; Timothy B. Mustaine, Foulston Siefkin LLP, Wichita,
Kansas; Michael Thompson and Faiza Bergquist, Husch Blackwell LLP, Kansas City,
Missouri; and R. Alexander Pilmer, David I. Horowitz, and Tammy A. Tsoumas,
Kirkland & Ellis LLP, Los Angeles, California, with him on the briefs), appearing for
Appellants.

David C. Frederick, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.,
Washington, D.C. (George Zelcs, Korein Tillery, Chicago, Illinois; Michael J. McKenna,
General Counsel, and John K. Ianno, Associate General Counsel, National Credit Union
Administration, Alexandria, Virginia; Wan J. Kim, Gregory G. Rapawy, and Daniel V.
Dorris, Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., Washington, D.C., with
him on the brief), appearing for Appellee.

Ira D. Hammerman and Kevin Carroll, Securities Industry and Financial
Markets Association, Washington, D.C., and Michael J. Dell and Aaron M. Frankel,
Kramer Levin Naftalis & Frankel LLP, New York, New York, filed an amicus brief for
Securities Industry and Financial Markets Association.

Stuart F. Delery, Assistant Attorney General, United States Department of Justice,
Washington, DC; Barry R. Grissom, United States Attorney, Office of the United States
Attorney for the District of Kansas, Kansas City, Kansas; and Mark B. Stern and Daniel
Tenny, Attorneys, Appellate Staff, Civil Division, United States Department of Justice,
Washington, DC, filed an amicus brief for the United States of America.

_____

Before **KELLY**, **McKAY**, and **MATHESON**, Circuit Judges.

———————————————————————

**MATHESON**, Circuit Judge.

———————————————————————

On August 27, 2013, we concluded the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") established a universal time frame for the National Credit Union Administration ("NCUA") to bring any actions on behalf of credit unions placed into conservatorship or receivership, notwithstanding any pre-existing time periods applicable to other plaintiffs. *See Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246 (10th Cir. 2013) ("*NCUA*").  Because NCUA filed its federal securities claims in this case during that time frame, we determined its claims could proceed.  *See id.* at 1266-67.  On June 9, 2014, the Supreme Court decided *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which held that the federal commencement date established in an amended provision of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA") for state personal injury or property damage actions preempted only state statutes of limitation, not statutes of repose.  *See id.* at 2187-88.  On June 16, 2014, the Supreme Court granted certiorari in this case, vacated our August 27, 2013 decision, and remanded for reconsideration in light of *CTS*.  *See Nomura Home Equity Loan, Inc. v. Nat'l Credit Union Admin. Bd.*, 134 S. Ct. 2818 (2014).  We have considered the impact of *CTS* on this case and conclude it does not alter our original decision.  We therefore reinstate our previous opinion accompanied by this opinion.

- 3 -

# I. BACKGROUND

## A. *NCUA, FIRREA, and the NCUA Extender Statute*

Established in 1934, NCUA is an independent agency charged with regulating federally chartered credit unions.  If NCUA finds that a credit union is insolvent or (in some circumstances) undercapitalized, it must place the credit union in conservatorship or liquidation and appoint itself as conservator or liquidating agent.  12 U.S.C. §§ 1787(a)(1)(A), (a)(3)(A).  NCUA then steps into the shoes of the credit union and succeeds to "all rights, titles, powers, and privileges of the credit union . . . ."  *Id.* § 1787(b)(2)(A)(i).

In the wake of the 1980s savings and loan crises, Congress enacted FIRREA to "prevent[] the collapse of the industry, attack[] the root causes of the crisis, and restor[e] public confidence."  *United States v. Winstar Corp.*, 518 U.S. 839, 844, 856 (1996).  FIRREA includes a provision governing NCUA enforcement actions titled "Statute of limitations for actions brought by conservator or liquidating agent."  12 U.S.C. § 1787(b)(14).  Also known as the NCUA Extender Statute,[1] this provision reads:

> (A) In general
> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Board[2] as conservator or liquidating agent shall be—
>> (i) in the case of any contract claim, the longer of—

---

[1] FIRREA contains provisions often referred to as "extender statutes," which define the time period for a government regulator to bring "any action" on behalf of a failed financial organization.  One applies to NCUA, which we refer to as the "NCUA Extender Statute" or simply the "Extender Statute."  *See* 12 U.S.C. § 1787(b)(14).

[2] Here, "the Board" refers to the NCUA Board.  12 U.S.C. § 1752(4).

        (I) the 6-year period beginning on the date the claim accrues; or

        (II) the period applicable under State law; and

     (ii) in the case of any tort claim, the longer of—

        (I) the 3-year period beginning on the date the claim accrues; or

        (II) the period applicable under State law.

   (B) Determination of the date on which a claim accrues

   For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

     (i) the date of the appointment of the Board as conservator or liquidating agent; or

     (ii) the date on which the cause of action accrues.

*Id.*  Thus, for "any [federal] tort claim" on behalf of a credit union to be timely, NCUA must sue within three years from either the date it places that credit union into conservatorship (or receivership) or the date on which the cause of action accrues.  *See id.*

## B.  *The Panel's Opinion in* NCUA v. Nomura

In 2006 and 2007, two federally chartered corporate credit unions—U.S. Central and WesCorp—purchased residential mortgage-backed securities ("RMBS") from the Appellants.  *See NCUA*, 727 F.3d at 1252-53.  In March 2009, NCUA placed the two credit unions into conservatorship based on "staggering losses" flowing from these investments.  *Id.* at 1253.  In June and November of 2011, within the three-year time frame required by the Extender Statute, NCUA sued several RMBS issuers on behalf of both credit unions, alleging federal securities torts[3] involving "materially false and

---

      [3] NCUA also alleged state securities torts, but those claims are not before this court on remand.  *See NCUA*, 727 F.3d at 1254 nn.8-9.

misleading statements" in registration and prospectus materials.  *Id.*  The Defendants

(Appellants here) moved to dismiss, asserting NCUA's claims were untimely under a

different limitations period in the Securities Exchange Act of 1933.  According to the

Defendants, the Securities Act's three-year statute of repose (Section 13), which starts

running when the security is offered or sold (rather than when NCUA placed the credit

unions into conservatorship or discovered the violation), barred NCUA's federal

securities claims.  *See* 15 U.S.C. § 77m.  The district court denied the motion, concluding

FIRREA's Extender Statute applies to Section 13's three-year repose period.

