# ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/2/18

**FEDERAL DEPOSIT INSURANCE
CORPORATION as receiver for Colonial
Bank,**

                    Plaintiff,

            - against -

**FIRST HORIZON ASSET SECURITIES INC.;
FIRST HORIZON HOME LOAN CORPORATION;
CREDIT SUISSE SECURITIES (USA) LLC;
DEUTSCHE BANK SECURITIES INC.; FTN
FINANCIAL SECURITIES CORP.; HSBC
SECURITIES (USA) INC.; RBS SECURITIES
INC.; UBS SECURITIES LLC; and WELLS
FARGO ASSET SECURITIES CORPORATION,**

                    Defendants.

12 Civ. 6166 (LLS)

**OPINION & ORDER**

        Defendants move under Federal Rule of Civil Procedure

12(b)(6) to dismiss the first five counts in the Second Amended

Complaint ("SAC") for failure to state a claim upon which relief

can be granted. For the reasons that follow, the motion is

granted in part and denied in part.

## BACKGROUND

        Plaintiff Federal Deposit Insurance Corporation ("FDIC")

commenced this action as receiver for Colonial Bank ("Colonial")

seeking to recover damages incurred by Colonial from

misrepresentations made by the defendants in connection with

Colonial's purchase of residential mortgage backed securities

issued or underwritten by the defendants in violation of the

Securities Act of 1933 (the "1933 Act").

-1-

The SAC alleges that the "defendants issued, underwrote, and/or sold eight securities known as "certificates" (the Certificates) which were backed by collateral pools of residential mortgage loans." SAC (Dkt. No. 178) ¶ 1. Colonial, located in Montgomery, Alabama, purchased those certificates between June and September of 2007 through a wholly owned Nevada based subsidiary. Id. ¶ 2, Schedules 1-11, Item 37(b). As the housing market collapsed many of the loans backing the certificates defaulted and Colonial incurred heavy losses. On August 14, 2009, Alabama regulators closed Colonial and appointed FDIC as receiver.

The certificates were created in a process known as securitization. Id. ¶ 24. That process begins when an originator issues loans to borrowers to finance the purchase of homes. Id. Those loans are issued pursuant to the originator's underwriting standards which ensure that the borrower will be able to repay the loan. Id. The originator then takes a large number of similar type loans, known as a collateral pool, and sells them, along with the right to cash flow from those loans, to a trust. Id. ¶ 26. The trust pays for those collateral pools by issuing securities, known as certificates, which are sold to investors. Id. Each certificate entitles its holder to an agreed part of the cash flow from the collateral pools. Id.

The prime mover of the securitization is known as the

sponsor. Id. ¶ 31. Sometimes, the sponsor is the originator of the loans. Id. Other times, the sponsor is an investment bank. Id. The investment bank purchases loans from one or more originator, aggregates them into a collateral pool, and sells the collateral pool to an entity known as a depositor. Id. The depositor then sells the collateral pool to the trust. Id. The trust does not sell its certificates directly to the investing public. Rather, investment banks known as underwriters prepare, sign, and file necessary disclosure documents with the United States Securities and Exchange Commission ("SEC"), purchase the certificates from the trust, and then sell those certificates to investors. Id. ¶ 33.

Because potential investors do not have access to the loan files, they rely on the information contained in the disclosure documents that the underwriters file with the SEC. Id. ¶ 35. Those documents contain information compiled by the underwriters about the loans in the collateral pools backing the various securities. Id.

Specifically, the SAC alleges that defendants Credit Suisse Securities (USA) LLC, RBS Securities Inc., HSBC Securities (USA) Inc., and Deutsche Bank Securities Inc. (collectively the "underwriter defendants") underwrote and sold to Colonial five of the certificates at issue. See id. ¶¶ 118-33. Defendants FTN Financial Securities Corp. and UBS Securities LLC underwrote two

of the securities that Colonial purchased. See id. ¶¶ 230-31.
Defendants First Horizon Asset Securities Inc. and Wells Fargo
Asset Securities Corporation (collectively the "depositor
defendants") were the depositors for four of the certificates
that Colonial purchased. See id. ¶¶ 134-43. Defendant First
Horizon Home Loan Corporation controlled First Horizon Asset
Securities Inc. during the time period covered by the SAC. Id. ¶
14.

FDIC alleges that the underwriters for the eight
certificates at issue filed prospectus supplements with the SEC
that contained many statements that were material to Colonial in
deciding to purchase the certificates, but were untrue or
misleading. Id. ¶¶ 36-104.

