MUNGER, TOLLES & OLSON LLP
350 SOUTH GRAND AVENUE 50TH FLOOR
LOS ANGELES, CALIFORNIA 90071-3426
TELEPHONE (213) 683-9100
FACSIMILE (213) 687-3702

October 3, 2018

The Honorable Louis L. Stanton
United States District Court, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

    Re:    *FDIC as Receiver for Colonial Bank v. Chase Mortgage Finance Corp. et al.*,
              Case No. 12-cv-06166-LSS

Dear Judge Stanton:

    We represent Defendant Wells Fargo Asset Securities Corporation in the above-referenced action. We write on behalf of our client and Defendant First Horizon Asset Securities, Inc. (collectively, the "Depositor Defendants") to oppose Plaintiff's request for a pre-motion conference regarding whether the Court should reconsider its published decision dismissing the Alabama Securities Act ("ASA") claims as against the Depositor Defendants.

    The Court dismissed the ASA claims against the Depositor Defendants on the ground that the Alabama Supreme Court likely would follow *Pinter v. Dahl*, 486 U.S. 622 (1988), to hold that Alabama Code § 8-6-19(a) imposes liability only on "statutory sellers," just like the federal statute on which it is based (§ 12 of the Securities Act of 1933). *See FDIC as Receiver for Colonial Bank v. First Horizon Asset Sec., Inc.*, 291 F. Supp. 3d 364, 377-78 (S.D.N.Y. 2018) ("*FDIC/Colonial*"). The Court's ruling accords with a long line of decisions following *Pinter* to hold that similar state securities statutes do not apply to persons other than "statutory sellers," including decisions declining to apply such statutes to depositors in residential mortgage-backed securities ("RMBS") offerings.[1] After the Court's decision—which was based on full adversarial briefing—Plaintiff appears to have solicited a second opinion from its fellow regulator, the Alabama Securities Commission (the "Commission"), without notice to the Depositor Defendants or an opportunity for them to be heard.[2] Plaintiff now says that the Court should set aside its decision on the theory that the resulting page-and-a-half "statement of policy" from the Commission (Ex. 2 hereto) constitutes "an intervening change of controlling law." (Sept. 27, 2018 Ltr. from Pl.'s Counsel at 3.) Plaintiff's request for a pre-hearing conference should be denied because any such motion would be meritless, and in any event, unwarranted this late in the discovery period.

---

[1] *See, e.g., Capital Ventures Int'l v. UBS Sec. LLC*, 2012 WL 4469101, at *14 (D. Mass. Sept. 28, 2012) (applying *Pinter* to preclude depositor liability in an RMBS case under the Massachusetts Uniform Securities Act); *In re Marsh & Mclennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 496 (S.D.N.Y. 2006) (precluding issuer liability under the New Jersey Uniform Securities Law); *see also* cases cited in ECF No. 88 at 21 n.34.

[2] Because it would have been highly coincidental for the Commission to have issued the statement on which Plaintiff relies only now, just six months after the Court's ruling, rather than at any time during the preceding 59 years since the ASA was enacted or the 30 years since *Pinter* was decided, the Depositor Defendants asked Plaintiff whether Plaintiff urged the Commission to issue the statement. Plaintiff declined to answer. (*See* E-mail Chain attached as Ex. 1 hereto.)

MUNGER, TOLLES & OLSON LLP

The Honorable Louis L. Stanton
October 3, 2018
Page 2

*First*, Plaintiff was required by Local Rule 6.3 to file any motion for reconsideration "within fourteen (14) days after the entry of the Court's determination of the original motion." Plaintiff cannot avoid this time limitation on the ground that it took Plaintiff six months to obtain the statement of policy from the Commission; the purpose of Rule 6.3 is to bring finality to judicial decisions. *See Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 289 F. Supp. 2d 337, 339 (S.D.N.Y. 2003) (rejecting the argument that a reconsideration motion was "not bound by Local Rule 6.3 because the [intervening court] decision, upon which [the] motion was based, was not issued until [after the period]"; the "motion is, in fact, governed by Local Rule 6.3 and is not in compliance with [that] rule"); *see also* Local Civ. R. 6.3 Committee Note ("Local Civil Rule 6.3 is necessary because the Federal Rules of Civil Procedure do not specify the time periods governing a motion for reconsideration or reargument.").