On interlocutory appeal, this panel affirmed.  We first determined the "plain

meaning of the statute," which establishes "*the* applicable statute of limitations" for "*any*

action brought by" NCUA.  *NCUA*, 727 F.3d at 1257.  We said this language "indicates

that it applies to NCUA's Securities Act claim and that it supplants all other time limits,

including Section 13's repose period."  *Id.*  We then analyzed how use of the term

"statute of limitations" in the Extender Statute affects the statute's scope.  We determined

the surrounding language and context of FIRREA demonstrates that "the statute is most

reasonably interpreted to govern 'any action' NCUA may bring—and to displace *all*

'statutes of limitations' in the broad sense of the term, which encompasses both ordinary

statutes of limitations and statutes of repose."  *Id.* at 1260.  We gave Appellants "the

benefit of the doubt and assume[d] there may be a modicum of ambiguity as to whether

the Extender Statute covers statutes of repose."  *Id.* at 1262.  But based on a review of

FIRREA's statutory purpose, the use of "statute of limitations" in federal legislation, and

the use of "statute of limitations" in case law, we concluded "any such ambiguity is easily

- 6 -

resolved" and the Extender Statute displaces Section 13's three-year statute of repose. *Id.*[4]

Appellants petitioned the Supreme Court for a writ of certiorari.  On June 16, 2014, the Supreme Court granted Appellants' petition, vacated this panel's previous opinion, and remanded for further consideration in light of its recently issued opinion in *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014), which addressed whether an amended provision of CERCLA[5] preempts state statutes of repose.

## C. *CERCLA and Section 9658*

"Congress enacted CERCLA in 1980 'to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.'"  *CTS*, 134 S. Ct. at 2180 (quoting *Burlington N. & S.F.R. Co. v. United States*, 556 U.S. 599, 602 (2009)).  "The Act provided a federal cause of action to recover costs of cleanup from culpable entities but not a federal cause of action for personal injury or property damage."  *Id.*  "Instead, CERCLA directed preparation of an expert report to determine 'the adequacy of existing common law and statutory remedies in providing legal redress for harm to man and the environment caused by the release of hazardous substances into the environment,' including 'barriers to

---

[4] Because of this conclusion, we declined to "consider whether we should apply the rule of 'construing ambiguous statutes of limitations in Government action in the Government's favor.'"  *NCUA*, 727 F.3d at 1267 n.21 (quoting *O'Gilvie v. United States*, 519 U.S. 79, 92 (1996)).  We observed, however, that we saw "no reason why this rule would not apply to Securities Act claims by the NCUA."  *Id.*

[5] 42 U.S.C. § 9601 *et seq.*

recovery posed by existing statutes of limitations.'" *Id.* (quoting 42 U.S.C. § 9651(e)(1), (3)(F)).

Issued in 1982, the "Study Group Report" "noted the long latency periods involved in harm caused by toxic substances and 'recommend[ed] that all states that have not already done so, clearly adopt the rule that an action accrues when the plaintiff discovers or should have discovered the injury or disease and its cause.'" *Id.* at 2181 (quoting Senate Committee on Environment and Public Works, Superfund Section 301(e) Study Group, *Injuries and Damages from Hazardous Wastes—Analysis and Improvement of Legal Remedies*, 97th Cong., 2d Sess. pt. 1, at 256 (Comm. Print 1982) (hereinafter Study Group Report or Report)). "The Report further stated: 'The Recommendation is intended also to cover the repeal of the statutes of repose which, in a number of states[,] have the same effect as some statutes of limitation in barring [a] plaintiff's claim before he knows that he has one.'" *Id.* (quoting and altering Study Group Report pt. 1, at 256).

Although the Study Group Report called upon states to change their laws, in 1986 Congress amended CERCLA "to add the provision now codified in § 9658," *id.*, which provides in pertinent part as follows:

(a) State statutes of limitations for hazardous substance cases

(1) Exception to State statutes

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required

commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

(2) State law generally applicable

Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

. . . . .

(b) Definitions

. . . . .

(2) Applicable limitations period

The term "applicable limitations period" means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought.

(3) Commencement date

The term "commencement date" means the date specified in a statute of limitations as the beginning of the applicable limitations period.

(4) Federally required commencement date

(A) In general

Except as provided in subparagraph (B), the term "federally required commencement date" means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

(B) Special rules

In the case of a minor or incompetent plaintiff, the term "federally required commencement date" means the later of the date referred to in subparagraph (A) or the following:

- 9 -

> (i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.
>
> (ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed.

42 U.S.C. § 9658.

Section 9658 generally provides that "the statute of limitations established under State law shall apply in all actions brought under State law" for personal injury or property damage stemming from industrial pollution, *id.* § 9658(a)(2), except when "the applicable limitations period" under state law "provides a commencement date which is earlier than the federally required commencement date," *id.* § 9658(a)(1).  In such cases, instead of the state law commencement date, the "period shall commence at the federally required commencement date"—that is, "the date the plaintiff knew (or reasonably should have known)" that his personal injury or property damage stemmed from a "hazardous substance or pollutant or contaminant."  *Id.* § 9658(a)(1) & (b)(4)(A).  Despite the Study Group Report's distinction between "statutes of limitations" and "statutes of repose," however, § 9658 did not employ the term "statute of repose."