The SAC asserts seven claims to relief. Count A seeks to
recover damages incurred by Colonial against the underwriter and
depositor defendants for untrue or misleading statements in the
sale of securities under Section 8-6-19(a)(2) of the Alabama
Securities Act. Id. ¶¶ 117-47. Count B seeks to recover damages
from First Horizon Home Loan Corporation under Section 8-6-19(c)
of the Alabama Securities Act which imposes liability on
entities that control those who make untrue or misleading
statements in the sale of securities. Id. ¶¶ 148-51. Count C
seeks to recover damages incurred by Colonial against the
underwriter and depositor defendants for untrue or misleading

statements in the sale of securities under Sections 90.570(2) and 90.660(1)(d) of the Nevada Uniform Securities Act. Id. ¶¶ 152-82. Count D seeks to recover damages from First Horizon Home Loan Corporation under Section 90.660(4) of the Nevada Uniform Securities Act which imposes liability on entities that control those who make untrue or misleading statements in the sale of securities. Id. ¶¶ 183-86. Count E seek to recover damages incurred by Colonial against the underwriter and depositor defendants for untrue or misleading statements in the sale of securities under Section 12(a)(2) of the 1933 Act. Id. ¶¶ 187-222. Count F seek to recover damages incurred by Colonial against the underwriter and depositor defendants, FTN Financial Securities Corp., and UBS Securities LLC for untrue or misleading statements in a registration statement under Section 11 of the 1933 Act. Id. ¶¶ 223-38. Lastly, count G seeks to recover damages from First Horizon Home Loan Corporation under Section 15 of the 1933 Act which imposes liability on entities that control those who make untrue or misleading statements in violation of Sections 11 and 12 of the 1933 Act. Id. ¶¶ 239-42.

## Procedural History

FDIC filed its initial complaint in this matter on August 10, 2012, asserting claims to relief under Sections 11 and 15 of the 1933 Act which prohibit untrue or misleading statements in a registration statement, and impose liability on entities that

control those who make untrue or misleading statements in a registration statement. See Compl. (Dkt. No. 1). In response to the defendants' motion to dismiss, FDIC filed an amended complaint on December 4, 2012, again, only seeking relief under Sections 11 and 15 of the 1933 Act. See Am. Compl. (Dkt. No. 72).

After initially denying defendants' motion to dismiss the amended complaint, see FDIC v. Chase Mortg. Fin. Corp., No. 12 Civ. 6166 (LLS), 2013 WL 5434633, at *1 (S.D.N.Y. Sept. 27, 2013) (Dkt. No. 86), on August 29, 2014, I granted their motion for judgment on the pleadings, finding that FDIC's claims were barred by the 1933 Act's statute of repose, see FDIC v. Chase Mortg. Fin. Corp., 42 F. Supp. 3d 574 (S.D.N.Y. 2014) (Dkt. No. 150). On May 19, 2016, a panel of the United States Court of Appeals for the Second Circuit vacated that judgment and remanded the case for further proceedings consistent with its opinion. See FDIC v. First Horizon Asset Sec., Inc., 821 F.3d 372 (2d Cir. 2016) (Dkt. No. 153). On January 9, 2017, the United States Supreme Court denied the defendants' certiorari petition. See First Horizon Asset Sec., Inc. v. FDIC, 137 S. Ct. 628 (2017).

On June 8, 2017, FDIC informed defendants' counsel of its intention to move for leave to amend its complaint to add additional facts regarding Colonial's investment processes and to assert additional claims under Alabama and Nevada law and

-6-

Section 12(a)(2) of the 1933 Act. Valdes Decl. (Dkt. No. 198) Ex. 2. Defendants' counsel replied that defendants would not oppose the motion for leave to amend, and that they would raise what they saw as defects in the SAC in a motion to dismiss. Id. FDIC notified the court by letter dated June 14, 2017 that it intended to move for leave to file a SAC. At a conference held on June 16, 2017, I granted FDIC's unopposed motion to file the SAC, while reserving the defendants' rights to move to dismiss the claims in the SAC. See Tr. of June 16, 2017 Conference (Dkt. No. 181) at 3-4.

On June 21, 2017, FDIC filed and served the SAC,[1] reasserting its two claims under Sections 11 and 15 of the 1933 Act (Counts F and G), and adding five new claims (Counts A and B under Alabama law, Counts C and D under Nevada law, and Count E under Section 12(a)(2) of the 1933 Act).

Defendants now move to dismiss the five new claims brought under the securities laws of Alabama and Nevada and Section 12(a)(2) of the 1933 Act as time-barred by the relevant statutes of repose and limitations. They also argue that the newly added claims should be dismissed because FDIC unduly delayed in bringing them.

Additionally, they move to dismiss the claims against the

---

[1] The complaint and amended complaint named 17 defendants. The SAC names nine defendants, as FDIC has settled its claims with several of the original defendants.

depositor defendants for untrue or misleading statements in the sale of securities under Alabama and Nevada law because the SAC does not allege that those defendants sold certificates to Colonial.