*Second*, despite Plaintiff's apparent effort to procure something from the Commission that undercuts this Court's ruling, the statement of policy—which Plaintiff conspicuously omits to attach—is fully consistent with *Pinter*, and thus, with the Court's ruling. The statement of policy addressed "whether an issuer of a primary offering of securities should be considered a seller within the meaning of Alabama Code Section 8-6-19 where the form of the underwriting or distribution prevents *strict privity* between the issuer and buyer." (Stmt. of Policy at 1 (emphasis added).) The statement of policy, just like *Pinter,* answered that question with a qualified yes, "dependent upon the nature and materiality of the misrepresentations(s) or omission(s) in [the] . . . offering materials." (*Id.*) Like the statement of policy, *Pinter* held that although § 12 "contemplates a buyer-seller relationship not unlike traditional contractual privity," strict privity is not required; rather, a defendant is a statutory seller if it "solicits the purchase, motivated at least in part by a desire to serve [its] own financial interests." *Pinter*, 486 U.S. at 64.[3] The statement of policy is consistent with *Pinter*, underscoring this Court's conclusion that "the Supreme Court's holding in *Pinter*" is one "that courts in Alabama would look to" in interpreting Alabama's version of the statute. *FDIC/Colonial*, 291 F. Supp. 3d at 377-78.

*Third*, Plaintiff fails in any event to identify an "intervening change of *controlling* law" because an administrative policy is not controlling on this Court (or for that matter, even on Alabama courts). *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (emphasis added) (citing 18 C. Wright et al., *Federal Practice & Procedure* § 448 at 790). For Plaintiff to identify a change in controlling law here, it would have to point to a new decision of the United States Supreme Court, the Second Circuit, or the Alabama Supreme Court; even a decision of an intermediate Alabama appellate court would not suffice for reconsideration. *See, e.g.*, *Bonn-Wittingham v. Project O.H.R.*, 2017 WL 2178426, at *1 (E.D.N.Y. May 17, 2017) (denying reconsideration because "the court is not bound by rulings of intermediate or lower state courts on an issue on which the highest court of the state has not spoken") (citation omitted). Plaintiff also could not obtain reconsideration based on an intervening administrative regulation— even one that had been duly promulgated pursuant to the Alabama Administrative Procedure Act,

---

[3] As this Court held, "[t]he SAC does not allege that the depositor defendants . . . solicited the purchase of the certificates [from] Colonial." *FDIC/Colonial*, 291 F. Supp. 3d at 376.

37280063.3

MUNGER, TOLLES & OLSON LLP

The Honorable Louis L. Stanton
October 3, 2018
Page 3

including the Act's requirement of publication, an opportunity for public comment (such as an opportunity for the Depositor Defendants to be heard), and independent final review by the Alabama Joint Committee on Administrative Regulation Review. *See* Ala. Code §§ 41-22-5, 41-22-5.1, 41-22-22; *see also State Farm Mut. Auto. Ins. Co. v. Mallela*, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002) (change in applicable regulations would not, by itself, constitute "a change in controlling law"). Plaintiff's showing here, however, does not rise even to that level of insufficiency, for the policy appears to have been issued without such procedural safeguards.