### D. *The Supreme Court's Decision in* CTS Corp. v. Waldburger

In *CTS*, property owners in North Carolina brought a state-law nuisance action based on well contamination against CTS Corporation, which ran an electronics plant on their land from 1959 to 1985.  *CTS Corp.*, 134 S. Ct. at 2181.  Although CTS sold the property in 1987, the plaintiffs did not discover their well water was contaminated until

2009. *Id.* They filed suit in 2011. *Id.* CTS moved to dismiss the claim under North Carolina's statute of repose, which bars any tort suit brought more than 10 years after the last culpable act of the defendant. N.C. Gen. Stat. Ann. § 1-52(16); *CTS Corp.*, 134 S. Ct. at 2181. The district court granted CTS's motion to dismiss. *CTS Corp.*, 134 S. Ct. at 2181. On appeal, the Fourth Circuit reversed, concluding that CERCLA's federal commencement date preempted North Carolina's statute of repose. *See id.* at 2181-82.

The Supreme Court granted certiorari and reversed. Because "[i]t is undoubted that the discovery rule in § 9658 pre-empts state statutes of limitations that are in conflict with its terms," the Court limited its focus to "whether § 9658 also pre-empts state statutes of repose," *id.* at 2180—that is, whether § 9658's federal commencement date modifies the starting date under state law for both statutes of limitation and statutes of repose when it refers to "the 'applicable limitations period,'" *id.* at 2185 (quoting 42 U.S.C. § 9658). The Court concluded (for the reasons discussed below) that the "applicable [state] limitations period" displaced by CERCLA's federal commencement date does not include state statutes of repose, and thus the plaintiffs' claims were barred under North Carolina's 10-year statute of repose.

## II. **DISCUSSION**

We conclude the Court's decision in *CTS* does not alter our original conclusion that NCUA's federal claims were timely. First, (A) the Extender Statute and § 9658 are fundamentally different. The Extender Statute plainly establishes a universal time frame for all actions brought by NCUA, notwithstanding any other limitations frameworks governing other plaintiffs' claims. Section 9658 addresses only when the accrual date for

- 11 -

state hazardous waste claims alleging personal injury or property damage begins to run. Second, (B) conventional tools of statutory construction confirm the Extender Statute replaces all pre-existing time limits that otherwise may have applied to NCUA claims.

A. **CTS** *does not change this panel's principal conclusion that the Extender Statute sets a universal time frame for the NCUA to bring any claims.*

In *CTS*, the Supreme "Court note[d] first that § 9658, in the caption of subsection (a), characterizes pre-emption as an 'exception' to the regular rule" that "'State law [is] generally applicable.'" 134 S. Ct. at 2185 (quoting 42 U.S.C. § 9658(a)(1) & (a)(2)) (brackets omitted). "Under this structure," the Court reasoned, "state law is not pre-empted unless it fits into the precise terms of the exception." *Id.*

The text and structure of the Extender Statute are fundamentally different from § 9658.[6] The Extender Statute creates "*the* applicable statute of limitations" for "*any action* brought by" NCUA on behalf of a failed credit union. 12 U.S.C. § 1787(b)(14)(A) (emphasis added). The Extender Statute on its face gives the NCUA its own time limits to file enforcement actions on behalf of credit unions in conservatorship or receivership. It specifies the time limits for "any action[s]" brought by NCUA, irrespective of whether the time limits in the statutes on which such "action[s]" are based (such as the Securities Act) might expire sooner for other plaintiffs, and irrespective of whether those time limits

---

[6] Appellants make a threshold analytical misstep by equating the statute at issue in this case with the statute in *CTS* and proceeding to argue that the results in the two cases should be the same. But rather than being "analogous" or "quite similar," Aplt. Supp. Br. at 1-2, the Extender Statute and § 9658 are so different that *CTS* does not alter our primary conclusion that the Extender Statute plainly establishes a universal time frame for all NCUA enforcement actions.

are statutes of limitations or repose.  Put another way, by establishing all-purpose time

limits for any actions NCUA may wish to pursue, the Extender Statute "displaces *all*

preexisting limits on the time to bring suit, whatever they are called."  Aplee. Supp. Br. at

4.

Section 9658 of CERCLA has a completely different structure.  Rather than

setting its own time limit to bring a personal injury or property damage claim based on

hazardous waste, § 9658 recognizes that the time limits in state statutes apply.  It further

provides the applicable state limitations period starts to run no earlier than the "federally

required commencement date," 42 U.S.C. § 9658(a)(1), which is defined in terms of

accrual[7]—when the plaintiff knew or should have known of the hazardous waste injury.

The "federally required commencement date" thus functions as an "'exception' to the

regular rule," *CTS Corp.*, 134 S. Ct. at 2185, that "the statute of limitations established

under State law shall apply . . . ."  42 U.S.C. § 9658.

Unlike § 9658's federal commencement date, the limitations framework provided

in the Extender Statute does not establish a narrow "'exception' to the regular rule."  *CTS

Corp.*, 134 S. Ct. at 2185 (brackets omitted).  Instead, it creates the exclusive time

framework for all NCUA enforcement actions and replaces all other time periods.

---

[7] Appellants argue that because the Extender Statute also uses the word "accrue,"
it must affect only statutes of limitation and not statutes of repose contained in other
statutes on which NCUA relies to bring enforcement actions.  *See* Aplt. Supp. Br. at 5-6.
Appellants fail to recognize the Extender Statute sets time limits for any NCUA
enforcement actions, and whether the time framework for NCUA actions includes an
accrual feature does not change that it replaced other time limits, whether they are called
statutes of limitations or repose.