## DISCUSSION

### Time-barred Claims

The statute of repose for claims under Section 12(a)(2) of the 1933 Act is three years from the sale of the security. 15 U.S.C. § 77m. The statute of repose for the claims under the Nevada Uniform Securities Act is five years from the sale of the security. Nev. Rev. Stat. § 90.670. The Alabama Securities Act claims are not subject to a statute of repose but are subject to a two year statute of limitations from the time the violation is discovered or should have been discovered by the exercise of reasonable care. Ala. Code § 8-6-19(f). The FDIC extender statute extends FDIC's time to sue by three years from when it is appointed receiver, if that period is longer than the otherwise applicable period. 12 U.S.C. § 1821(d)(14)(A)(ii)-(B).

Colonial purchased the certificates at issue between June 5, 2007 and September 24, 2007. See SAC Schedules 1-11, Item 37(b). The claim under Section 12(a)(2) of the 1933 Act for the last security purchased expired on September 24, 2010, and the claims under the Nevada Uniform Securities Act for the last security purchased expired on September 24, 2012.

As for the Alabama Securities Act claims, the SAC alleges that the misstatements at issue could first have been discovered on August 15, 2008, the day after the files compiled by the loan originators and the records maintained by the loan servicers became available to Colonial. Id. ¶ 106. Indeed, the rating agencies downgraded their ratings for each of the eight certificates at issue approximately four to eight months after that date. Id. ¶ 110. Accordingly, the two year statute of limitations on the Alabama Securities Act claims expired on August 15, 2010.

FDIC was appointed receiver for Colonial on August 14, 2009. Id. ¶ 12. Its time to bring a claim under Section 12(a)(2) of the 1933 Act and under the Nevada Uniform Securities Act for securities purchased before August 14, 2007 was extended to August 14, 2012. Its time to bring a claim under the Nevada Uniform Securities Act for securities purchased after August 14, 2007 was unaffected. Its time to bring claims under the Alabama Securities Act was extended to August 14, 2012.

FDIC filed its complaint on August 10, 2012, and filed its amended complaint on December 4, 2012. Both the complaint and the amended complaint only asserted claims to relief under Sections 11 and 15 of the 1933 Act. By the time FDIC filed its amended complaint, all the new claims at issue here were time-barred. The new claims were not brought until June 21, 2017,

-9-

approximately ten years after Colonial purchased the certificates, and almost five years after the claims were time-barred.

FDIC argues that because the newly added claims arise out of the same misstatements made in connection with the sale of the certificates as those in the complaint, under Rule 15(c) of the Federal Rules of Civil Procedure the newly added claims relate back to August 10, 2012, the date of the original pleading, and are thus timely. See Fed. R. Civ. P. 15(c)(1)(B) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading").

Defendants argue that the statute of repose, which creates "an absolute bar on a defendant's temporal liability," Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc., 582 U.S. ___, 137 S. Ct. 2042, 2050 (2017), quoting CTS Corp. v. Waldburger, 573 U.S. ___, 134 S. Ct. 2175, 2183 (2014), and which "permits no exceptions," Silvercreek Mgmt., Inc. v. Citigroup, Inc., 248 F. Supp. 3d 428, 451 (S.D.N.Y. 2017), supersedes Rule 15(c)'s relation back provision.

I agree with defendants. However, while that requires dismissal of the new claims brought under Section 12(a)(2) of

-10-

the 1933 Act and the Nevada Uniform Securities Act which are subject to statutes of repose, it does not require dismissal of the Alabama Securities Act claims which are subject only to a statute of limitations and for which relation back under Rule 15(c) is available.

**1.**

"Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts." CTS, 134 S. Ct. at 2182. However, "the statutes seek to attain different purposes and objectives." Id. "Statutes of limitations require plaintiffs to pursue 'diligent prosecution of known claims'" and "promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Id. at 2183 (brackets and citations omitted). By contrast, "Statutes of repose effect a legislative judgment that a defendant should "be free from liability after the legislatively determined period of time." Id., quoting 54 C.J.S., Limitations of Actions § 7, p. 24 (2010). "Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability." Id.

Consistent with those differing objectives, the events that trigger the start of repose and limitations periods differ. "In the ordinary course, a statute of limitations creates 'a time

-11-

limit for suing in a civil case, based on the date when the claim accrued,'" that is, "when the injury occurred or was discovered." Id. at 2182, quoting Black's Law Dictionary 1546 (9th ed. 2009). "A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant. . . . even if this period ends before the plaintiff has suffered a resulting injury." Id. "[T]he injury need not have occurred, much less have been discovered." Id., quoting 54 C.J.S., Limitations of Actions § 7, p. 24 (2010). "The repose provision is therefore equivalent to 'a cutoff,' in essence an 'absolute . . . bar' on a defendant's temporal liability." Id. at 2183 (internal citations omitted) (ellipsis in CTS).