Apparently recognizing that an administrative policy does not constitute controlling law, and quite ignoring that the policy and *Pinter* are in accord, Plaintiff self-servingly speculates that "Alabama courts would defer to the Commission's view . . . rather than the rule stated in *Pinter*." (Sept. 27, 2018 Ltr. from Pl.'s Counsel at 3.) Plaintiff simply ignores that, as this Court observed, *see FDIC/Colonial*, 291 F. Supp. 3d at 377-78, "Alabama courts . . . look[] to federal case law construing section 12(2) in interpreting section 8-6-19," and thus apply "the *Pinter* test." *Ryder Int'l Corp. v. First Am. Nat. Bank*, 943 F.2d 1521, 1522 n.1, 1528 (11th Cir. 1991). Further, Plaintiff does not and cannot dispute that the Commission's policy statement fails to constitute controlling law even in Alabama courts, let alone in this Court; the Alabama Supreme Court repeatedly has emphasized as axiomatic that the "interpretations of an act by the administrative agency charged with its enforcement" are "not conclusive." *Hulcher v. Taunton*, 388 So. 2d 1203, 1206 (Ala. 1980); *accord Ex parte State Health Planning & Dev. Agency*, 855 So. 2d 1098, 1102 (Ala. 2002). Moreover, Plaintiff's cited cases are readily distinguishable: In each, the court gave some degree of deference to an agency because the agency was "responsible for [a statute's] enforcement." *Ala. Sec. Comm'n v. Am. Bus. Club*, 612 So. 2d 1237, 1239 (Ala. Civ. App. 1992); *see also QCC, Inc. v. Hall*, 757 So. 2d 1115, 1119 (Ala. 2000); *Robinson v. City of Montgomery*, 485 So. 2d 695, 697 (Ala. 1986). But here, the Commission is not responsible for § 8-6-19(a)'s enforcement; while the Commission enforces *other* statutes within the ASA, § 8-6-19(a) creates a *private* right of action enforced solely by *private* litigants. *See Altrust Fin. Servs., Inc. v. Adams*, 76 So. 3d 228, 237 (Ala. 2011) ("The express language of § 8-6-19(a) provides a civil remedy for violations of the Act only to *purchasers* of a security under the Act."). Plaintiff simply has not pointed to any change in "controlling law" that is necessary for reconsideration.

*Finally*, if reconsideration were granted here, it would necessitate extending the discovery cutoff well beyond the January 31, 2019 date to which the parties have stipulated. (*See* ECF No. 222.) As the Depositor Defendants observed in their motion to dismiss the ASA claims, the ASA requires Plaintiff to prove that Colonial Bank purchased "in" the initial offering of the RMBS, as opposed to the aftermarket, and Plaintiff's pleading casts significant doubt on whether that was the case. (*See* ECF No. 188 at 11-12.) The Depositor Defendants of course refrained from continuing to pursue discovery on this issue once the Court's ruling mooted the need for it. If the ASA claims were to come back into the case now, such discovery would have to be pursued anew, with concomitant delay. This is yet another reason the Court should exercise its discretion to deny Plaintiff's request for a pre-motion conference. *See Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) ("The decision to grant or deny a motion for reconsideration is committed to the sound discretion of the district court.") (internal quotation marks and citation omitted).

37280063.3

MUNGER, TOLLES & OLSON LLP

The Honorable Louis L. Stanton
October 3, 2018
Page 4

                                        Respectfully submitted,

                                        James C. Rutten

cc:      Counsel for All Parties (via ECF)

37280063.3

# EXHIBIT 1

**Rutten, James**
_____

| | |
|---|---|
| **From:** | Bob Spotswood <rks@spotswoodllc.com> |
| **Sent:** | Tuesday, October 02, 2018 1:25 PM |
| **To:** | Rutten, James; Vickie Reznik; Abdallah, Magdey; davidoffa@sullcrom.com; congdonj@sullcrom.com; Frankel, Andy T; Linton Mann; blevin@orrick.com; jansbro@orrick.com; rjacobsen@orrick.com; prugani@orrick.com; ddunne@orrick.com; dteshima@orrick.com; callsbrook@orrick.com; efua@orrick.com; Duffy, Aoife M.; mware@mayerbrown.com; ckorschun@mayerbrown.com; Trujillo-Jamison, Kenneth; Barry, Adam; amichaelson@bsfllp.com; jstern@bsfllp.com; rchan@bsfllp.com; Lee, Christopher G.; Beaman, Gregory |
| **Cc:** | Masha Heifetz; Jisun Park; Mary Menge; Michael Sansbury; Kristina Mentone |
| **Subject:** | RE: SERVICE: FDIC as Receiver for Colonial Bank v. First Horizon Asset Securities Inc., et al.: Letter submission, attached |

Jim:

We respectfully request that you advise why your client believes any such communications with the Alabama Securities Commission are relevant to these proceedings. The Commission issued a policy statement deciding a question about the meaning of a provision of the Alabama Securities Act. Whether any interested parties communicated with the Commission about that question, which they have a constitutional right to do under the Petition Clause of the First Amendment, has no bearing on the deference required by Alabama law to the Commission's interpretation of the statute it is charged with enforcing.