Accordingly, unlike the applicable state limitations periods modified by § 9658's federal

commencement date, the time limits displaced by the Extender Statute need not "fit[] into

[its] precise terms . . . ." *Id.*

      The contrast between the two statutes is stark.  The time limits for the federal

claims at issue under the Extender Statute are contained within the Extender Statute itself

and apply only to NCUA actions.  The time limits under § 9658 for personal injury and

property damage actions, on the other hand, are largely contained in state statutes outside

of § 9658 and apply to all plaintiffs.  As the United States highlighted in its *CTS* amicus

brief:

> Section 9658 contrasts markedly with other statutes [such as the Extender
> Statute, § 1787(b)(14),] in which Congress chose to override *all* otherwise
> applicable time limitations. . . .  In one set of such statutes [including
> § 1787(b)(14)], Congress created a new, exclusive time limitation
> applicable to claims brought by specified federal agencies as conservator,
> receiver, or liquidating agent for failed financial institutions. . . . [In
> § 9658], by contrast, Congress did not enact a new time limitation to
> supersede all others.  Instead, Congress altered particular preexisting state
> statutes of limitations in only one limited respect—by changing the date on
> which the cause of action accrued.  Congress otherwise left time limitations
> unchanged, explicitly stating that those time limitations continue to apply
> "[e]xcept" to the extent that they are specifically superseded by federal law.

Br. for the United States as Amicus Curiae at 22-23, *CTS Corp. v. Waldburger*, No. 13-

339 (U.S. filed Mar. 3, 2014) ("U.S. *Waldburger* Br."), *available at* 2014 WL 828057

(quoting and altering 42 U.S.C. § 9658(a)(2)).

      In light of the fundamental differences between § 9658 and the Extender Statute,

we reaffirm our original conclusion, which is sufficient to resolve the instant case:  the

Extender Statute plainly establishes its own exclusive time limits for NCUA enforcement actions and displaces all others, including statutes of limitations and repose.

B. **CTS** *does not change our conclusion regarding the scope of the Extender Statute*

1. **The panel's opinion**

In our original opinion, after determining the plain meaning of the Extender Statute as establishing a universal time limit for all NCUA lawsuits, we employed tools of statutory construction—surrounding text, statutory context, and statutory purpose—to confirm that meaning. In doing so, we "assume[d] for the sake of discussion" the plausibility of Appellants' contention that the breadth of the term "statute of limitations" in the Extender Statute may affect the scope of its universal time frame. *NCUA*, 727 F.3d at 1258. We then "examine[d] the term 'statute of limitations' more closely." *Id.* After acknowledging that "standing alone, the words 'statute of limitations' may be ambiguous" and may or may not include statutes of repose, we determined the Extender Statute's surrounding language, statutory context, and statutory purpose compel a "broad" interpretation of the term that includes statutes of repose. *Id.* at 1258-60.[8] We therefore concluded that even under Appellants' aforementioned plausible contention, the Extender Statute's universal time frame displaces statutes of repose. *CTS* does not change that analysis.

---

[8] Conversely, by "narrow," we mean an interpretation of "statute of limitations" that does not include "statutes of repose."

## 2.  Use of the term "statute of limitations"

This panel's original opinion consulted dictionary definitions, case law, and treatises to determine the ordinary meaning of "statute of limitations" when Congress enacted FIRREA in 1989.  *See NCUA*, 727 F.3d at 1258-59.  Although we believed our "discussion support[ed] the broader meaning of 'statute of limitations,'" we acknowledged "that, standing alone, the words 'statute of limitations' may be ambiguous."  *Id.* at 1259; *see also id.* n.14 ("Courts have noted the historically ambiguous and overlapping use of these terms." (citing cases)).  We therefore considered other factors specific to FIRREA to determine whether the Extender Statute used the term "statute of limitations" in the broad or narrow sense.

Similarly, in *CTS*, the Supreme Court analyzed § 9658's use of the term "statute of limitations."  The Court found it "instructive, but . . . not dispositive" that "§ 9658 uses the term 'statute of limitations'" but "not the term 'statute of repose'" because "'statute of limitations' has acquired a precise meaning, distinct from 'statute of repose' . . . ."  *CTS Corp.*, 134 S. Ct. at 2185.[9]  Like this panel's original opinion, however, the Court

---

[9] In doing so, the Court rejected the plaintiffs' reliance on a 1979 edition of Black's Law Dictionary that "likely reflects an earlier, broader usage in which the term 'statute of repose' referred to all provisions delineating the time in which a plaintiff must bring suit."  *CTS Corp.*, 134 S. Ct. at 2186.

Our original opinion cited that edition favorably in observing the distinction between "statutes of limitations" and "statutes of repose" has not always been clear.  *See NCUA*, 727 F.3d at 1258-59.  But we also acknowledged that "[t]he next edition of Black's Law Dictionary, published in 1994, provided a separate entry for 'Statute of repose' that addressed the distinctions between repose and limitations periods," *id.* at 1259 n.13 (citing Black's Law Dictionary 1411 (6th ed. 1994)), and we ultimately

Continued. . .

- 16 -

recognized that "the term 'statute of limitations' is sometimes used in a less formal way" and "can refer to any provision restricting the time in which a plaintiff must bring suit." *Id.* at 2185. The Court further acknowledged that "Congress has used the term 'statute of limitations' when enacting statutes of repose." *Id.*

Faced with this ambiguity, the Supreme Court looked to factors specific to CERCLA to conclude § 9658 preempted only state statutes of limitations and not statutes of repose. *See id.* (observing that "the Court must proceed to examine other evidence of the meaning of the term 'statute of limitations' *as it is used in § 9658*" (emphasis added)). As we discuss below, none of those factors changes our analysis of FIRREA's Extender Statute, whose surrounding language, statutory context, and statutory purpose compel a broad reading of the term "statute of limitations." *See U.S. Waldburger* Br. at 22-23 ("The text, context, and history of [several provisions creating a new limitations period for federal agencies, including the Extender Statute,] make clear that Congress intended an exclusive, uniform time limitation to apply to actions brought by the designated federal agencies.").[10]

_____

concluded (as did the Court in *CTS*) that the term "statute of limitations" can be ambiguous standing alone. *See id.* at 1259.