"The bar of a statute of repose is absolute, whereas the bar of a statute of limitations is conditional." 54 C.J.S. Limitations of Actions § 7 (2017). "[W]hile statutes of limitations are 'often subject to tolling principles,' a statute of repose 'extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts.'" Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 106 (2d Cir. 2013), quoting Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597

F.3d 84, 88 n. 4 (2d Cir. 2010). "Thus, in contrast to statutes of limitations, statutes of repose 'create[] a substantive right in those protected to be free from liability after a legislatively-determined period of time.'" Id., quoting Amoco Prod. Co. v. Newton Sheep Co., 85 F.3d 1464, 1472 (10th Cir. 1996) (brackets and emphasis in IndyMac).

In IndyMac, the Second Circuit held that filing a class action lawsuit under Rule 23, which the Supreme Court held "suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554, 94 S. Ct. 756, 766 (1974), does not suspend the three year statute of repose in Section 13 of the 1933 Act. IndyMac, 721 F.3d at 100. It held that the tolling rule announced in American Pipe, whether based in equity or law, could not apply to the statute of repose. Id. If the tolling rule is based in equity, the court stated, the statute of repose overrides it. Id. at 107 ("as a statute of repose, the three-year period in Section 13 is said to be 'absolute' and not subject to equitable tolling."). If, on the other hand, the tolling is based in Rule 23, the court went on to say, "its extension to the statute of repose in Section 13 would be barred by the Rules Enabling Act, 28 U.S.C. § 2072(b)" because "the Rules Enabling Act forbids interpreting Rule 23 to

-13-

'abridge, enlarge or modify any substantive right.'" IndyMac, 721 F.3d at 109 (citations omitted).

The Supreme Court's decision in California Public Employees' Retirement System v. ANZ Securities, Inc. clarified that the tolling rule announced in American Pipe is based in equity. ANZ, 137 S. Ct. at 2051. But the Second Circuit's rationale in IndyMac still rings true. Like with Rule 23, the Rules Enabling Act forbids interpreting Rule 15(c)(1)(B) to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). "[T]he statute of repose in Section 13 creates a substantive right, extinguishing claims after a three-year period." IndyMac, 721 F.3d at 109. Permitting FDIC to bring claims extinguished by the statute of repose "would therefore necessarily enlarge or modify a substantive right and violate the Rules Enabling Act." See id.

Recent decisions by courts in this district have also concluded based on IndyMac that relation back under Rule 15(c) cannot be used to permit claims barred by the statute or repose. See Silvercreek, 248 F. Supp. 3d at 451 ("While the Second Circuit has not decided whether Rule 15(c) trumps the Section 13 statute of repose . . . . multiple district courts in this Circuit considering precisely this issue have concluded that the statute of repose cannot be circumvented by the relation-back doctrine.") (citing cases).

-14-

FDIC advances four arguments for why its claims,
extinguished by statutes of repose, should nonetheless be
permitted to proceed. None is persuasive.

a.

FDIC argues that Section 13 of the 1933 Act only bars
commencing a new action after the repose period has run, but
does not bar bringing new claims after the repose period has run
if brought as an amendment to a complaint in an action commenced
before the repose period has run. It relies on the language of
Section 13 which states "In no event shall any such action be
brought to enforce a liability created under section 11 or
section 12(a)(1) more than three years after the security was
bona fide offered to the public, or under section 12(a)(2) more
than three years after the sale." Securities Act of 1933 as
amended through Pub. L. No. 112-106, § 13, codified at 15 U.S.C.
§ 77m. Because FDIC commenced this action in 2012 before the
newly added claims were time-barred, it argues that Section 13
does not prevent it from amending the pleading to add these new
claims.

That argument cannot be reconciled with the Supreme Court's
holding that "The purpose of a statute of repose is to create
'an absolute bar on a defendant's temporal liability.'" ANZ, 137
S. Ct. at 2050, quoting CTS, 134 S. Ct. at 2183. A statute of
repose does not merely bar a plaintiff from bringing a claim,

-15-

rather, "a statute of repose prevents a cause of action from arising after a certain period." Nett v. Bellucci, 269 F.3d 1, 6 (1st Cir. 2001). Any liability created under Section 12(a)(2) of the 1933 Act or Section 90.660 of the Nevada Uniform Securities Act no longer exists for the acts alleged in the SAC.[2] Allowing FDIC to assert claims for liability that no longer exists through an amendment to the pleading would contradict Section 13's purpose of freeing defendants absolutely from liability.

b.