Bob

---

**From:** Rutten, James <James.Rutten@mto.com>
**Sent:** Tuesday, October 02, 2018 12:46 PM
**To:** Vickie Reznik <VReznik@graisellsworth.com>; Abdallah, Magdey <Magdey.Abdallah@stblaw.com>; davidoffa@sullcrom.com; congdonj@sullcrom.com; Frankel, Andy T <afrankel@stblaw.com>; Linton Mann <lmann@stblaw.com>; blevin@orrick.com; jansbro@orrick.com; rjacobsen@orrick.com; prugani@orrick.com; ddunne@orrick.com; dteshima@orrick.com; callsbrook@orrick.com; efua@orrick.com; Duffy, Aoife M. <aoife.duffy@orrick.com>; mware@mayerbrown.com; ckorschun@mayerbrown.com; Trujillo-Jamison, Kenneth <Kenneth.Trujillo-Jamison@mto.com>; Barry, Adam <Adam.Barry@mto.com>; amichaelson@bsfllp.com; jstern@bsfllp.com; rchan@bsfllp.com; Lee, Christopher G. <cglee@stblaw.com>; Beaman, Gregory <gbeaman@orrick.com>
**Cc:** Masha Heifetz <MHeifetz@graisellsworth.com>; Jisun Park <JPark@graisellsworth.com>; Bob Spotswood <rks@spotswoodllc.com>; Mary Menge <mmenge@spotswoodllc.com>; Michael Sansbury <msansbury@spotswoodllc.com>; Kristina Mentone <KMentone@graisellsworth.com>
**Subject:** RE: SERVICE: FDIC as Receiver for Colonial Bank v. First Horizon Asset Securities Inc., et al.: Letter submission, attached

    Inasmuch as Ms. Reznik has not given us the courtesy of a response to this straightforward question, I will ask that any of Plaintiff's lawyers on this e-mail – Ms. Heifetz, Ms. Park, Mr. Spotswood, Ms. Menge, Mr. Sansbury, or Ms. Mentone – respond without further delay.

---

**From:** Rutten, James
**Sent:** Monday, October 01, 2018 10:10 AM
**To:** Vickie Reznik; Abdallah, Magdey; davidoffa@sullcrom.com; congdonj@sullcrom.com; Frankel, Andy T; Linton Mann;

1

blevin@orrick.com; jansbro@orrick.com; rjacobsen@orrick.com; prugani@orrick.com; ddunne@orrick.com; dteshima@orrick.com; callsbrook@orrick.com; efua@orrick.com; Duffy, Aoife M.; mware@mayerbrown.com; ckorschun@mayerbrown.com; Trujillo-Jamison, Kenneth; Barry, Adam; amichaelson@bsfllp.com; jstern@bsfllp.com; rchan@bsfllp.com; Lee, Christopher G.; Beaman, Gregory
**Cc:** Masha Heifetz; Jisun Park; Bob Spotswood (rks@spotswoodllc.com); Mary Menge; Michael Sansbury (msansbury@spotswoodllc.com); Kristina Mentone
**Subject:** Re: SERVICE: FDIC as Receiver for Colonial Bank v. First Horizon Asset Securities Inc., et al.: Letter submission, attached

Vickie — please let us know the answer to this straightforward question.  Thank you.

James C. Rutten
Munger, Tolles & Olson LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071-3426
(213) 683-9189; (213) 683-4056 (fax)
james.rutten@mto.com

On Sep 28, 2018, at 4:33 PM, Rutten, James <James.Rutten@mto.com> wrote:

> Vickie,
>
> Please let us know by noon ET on Monday whether the FDIC or its counsel had any role in soliciting this statement of policy from the Alabama Securities Commission, or in urging it to address the issues raised therein.  Thank you.
>
> Jim
>
> ---
>
> **From:** Vickie Reznik [mailto:VReznik@graisellsworth.com]
> **Sent:** Thursday, September 27, 2018 9:34 AM
> **To:** Abdallah, Magdey; davidoffa@sullcrom.com; congdonj@sullcrom.com; Frankel, Andy T; Linton Mann; blevin@orrick.com; jansbro@orrick.com; rjacobsen@orrick.com; prugani@orrick.com; ddunne@orrick.com; dteshima@orrick.com; callsbrook@orrick.com; efua@orrick.com; Duffy, Aoife M.; mware@mayerbrown.com; ckorschun@mayerbrown.com; Rutten, James; Trujillo-Jamison, Kenneth; Barry, Adam; amichaelson@bsfllp.com; jstern@bsfllp.com; rchan@bsfllp.com; Lee, Christopher G.; Beaman, Gregory
> **Cc:** Masha Heifetz; Jisun Park; Bob Spotswood (rks@spotswoodllc.com); Mary Menge; 'Michael Sansbury (msansbury@spotswoodllc.com)'; Kristina Mentone
> **Subject:** SERVICE: FDIC as Receiver for Colonial Bank v. First Horizon Asset Securities Inc., et al.: Letter submission, attached
>
> Counsel,
> Attached please find a letter being hand-delivered to the Court today.
>
> --Vickie
>
> **Vickie Reznik**
>
> GRAIS & ELLSWORTH LLP
> 950 Third Avenue, 24th Floor
> New York, New York 10022
>
> 212 843 8632 | telephone
> 347 835 7407 | cell
> www.graisellsworth.com
> View Profile

2

# EXHIBIT 2

## STATEMENT OF POLICY THAT ISSUERS OF A PRIMARY OFFERING OF SECURITIES MAY BE CONSIDERED A SELLER WITHIN THE MEANING OF ALABAMA CODE § 8-6-19.

The Alabama Securities Commission ("ASC") has reviewed and considered the question of whether an issuer of a primary offering of securities should be considered a seller within the meaning of Alabama Code Section 8-6-19 where the form of the underwriting or distribution prevents strict privity between the issuer and buyer. The ASC has determined that, dependent upon the nature and materiality of the misrepresentation(s) or omission(s) in a registration, prospectus, or other offering materials, that issuers who are found to be responsible for the origination or use of such misrepresentations or omissions are "sellers" for purpose of this section.

The preface to the Alabama Securities Act ("Act") states that its purpose is to guard against securities fraud and to preserve legitimate capital markets. This purpose is achieved by, among others, providing civil remedies for violations of the Act, and by providing administrative, civil and criminal penalties for those who violate the Act.

Section 8-6-17(a)(2) states, "It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly, to: ...(2) Make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading...". The purpose of this section is to prohibit all fraudulent schemes in connection with a securities transaction. This is true whether the scheme or action is of a garden variety or whether the deception is novel or atypical. Atypical or novel methods should not provide immunity from the Act. *Buffo v. State,* 415 So.2d 1158 (Ala. 1982).

Further, section 8-6-19(a)(2), provides civil liability for violations of the anti-fraud provisions stating that any person who: "Sells or offers to sell a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying the security from him."

While this section creates liability for direct sales relating to any secondary sale of a security, it also creates a defense from liability if the person selling did not know of the misstatement or omission and in the exercise of reasonable care could not have known of the misstatement or omission. This circumstance may occur when the initial purchaser is himself a victim of the misrepresentation or omission. In this situation, the subsequent buyer may not have a cause of action in fraud against the person from whom he or she purchased the security in question. The section is silent on whether, in cases of immunity from liability for a secondary seller, liability would or should pass through to the previous seller or issuer, if that previous seller or issuer is the person who caused the misstatement or omission.

The immunity extended to subsequent sellers under this section is intended to protect those who are innocent of fraudulent intent, not to foreclose civil remedies to subsequent purchasers. Likewise, the section was not designed to insulate any person who makes a material misrepresentation or omission from subsequent liability just because the material misrepresentation or omission was not made directly to the person ultimately harmed. To interpret the statute in such a way would clearly create an atypical or novel immunity from prosecution for fraud under the Act.

In fact, the language of section 8-6-17(a)(2) specifically addresses such issues by providing anti-fraud liability to any person who "<u>directly or indirectly</u>" (emphasis added) makes a material misrepresentation or omission. Any argument that would interpret section 8-6-19(a)(2) to exclude indirect misrepresentations and omissions simply because the section does not specifically include the "directly or indirectly" language is defeated by the previous subsection (a)(1), which incorporates civil liability for any person who offers or sells "a security in violation of any provision" of the Act.

Based on the foregoing analysis, the ASC has determined that an issuer may be considered a seller under the Act, even in transactions for which the issuer does not have strict privity with the buyer.

Issued September 10, 2018.

_____
Joseph P. Borg, Director