[10] Appellants note our original opinion cited two cases that the Supreme Court explicitly overruled, *see Waldburger v. CTS Corp.*, 723 F.3d 434 (4th Cir. 2013), *rev'd*, 134 S. Ct. 2175 (2014), and *McDonald v. Sun Oil Co.*, 548 F.3d 774 (9th Cir. 2008), *abrogated by CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014). *See* Aplt. Suppl. Br. at 10. Although we agree those cases' conclusion that CERCLA's federal commencement date preempts state statutes of repose is no longer valid, this panel relied upon those cases for the uncontroversial proposition that the term "statute of limitations" can be ambiguous and to point out an example of how courts had interpreted CERCLA's

Continued. . .

- 17 -

a. *Surrounding language*

Our original opinion looked first to the Extender Statute's surrounding language to shed light on the scope of the term "statute of limitations." We recognized the Extender Statute's new limitations framework includes the concept of accrual, which is "generally associated with the narrow meaning of 'statute of limitations.'" *NCUA*, 727 F.3d at 1260. But we further observed "the Extender Statute also includes the concept of repose." *Id.* Specifically, the Extender Statute provides that the limitations period begins to run either (i) on "the date of the appointment of [NCUA] as conservator or liquidating agent" or (ii) when "the cause of action accrues." *See* 12 U.S.C. § 1787(b)(14)(B)(i) & (ii). Option (i) invokes the concept of repose because it is based on when a specific event occurs, regardless of whether the plaintiff is aware of the injury.[11]

The statute in *CTS* is completely different. Section 9658 exclusively adopts a discovery-based accrual framework and contains no such concept of repose, which

_____

extender statute. *See NCUA*, 727 F.3d at 1258, 1266 n.20. Neither decision was critical to this panel's conclusion that FIRREA's Extender Statute, which is fundamentally different from CERCLA's, employs "statute of limitations" in the broad sense.

[11] Appellants argue the Extender Statute does not invoke the concept of repose because "a statute of repose is measured from the 'last culpable act or omission *of the defendant*,'" rather than "an act of the *plaintiff* NCUA." Aplt. Suppl. Br. at 12 (quoting and emphasizing *CTS Corp.*, 134 S. Ct. at 2182). We disagree. Although a statute of repose may begin to run from the last culpable act or omission of the defendant, *see CTS Corp.*, 134 S. Ct. at 2182, its distinguishing feature from a statute of limitation is that "the period specified in a statute of repose begins *when a specific event occurs*, regardless of whether a cause of action has accrued or whether any injury has resulted." 54 C.J.S. *Limitations of Actions* § 7 (2014) (emphasis added); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1056 (3d ed. 2010) (observing that "the point of commencement for the applicable statute of repose is *commonly* the date of the last act or omission that caused the plaintiff's injury" (emphasis added)).

- 18 -

suggests it can only be read to displace statutes of limitations and not statutes of repose.

The provision defines the "federally required commencement date" as "the date the

plaintiff knew (or should reasonably have known) about his or her injury." *See* 42 U.S.C.

§ 9658(b)(4)(A).  Statutes of limitations in state actions therefore begin to run under

CERCLA's time limits only "when a plaintiff discovers, or reasonably should have

discovered, that the harm in question was caused by the contaminant." *CTS Corp.*, 134 S.

Ct. at 2180.

 The Court's discussion in *CTS* about § 9658's surrounding language does not

change our original conclusion regarding the Extender Statute.

  i. Use of the singular to describe the relevant "period"

 In *CTS*, the Court observed that Congress's use of a singular term—"period"—to

identify the object (as opposed to objects) of federal preemption suggests how far it

intended § 9658's federal commencement date to reach.  Because "describing the covered

[state] *period*" modified by the federal commencement date "in the singular" "would be

an awkward way to mandate the pre-emption of two different time periods with two

different purposes," the Court concluded Congress must have intended to leave state

repose periods alone.  *Id.* at 2186-87 (emphasis added); *see also id.* at 2186 (discussing

"the applicable limitations *period*," "such *period* shall commence," and "the *statute* of

limitations established under State law" (emphasis added)).  In other words, if Congress

had meant the federal commencement date to displace both statutes of limitations and

statutes of repose, it would have used the term "periods" as the object of federal

preemption.

The Extender Statute does not use the term "period" in a comparable way.

Appellants nonetheless point to this passage:

(A) In general

. . . . .

[T]he applicable statute of limitations with regard to any action brought by the [NCUA] as conservator or liquidating agent shall be—

      (i) in the case of any contract claim, the longer of—
          (I) the 6-year period beginning on the date the claim accrues; or
          (II) the *period* applicable under State law; and
      (ii) in the case of any tort claim, the longer of—
          (I) the 3-year period beginning on the date the claim accrues; or
          (II) the *period* applicable under State law.
(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—
      (i) the date of the appointment of the Board as conservator or liquidating agent; or
      (ii) the date on which the cause of action accrues.

12 U.S.C. § 1787(b)(14) (emphasis added).

Unlike § 9658, however, which employs the word "period" in the singular to describe the "applicable *limitations* period," 42 U.S.C. § 9658(a)(1) (emphasis added), the Extender Statute refers generally to the "period applicable under State law," 12 U.S.C. § 1787(b)(14)(A)(i)(II) & (ii)(II), without using the word "limitations" to modify "period." Moreover, unlike § 9658, which employs the term "applicable limitations period" to identify the state law time frame modified by the federal commencement date (that is, the specific object of federal preemption), the Extender Statute uses "period applicable under State law" to help construct a new exclusive time framework for NCUA

- 20 -

actions that replaces all pre-existing time limits (including repose periods).  Whether the state period used to construct this framework is one of limitations or repose has no bearing on whether the new Extender Statute framework itself displaces statutes of repose.