FDIC argues next that the Supreme Court has on several occasions allowed claims barred by statutes of repose to proceed under the relation back doctrine. That is not supported by the cases FDIC relies on, where the claims were not barred by statutes of repose, but rather, by statutes of limitations and other contractual and statutory time limits on bringing a claim. That argument misconstrues the distinction between a statute of repose, which extinguishes a defendant's liability, and other time limits on a plaintiff's ability to assert a claim to relief.

In four of the cases on which FDIC relies, the plaintiffs asserted claims under the Federal Employers' Liability Act of

_____

[2] Section 90.670 of the Nevada Uniform Securities Act states: "A person may not sue under NRS 90.660 unless suit is brought within . . . 5 years after the act, omission or transaction constituting the violation." Nev. Rev. Stat. § 90.670. FDIC did not sue under NRS 90.660 within the time that the statute allows and that time has since expired.

1908 ("FELA") outside of FELA's statute of limitations. See Tiller v. Atl. Coast Line R. Co., 323 U.S. 574, 65 S. Ct. 421 (1945); N.Y. Cent. & H.R.R. Co. v. Kinney, 260 U.S. 340, 43 S. Ct. 122 (1922); Seaboard Air Line Ry. v. Renn, 241 U.S. 290, 36 S. Ct. 567 (1916); Mo., Kan. & Tex. Ry. Co. v. Wulf, 226 U.S. 570, 33 S. Ct. 135 (1913). Section 6 of FELA states "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. Prior to 1948, Section 6 read "That no action shall be maintained under this Act unless commenced within two years from the day the cause of action accrued." Federal Employers' Liability Act of 1908, ch. 149, § 6, 35 Stat. 66. As the Supreme Court explained in CTS, statutes of limitations limit a plaintiff's time to sue from the accrual of the cause of action, whereas statutes of repose limit the time from the defendant's conduct. CTS, 134 S. Ct. at 2182 ("The statute of repose limit is not related to the accrual of any cause of action"). The time limit under Section 6 of FELA runs "from the day the cause of action accrued." As such, it is a statute of limitations, which is subject to relation back.

Section 13, on the other hand, is a statute of repose because the time limit runs from the time of sale—the defendant's conduct—and can expire before the plaintiff has discovered or even suffered an injury. Unlike Section 6 of FELA,

-17-

the repose provision in Section 13 of the Securities Act "is therefore equivalent to 'a cutoff,' in essence an 'absolute bar' on a defendant's temporal liability." CTS, 134 S. Ct. at 2183 (internal citations and alterations omitted).[3]

Of the two other cases FDIC relies on, Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 130 S. Ct. 2485 (2010), concerned a contractually imposed one year time limit for bringing suit from the date of injury, and Scarborough v. Principi, 541 U.S. 401, 124 S. Ct. 1856 (2004), concerned a statutory 30 day time limit for filing a petition for legal fees against the United States from the date of final judgment. Neither involved the absolute bar on liability imposed by a statute of repose.

c.

FDIC also argues that because Rule 15 is the equivalent of a federal statute and was enacted after the 1933 Act, it supplants Section 13's statute of repose.

FDIC is correct that the Federal Rules of Civil procedure, "if within the power delegated to this court, has the force of a federal statute," Sibbach v. Wilson & Co., 312 U.S. 1, 13, 61 S. Ct. 422, 426 (1941), and "All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect," 28 U.S.C. § 2072(b). But, as discussed, the

---

[3] The five year time limit in Section 90.670 of the Nevada Uniform Securities Act also begins to run from the time of the defendant's conduct constituting the violation. Nev. Rev. Stat. § 90.670.

Federal Rules of Civil Procedure are only valid to the extent that they do not "abridge, enlarge or modify any substantive right." Id. FDIC offers no rationale why the Second Circuit's caution in IndyMac that "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,'" including Section 13's statute of repose, IndyMac, 721 F.3d at 109, quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 367, 131 S. Ct. 2541, 2561 (2011), does not apply equally to Rule 15(c)(1)(B).

d.