Finally, the Extender Statute's remaining timing provisions, which do not appear in § 9658, should not be ignored.  The "period applicable under State law" in the Extender Statute only applies if it is longer than three (or six, for contract claims) years from the later of (i) the date of the NCUA's appointment as conservator or liquidating agent or (ii) the date on which the cause of action accrues.  *See* 12 U.S.C. § 1787(b)(14)(B).[12]  Because the Extender Statute provides this framework—which, as discussed above, includes the concept of repose—independent of the "period applicable under State law," the use of the word "period" does not exclude statutes of repose from the Extender Statute's scope.

ii.  Use of the term "civil action"

The *CTS* Court also pointed to § 9658's definition for the preempted "applicable limitations period":  "the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought."  42 U.S.C. § 9658(b)(2).  Although the Court acknowledged that "in a literal sense a statute of repose limits the time during which a suit 'may be brought' because it provides a point after which a suit cannot be brought," it found persuasive § 9658's use of the term "civil

---

[12] It plainly does not apply to the federal securities claims at issue in this case.

action," which is a "'civil suit stating a legal cause of action.'"  134 S. Ct. at 2187

(quoting Black's Law Dictionary 32-33, 222 (9th ed. 2009)).  A "statute of repose," by

contrast, "is not related to the accrual of any cause of action" and "can prohibit a cause of

action from coming into existence."  *Id.* (quotations omitted).  The Court therefore

concluded the definition of the preempted "'applicable limitations period' . . . is best read

to encompass only statutes of limitations, which generally begin to run after a cause of

action accrues and so always limit the time in which a civil action 'may be brought.'"  *Id.*

Here, unlike § 9658, the Extender Statute does not use the term "civil action"; it

refers more broadly to "any action."   12 U.S.C. § 1787(b)(14)(A).  The term "any

action" also appears in § 9658, but the Court did not address the phrase "any action" in

*CTS*, and we otherwise do not understand the *CTS* disposition to turn on the "civil action"

point alone.[13]  The Court relied on several points for its analysis, including the accrual

character of § 9658.  As discussed above, § 9658's surrounding language, unlike the

Extender Statute, is cast exclusively in terms of the discovery rule for accrual, which

applies to the narrow understanding of "statute of limitations."  We therefore do not think

the "civil action" reference in *CTS* overcomes the reasons we have identified to show that

---

[13] Other federal statutes describe "action[s]" that may be brought within repose periods.  *See* 15 U.S.C. § 78u-6(h)(1)(B)(iii) (providing that an "action under" Dodd-Frank's whistleblower retaliation provision "may not in any circumstance be brought more than 10 years after the date on which the violation occurs"); 28 U.S.C. § 1658 (providing that "a private right of action" involving securities fraud "may be brought not later than the earlier" of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation").

the time framework in the Extender Statute replaces other previously-applicable time periods, including repose limits.

    iii. <u>Equitable tolling</u>

The *CTS* Court said "[a]nother and altogether unambiguous textual indication that § 9658 does not pre-empt statutes of repose is that § 9658 provides for equitable tolling for 'minor or incompetent plaintiff[s].'"  134 S. Ct. at 2187 (quoting and altering § 9658(b)(4)(B)).  Because a "critical distinction between statutes of limitations and statutes of repose is that a repose period is fixed and its expiration will not be delayed by estoppel or tolling," "the inclusion of a tolling rule in § 9658 suggests that the statute's reach is limited to statutes of limitations, which traditionally have been subject to tolling."  *Id.* at 2187-88 (quotations omitted).  Here, unlike § 9658, FIRREA's Extender Statute does not mention equitable tolling.

          \*       \*       \*

In sum, the Extender Statute's surrounding language differs considerably from § 9658's in that it features the concept of repose, uses the word "period" differently, and lacks a tolling provision.  The Court's analysis of the terms "period" and "civil action," as well as the tolling provision in § 9658, cannot be extended to the Extender Statute because its text and structure are fundamentally different from § 9658.  The Court's decision in *CTS* does not alter our original conclusion that the term "statute of limitations" should be construed broadly to include statutes of repose.

b. *Statutory context*

The panel's original opinion also considered FIRREA's statutory context in

concluding the Extender Statute employs the broad meaning of "statute of limitations."

*See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365,

371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the

remainder of the statutory scheme—because the same terminology is used elsewhere in a

context that makes its meaning clear, or because only one of the permissible meanings

produces a substantive effect that is compatible with the rest of the law." (citations

omitted)).

Section 1787 refers to "statute of limitations" or "statute of limitation" in six

provisions, including the Extender Statute.[14]  The word "repose" does not appear.  Three

subsections set deadlines for appealing NCUA's denial of a claim, without allowing for

accrual or tolling—yet all are clearly labeled "statutes of limitations."  *See* 12 U.S.C.

---

[14] Besides the Extender Statute, the term "statute of limitation(s)" appears in the
following provisions:  12 U.S.C. § 1787(b)(5)(F)(i) (tolls "any applicable statute of
limitations" on external claims against a credit union when the claimant files a claim with
NCUA); *id.* at § 1787(b)(6)(B) (sets a 60-day "[s]tatute of limitations" for federal court
review or administrative appeal of external claims denied by NCUA); *id.* at
§ 1787(b)(8)(D) (sets 30-day "[s]tatute of limitations" for federal court review or
administrative appeal of external claims denied by NCUA under expedited claims
process); *id.* at § 1787(b)(8)(E)(i) (allows tolling of "any applicable statute of limitations"
on external claims against a credit union when claimant files a claim with NCUA under
expedited claims process); *id.* at § 1787(d)(4) (sets a "[s]tatute of limitations" of "not
later than 60 days" for filing a federal court challenge to NCUA's denial of claim for
payment of an insured deposit).