Lastly, FDIC argues that applying Rule 15(c)'s relation back doctrine here would not violate the Rules Enabling Act as it merely impacts the parties' rights incidentally. The Supreme Court has held that while the Rules Enabling Act requires that the Federal Rules of Civil procedure "not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), "Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules." Burlington N. R.R. Co. v. Woods, 480 U.S. 1, 5, 107 S. Ct. 967, 970 (1987).[4] That means that the

---

[4] Burlington was a diversity action decided on Alabama law. At issue was a conflict between Federal Rule of Appellate Procedure 38, which allows a court of appeals in its discretion to "award just damages and single or double costs to the appellee" if it "determines that an appeal is frivolous," and an Alabama statute which mandated, in certain circumstances, that when a money judgment is affirmed on appeal the appellate court add to the judgment "10 percent damages thereon and the costs of the appellate court," Ala. Code §

rule's target must be procedural, not modification of the substantive right. See Martin H. Redish & Dennis Murashko, The Rules Enabling Act and the Procedural-Substantive Tension: A Lesson in Statutory Interpretation, 93 Minn. L. Rev. 26, 40 (2008) ("The word 'incidental,' in this context, means that the rule's primary purpose is to achieve a valid procedural goal and not to affect litigants' substantive rights. The rule's effect on substantive rights is thus only of unintended or nonessential importance.").

"The goal of relation-back principles is 'to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense.'" Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997), quoting Fed. R. Civ. P. 15 Advisory Committee Note (1991). Allowing a plaintiff to obtain recovery for a claim which was never asserted until after it was time-barred is not the correction of an inconsequential pleading error, it is the abrogation of a statutorily created substantive right.

FDIC did not pursue claims under Nevada law and under Section 12(a)(2) of the 1933 Act because, it says, it only

12-22-72 (1986). The Supreme Court held that the Rule trumped the statute and that it did not violate the Rules Enabling Act because the Rule "affects only the process of enforcing litigants' rights and not the rights themselves." Burlington, 480 U.S. at 8, 107 S. Ct. at 971.

discover those violations while this case was on appeal through discovery in other cases it is litigating. Opp. (Dkt. No. 194) at 6. By that time defendants' liability was already extinguished by the express provision of the statute of repose. See CTS, 134 S. Ct. at 2182 ("A statute of repose bars any suit that is brought after a specified time since the defendant acted . . . the injury need not have occurred, much less have been discovered.").

**2.**

While relation back is not available for claims barred by statutes of repose, the same is not true of FDIC's Alabama Securities Act claims which are subject only to a statute of limitations. Statutes of limitations, unlike statutes of repose, are subject to tolling, see CTS, 134 S. Ct. at 2183, and to relation back, Fed. R. Civ. P. 15(c)(1).

Rule 15(c)(1)(B) states that "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading . . . ." The Alabama Securities Act claims arise out of the same alleged misrepresentations made in connection with the sale of the certificates as the claims in the initial complaint. Defendants do not dispute that.

Defendants argue that the Alabama law claims should be dismissed because FDIC unduly delayed in asserting them, but point to no specific undue prejudice to them occurring in the "undue delay" period between FDIC's appointment in August 2009 and its 2017 assertions of them.

Because the Alabama law claims in the SAC arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," those claims relate back "to the date of the original pleading"—August 10, 2012—and are therefore timely. Fed. R. Civ. P. 15(c)(1)(B).

## Depositor Defendants

Defendants also move to dismiss the claims against the depositor defendants under Nevada and Alabama law for untrue or misleading statements in the sale of securities because the SAC does not allege that those defendants sold certificates to Colonial. Because the Nevada law claims are dismissed as time-barred, the pertinent question is whether the SAC states a claim to relief under Section 8-6-19(a)(2) of the Alabama Securities Act against the depositor defendants.

Section 8-6-19(a)(2) of the Alabama Securities Act states:
Any person who:

    * * *

    (2) Sells or offers to sell a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made,

-22-

        not misleading, the buyer not knowing of the untruth or
        omission, and who does not sustain the burden of proof that
        he did not know and in the exercise of reasonable care could
        not have known of the untruth or omission,

   is liable to the person buying the security from him who may
   bring an action to recover the consideration paid for the
   security, together with interest at six percent per year from
   the date of payment, court costs and reasonable attorneys' fees,
   less the amount of any income received on the security, upon the
   tender of the security, or for damages if he no longer owns the
   security. Damages are the amount that would be recoverable upon
   a tender less the value of the security when the buyer disposed
   of it and interest at six percent per year from the date of
   disposition.

Ala. Code § 8-6-19(a)(2).

Section 8-6-19 of the Alabama Securities Act is modeled on

Section 410 of the Uniform Securities Act, Ritch v. Robinson-

Humphrey Co., 142 F.3d 1391, 1394 (11th Cir. 1998); Banton v.

Hackney, 557 So. 2d 807, 826 (Ala. 1990), which in turn is

modeled on Section 12 of the 1933 Act, Gustafson v. Alloyd Co.,

513 U.S. 561, 602-03, 115 S. Ct. 1061, 1082 (1995) (Ginsburg,

J., dissenting). "Because there are few Alabama cases construing

the Alabama Securities Act, we review federal cases construing

federal securities law to aid in properly interpreting the

corresponding provisions of the Alabama Securities Act."