§§ 1787(b)(6)(B), (b)(8)(D), (d)(4).[15]  Two references to statutes of limitations in § 1787 that provide for tolling of "any applicable statute of limitation" support the narrow interpretation adopted in *CTS*, but these tolling provisions apply only when an *external claimant*—not the NCUA itself—files a claim with NCUA against a failed credit union. *See id.* §§ 1787(b)(5)(F)(i), (b)(8)(E)(i).  Moreover, "[t]hese provisions are consistent with the broad definition of 'statute of limitations' because the broad encompasses the narrow . . . ." *NCUA*, 727 F.3d at 1261.

Taken together, Congress's use of the term in the broad sense in other FIRREA provisions suggests it should be construed broadly in the Extender Statute.  Nothing in *CTS*, which did not consider the meaning of "statute of limitations" within CERCLA's broader statutory context, undermines that conclusion.

c. *Statutory purpose*

In our original opinion, we considered FIRREA's legislative history and stated purpose to resolve "any lingering ambiguity" about the Extender Statute's broad use of the term "statute of limitations."  *NCUA*, 727 F.3d at 1262; *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80 (2004) (looking to statutory purpose to interpret an ambiguous statute).  After reviewing the statements of FIRREA's sponsor and the statute's stated purpose, we concluded "the legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose." *NCUA*,

---

[15] Appellants argue these provisions "merely set procedural deadlines," Aplt. Suppl. Br. at 13, but Congress referred to them as "statute[s] of limitations," which informs how broadly Congress meant the term to be employed in the Extender Statute.

727 F.3d at 1264.  Nothing in *CTS*'s discussion of CERCLA's legislative history and purpose alters that conclusion.

     i.  <u>Legislative history</u>

Our original opinion considered FIRREA's legislative history in confirming our conclusion that the Extender Statute employs the broad meaning of "statute of limitations" and displaces statutes of repose.  In submitting FIRREA's conference report to the Senate, the law's sponsor said the extender provisions should "be construed to maximize potential recoveries . . . by preserving *to the greatest extent permissible by law* claims [filed by the Government] that would otherwise have been lost due to the expiration of hitherto applicable limitations period."  135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989) (statement of Senator Donald W. Riegle, Jr., then-Chairman of the Committee on Banking, Housing, and Urban Affairs and sponsor of FIRREA in the Senate, regarding the FDIC extender statute, which is identical to the NCUA Extender Statute) (emphasis added); *see also UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir. 1999) ("In interpreting a statute, we accord substantial weight to statements by its sponsors concerning purpose and scope.").

As we noted in our original opinion, "[w]e have previously relied on this statement and similar statements in the legislative record when interpreting the purpose and scope of the FIRREA extender statutes."  *NCUA*, 727 F.3d at 1263 (citing *UMLIC-Nine Corp.*, 168 F.3d at 1178 (relying on same statement by Sen. Riegle)).  So have other circuits. *See SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 242 n.21 (5th Cir. 1999) (relying on similar comments concerning the purpose of the extender statutes); *FDIC v. N.H. Ins.*

- 26 -

*Co.*, 953 F.2d 478, 486-87 & n.2 (9th Cir. 1991) (relying on the same statement by Sen. Riegle).

In *CTS*, the Supreme Court noted the Study Group Report's recommendation that states replace both their "statutes of limitations" and "statutes of repose" with more generous time periods.  It concluded Congress would have used both terms when it amended CERCLA if it had wanted to preempt statutes of repose.  *See* 134 S. Ct. at 2186. Commissioned by Congress in advance of CERCLA's 1986 amendment, the 1982 Report "acknowledged that statutes of repose were not equivalent to statutes of limitations and that a recommendation to pre-empt the latter did not necessarily include the former." *Id.* at 2186.  The Supreme Court concluded that by "clearly urg[ing] the repeal of statutes of repose as well as statutes of limitations," the "Report did what [§ 9658] does not:  It referred to statutes of repose as a distinct category.  And when Congress did not make the same distinction, it is proper to conclude that Congress did not exercise the full scope of its pre-emption power." *Id.*

Unlike CERCLA's 1986 amendment, there is no evidence Congress distinguished between statutes of limitation and statutes of repose when enacting FIRREA in 1989.[16] FIRREA's legislative history lacks anything remotely similar to the Study Group Report prepared in advance of CERCLA's amendment.  And nothing else in FIRREA's

---

[16] More fundamentally, Appellants' argument that Congress was aware of the difference between statutes of limitations and repose when it passed the Extender Statute, *see* Aplt. Supp. Br. at 2-4, 6-7, 10-12, misses the Extender Statute's core feature:  it established a universal time frame for NCUA enforcement actions.  *See supra*, Part II.A.

legislative history suggests Congress meant to use the term "statute of limitations" narrowly in the Extender Statute to exclude statutes of repose.[17]  Nor does Congress's awareness of the distinction when it amended CERCLA in 1986 mean that it had this distinction in mind when it enacted FIRREA in 1989.  Despite the Study Group Report's reference to "statutes of repose," Congress has used the term "statute of limitations" or related terms in legislation several times after CERCLA and FIRREA to encompass repose periods.[18]

---

[17]  Indeed, the statement of FIRREA's sponsor suggests precisely the opposite.  In referring to the extender statutes' displacement of "applicable limitations periods," 135 Cong. Rec. S10205 (daily ed. Aug. 4, 1989), Senator Riegle cited *International Union of Elec., Radio and Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 243 (1976).  In that case, the Supreme Court considered whether Congress's extension of Title VII's 90-day "*limitations period*," which begins to run when the plaintiff is discharged and therefore invokes the concept of repose, applied retroactively to the plaintiff's claim.  *Id.* at 231-32 & n.1. The Court first rejected the plaintiff's equitable tolling arguments, one of which asserted the interests of justice outweighed the limitations period's "*policy of repose*."  *Id.* at 237-38 & n.11 (quotations omitted) (emphasis added).  The Court nevertheless concluded that Congress could—and did— retroactively extend the "limitations period" governing the plaintiff's claim from 90 to 180 days when it amended Title VII in 1972.  *See id.* at 243 (emphasis added).  The reference to this case in FIRREA's legislative history alongside the term "limitations periods" suggests the Extender Statute displaces "statute of limitations" broadly, including statutes of repose.