Blackmon v. Nexity Fin. Corp., 953 So. 2d 1180, 1191 (Ala.

2006). "Section 8-6-19(a)(2), Ala. Code 1975, is similar to §

12(a)(2), Securities Act of 1933, codified as 15 U.S.C. §

771(a)(2)," id., and "Alabama courts have looked to federal case

law construing § 12(2)[5] of the 1933 Securities Act in interpreting Section 8-6-19," Irwin v. Zila, Inc., 168 F. Supp. 2d 1294, 1297 n.4 (M.D. Ala. 2001).

Because Section 8-6-19(a)(2) of the Alabama Securities Act and Section 12(a)(2) of the 1933 Act impose liability on the seller of a security to the party buying the security from him, the depositor defendants are liable only if they are "sellers" under those statutes. In Pinter v. Dahl, 486 U.S. 622, 108 S. Ct. 2063 (1988), the Supreme Court held that while "the Securities Act nowhere delineates who may be regarded as a statutory seller," "At the very least, however, the language of § 12(1) contemplates a buyer-seller relationship not unlike traditional contractual privity." Pinter, 486 U.S. at 642, 108 S. Ct. at 2076. Noting that the statute refers to the person from whom the plaintiff purchased securities, the Court stated "remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." Id. at 644, 108 S. Ct. at 2077 n.21. The Second Circuit has applied Pinter's definition of seller to Section 12(a)(2) as well. Wilson v. Saintine Expl. & Drilling Corp., 872 F.2d 1124, 1126 (2d Cir. 1989); Capri v. Murphy, 856 F.2d 473, 478 (2d Cir. 1988). Relying on Pinter, the Second

---

[5] The Private Securities Litigation Reform Act of 1995 added a subsection to Section 12 of the 1933 Act renumbering Section 12(2) as Section 12(a)(2). See Yung v. Lee, 432 F.3d 142, 146 n.3 (2d Cir. 2005).

Circuit has held that "An individual is a 'statutory seller'—and therefore a potential section 12(a)(2) defendant—if he: (1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'" In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 359 (2d Cir. 2010), quoting Pinter, 486 U.S. at 642, 647, 108 S. Ct. at 2076, 2078 (alterations in Morgan Stanley).

The SAC does not allege that the depositor defendants passed title in the certificates, or solicited the purchase of the certificates, to Colonial. Rather, it alleges that the depositor "transfers title to the loans to the trust." SAC ¶ 31. It is the underwriters who then "purchase the certificates from the trust, and then directly or indirectly participate in the distribution of the certificates to investors." Id. ¶ 33. FDIC does not dispute that the depositor defendants did not sell or solicit the purchase of the certificates to Colonial.

Instead, FDIC argues that the Second Circuit's recent decision in Federal Housing Financial Agency v. Nomura Holding America, Inc., 873 F.3d 85 (2d Cir. 2017), forecloses the depositor defendants' argument here. In Nomura, the Federal Housing Financial Agency sought to recover damages under Section 12(a)(2) of the 1933 Act from a host of issuers, depositors, and

underwriters of residential mortgage backed securities that were sold to Freddie Mac and Fannie Mae by means of untrue statements or omissions of material fact. The depositors for those securities argued that because they did not sell or solicit the purchase of those securities to Fannie Mae or Freddie Mac, they were not statutory sellers under Section 12(a)(2) and could not be liable under that section. The Second Circuit rejected their argument, relying on SEC regulations that impose liability on depositors as statutory sellers for violations of Section 12(a)(2) of the 1933 Act.

It stated:

> SEC Rule 159A provides that, for purposes of Section 12(a)(2), an "issuer" in "a primary offering of securities" shall be considered a statutory seller. 17 C.F.R. § 230.159A(a). The Securities Act in turn defines "issuer" to include "the person or persons performing the acts and assuming the duties of depositor." 15 U.S.C. § 77b(a)(4). SEC Rule 191 further clarifies that "[t]he depositor for . . . asset-backed securities acting solely in its capacity as depositor to the issuing entity is the 'issuer' for purposes of the asset-backed securities of that issuing entity." 17 C.F.R. § 230.191(a).

> The combination of this statutory provision and administrative direction makes clear that PLS depositors, such as NAAC and NHELI, are statutory sellers for purposes of Section 12(a)(2). Each is a "depositor for . . . asset-backed securities," specifically RMBS. See 17 C.F.R. § 230.191. PLS depositors are thus "issuers." See 15 U.S.C. § 77b(a)(4). And, as "issuers," PLS depositors fall within the definition of statutory seller. See 17 C.F.R. § 230.159A.