[18]  *See, e.g.*, Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, § 922(a), 124 Stat. 1376, 1841, 1846 (2010) (codified at 15 U.S.C. § 78u-6(h)(1)(B)(iii)(I)(aa); stating, in a subsection entitled "Statute of limitations," that an action "may not be brought" "more than 6 years after the date on which the violation" occurred); *CTS Corp.*, 134 S. Ct. at 2185 (acknowledging § 78u-6(h)(1)(B)(iii)(I)(aa) is a "statute of repose . . . in a provision entitled 'Statute of limitations'"); Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, tit. VIII, § 804(a), 116 Stat. 745, 801 (2002) (codified at 28 U.S.C. § 1658; referring to two-year limitations period and five-year repose period as "Time limitations on the commencement of civil actions arising under Acts of Congress"); General Aviation Revitalization Act of 1994, Pub. L. No. 103-298, 108 Stat. 1552, 1552-53 (1994) (codified at 49 U.S.C. § 40101

Continued. . .

ii.  Stated purpose

In our original opinion, we also considered FIRREA's stated purpose (as articulated by the Supreme Court and the statute itself) in concluding "the legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose." *NCUA*, 727 F.3d at 1264.  Congress enacted FIRREA to "prevent[] the collapse of the industry, attack[] the root causes of the crisis, and restor[e] public confidence." *Winstar Corp.*, 518 U.S. at 856.  The preamble to the bill described FIRREA as "An Act to reform, recapitalize, and consolidate the Federal deposit insurance system, to enhance the regulatory and enforcement powers of Federal financial institutions regulatory agencies, and for other purposes."  FIRREA, Pub. L. No. 101-73, 103 Stat. 183 (1989).  FIRREA's stated purpose also included "[t]o strengthen the enforcement powers of Federal regulators of depository institutions," *id.* § 101(9), and "[t]o strengthen the civil sanctions and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors," *id.* § 101(10).

In *CTS*, the Court rejected the plaintiffs' argument that "pre-emption of statutes of repose advances § 9658's purpose, namely to help plaintiffs bring tort actions for harm caused by toxic contaminants."  134 S. Ct. at 2188.  The Court cautioned that "the level of generality at which the statute's purpose is framed affects the judgment whether a

_____

note; describing eighteen-year repose period as a "limitation period"); National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, § 311(a), 100 Stat. 3755, 3769-70 (codified at 42 U.S.C. § 300aa-16(a); creating several time periods under heading "Limitations of actions," including one that begins to run based on the statute's effective date).

specific reading will further or hinder that purpose.  CERCLA, it must be remembered,

does not provide a complete remedial framework."  *Id.*  On the contrary, § 9658 "leaves

untouched States' judgments about causes of action, the scope of liability, the duration of

the period provided by statutes of limitations, burdens of proof, rules of evidence, and

other important rules governing civil actions."  *Id.* at 2188.  "[I]n light of Congress'

decision to leave those many areas of state law untouched," the Supreme Court concluded

the plaintiffs failed to show that "statutes of repose pose an unacceptable obstacle to the

attainment of CERCLA's purposes."  *Id.*[19]

Here, unlike CERCLA's incomplete "remedial framework," *id.* at 2188,

FIRREA's statutory purpose (as explained by its sponsor, the Supreme Court, and in the

statute itself), though generally stated, demonstrates Congress meant any ambiguity in the

term "statute of limitations" to be construed broadly.  When Congress enacted the

Extender Statute, it not only gave the NCUA the time it needs to do its work, it also

relieved the NCUA from the burden of complying with multiple federal and state statutes

of limitations by giving it a statute of limitations of its own.  It strains common sense to

think Congress would have saddled the NCUA with having to comply with multiple

federal and state statutes of repose.  As this panel observed in its original opinion, "the

---

[19] Justices Kennedy, Sotomayor, and Kagan also found "additional support for [the majority's] conclusion in well-established presumptions about the nature of pre-emption"—that is, "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption."  *CTS Corp.*, 134 S. Ct. at 2188 (Kennedy, J., concurring) (quotations omitted).
     Because this rationale is unnecessary to resolve the instant case, we do not consider it here.

legislative purpose of FIRREA supports the conclusion that the Extender Statute applies to statutes of repose." *NCUA*, 727 F.3d at 1264.

\*       \*       \*

In light of the foregoing, we conclude *CTS*, which dealt with a fundamentally different statute, does not change our original conclusion that the Extender Statute's universal time frame for NCUA actions unambiguously displaces all pre-existing time periods, including Section 13's three-year statute of repose.  Because of this conclusion, we need not consider whether to apply the rule of "construing ambiguous statutes of limitations in Government action in the Government's favor." *O'Gilvie v. United States*, 519 U.S. 79, 92 (1996).  Although "[w]e see no reason why this rule would not apply to Securities Act claims by the NCUA," and we note that Appellants come nowhere close to showing their own strained interpretation of the Extender Statute is unambiguous, the rule is "not needed here." *NCUA*, 727 F.3d at 1267 n.21.

### III. CONCLUSION

We conclude *CTS Corp.* does not alter our original conclusion that NCUA's federal securities claims were timely under the Extender Statute.[20]  We reissue our original opinion along with the foregoing opinion on remand.

---

[20] Given our conclusion that *CTS Corp.* does not alter our original conclusion, we need not reconsider Appellants' arguments concerning repeal by implication.  *See NCUA*, 727 F.3d at 1266-67.

- 31 -