Nomura, 873 F.3d at 139 (alterations in Nomura).[6]

---

[6] Defendants initially also moved to dismiss the Section 12(a)(2) claims against the depositor defendants for the same reason they move to dismiss the Alabama and Nevada claims against those defendants. Memo. (Dkt. No. 188) at

FDIC argues that Nomura is the controlling case that Alabama courts would look to in interpreting Section 8-6-19(a)(2) of the Alabama Securities Act and that this court should therefore find that, like the depositors in Nomura, the depositor defendants in this case are statutory sellers not only under the 1933 Act, but also under Alabama law. That argument is misplaced as Nomura does not apply here.

The SEC is tasked by Congress with interpreting and implementing the 1933 Act. 15 U.S.C. § 77s(a). Under the Supreme Court's seminal holding in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778 (1984), and its progeny, the question that the Second Circuit faced in Nomura was not whether the SEC's position—that depositors are statutory sellers—is the best, or even the proper, interpretation of Section 12(a)(2), but rather, whether the SEC's position is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843, 104 S. Ct. at 2782.

Under Chevron, Congress delegated to the SEC statutory authority to interpret ambiguous provisions in the 1933 Act, and the Second Circuit in Nomura was required to defer to the SEC's interpretation, and uphold it as long as that interpretation is not "arbitrary, capricious, or manifestly contrary to the

14-20. They withdrew that argument after the Second Circuit handed down its ruling in Nomura. Letter of Oct. 30, 2017 (Dkt. No. 193).

statute." Id. at 844, 104 S. Ct. at 2782. When considering
whether an agency's interpretation of an act of congress is a
permissible one, "The court need not conclude that the agency
construction was the only one it permissibly could have adopted
to uphold the construction, or even the reading the court would
have reached if the question initially had arisen in a judicial
proceeding." Id. at 843, 104 S. Ct. at 2782 n.11.

The Alabama legislature, on the other hand, has delegated
no authority to the SEC to interpret or implement the Alabama
Securities Act, and there is no reason to think that Alabama
courts would apply the SEC's view of the unity of issuers,
depositors and statutory sellers under its rule, rather than
Pinter's pronouncement that "a buyer cannot recover against his
seller's seller." Pinter, 486 U.S. at 644, 108 S. Ct. at 2077
n.21. The question facing this court, unlike the question facing
the Second Circuit in Nomura, is one of ordinary statutory
construction: are the depositor defendants sellers within the
meaning of Section 8-6-19(a)(2) of the Alabama Securities Act?
In answering that question, the Supreme Court's holding in
Pinter that to be a seller requires a privity-like relationship
with the plaintiff, Id. at 642, 108 S. Ct. at 2076, is one that
courts in Alabama look to. See, e.g., Ryder Int'l Corp. v. First
Am. Nat'l Bank, 943 F.2d 1521, 1522 n.1 & 1524 (11th Cir. 1991)
(using Pinter's statutory seller test to interpret both Section

-28-

12(2) of the 1933 Act and Section 8-6-19 of the Alabama
Securities Act).

Because Colonial is not "the person buying the security
from" the depositor defendants, Ala. Code § 8-6-19(a), they are
not liable to it for any violations of Section 8-6-19(a)(2). See
Akerman v. Oryx Comm'ns, Inc., 810 F.2d 336, 344 (2d Cir. 1987)
("Title to the securities passed from Oryx to the underwriters
and then from the underwriters to the purchaser-plaintiffs.
Oryx, therefore, was not in privity with the Akermans for
section 12(2) purposes."); In re Prestige Brands Holding, Inc.,
No. 05 Civ. 6924 (CLB), 2006 WL 2147719, at *10 (S.D.N.Y. July
10, 2006) (holding that plaintiffs could not recover under
Section 12(a)(2) against an issuer of securities who sold the
securities to an underwriter who in turn sold them to
plaintiffs); Credit Suisse First Boston Corp. v. ARM Fin. Grp.,
Inc., No. 99 Civ. 12046 (WHP), 2001 WL 300733, at *10 (S.D.N.Y.
Mar. 28, 2001) (same).

## CONCLUSION

Defendants' motion partially to dismiss the Second Amended
Complaint (Dkt. No. 187) is granted in part and denied in part.
The motion to dismiss the claims under the Nevada Uniform
Securities Act and Section 12(a)(2) of the 1933 Act is granted.
The motion to dismiss the Alabama Securities Act claims against
the depositor defendants is granted. In all other respects, the

-29-

motion is denied. The motion for oral argument (Dkt. No. 196) is denied.

So ordered.

Dated:     New York, New York
           March 1, 2018

Louis L. Stanton
LOUIS L. STANTON
U.S.D.J.