ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/11/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FEDERAL DEPOSIT INSURANCE CORPORATION as receiver for Colonial Bank,

                      Plaintiff,

- against -

**FIRST HORIZON ASSET SECURITIES INC., FIRST HORIZON HOME LOAN CORPORATION, CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK SECURITIES INC., FTN FINANCIAL SECURITIES CORP., HSBC SECURITIES (USA) INC., RBS SECURITIES INC., UBS SECURITIES LLC, and WELLS FARGO ASSET SECURITIES CORPORATION,**

                      Defendants.

---

12 Civ. 6166 (LLS)

**OPINION & ORDER**

Plaintiff brought this action alleging violations of the Securities Act of 1933, Alabama Securities Act, and Nevada Uniform Securities Act for material misstatements and omissions regarding residential mortgage-backed securities. Defendant RBS Securities Inc. ("RBS") moves for partial summary judgment dismissing claims against it with respect to two securities. For the reasons that follow, the motion is granted.

## BACKGROUND

This action arises from Colonial Bank's investment in securities, or certificates, backed by residential mortgage loans. As Colonial Bank's appointed receiver, plaintiff Federal Deposit Insurance Corporation ("FDIC") brought this action on

Colonial Bank's behalf against defendants that underwrote and sold the certificates it purchased.

To create the securities, an originator first determines whether potential borrowers have sufficient credit standing and collateral to qualify for mortgage loans. A sponsor then purchases loans from the originator and transfers them to a depositor. The depositor, or issuer, transfers the loans to a trust, which sells the certificates. An underwriter purchases certificates, provides information about them and their underlying loans to potential investors, and distributes them to investors. The underwriter also prepares and files legally required disclosure documents about the certificates, such as prospectus supplements, with the Securities and Exchange Commission. When borrowers make periodic mortgage payments to the trusts, the investors are entitled to payments from the trusts' cash flow.

In more complex securitizations, the cash flow is divided into different parts called tranches, and the certificates are divided into different classes. The senior class of certificates bears the least risk and pays the lowest rate of interest. The subordinate class of certificates is the riskiest and pays the highest rate of interest.

FDIC claims that defendant RBS underwrote the certificates in three securitizations: CMALT 2007-A3, CMALT 2007-A5, and RALI 2007-QS3.[1] The two securitizations at issue in this motion are CMALT 2007-A3 and CMALT 2007-A5.

On August 21, 2007, Colonial Bank purchased a senior certificate (class 1-A-4) in the CMALT 2007-A3 securitization for approximately $46.6 million.

On August 31, 2007, Colonial Bank purchased a senior certificate (class 1-A-6) in the CMALT 2007-A5 securitization for approximately $65.2 million.

The rating of a class of certificates depends on its seniority and the riskiness of its underlying loans. At the time Colonial Bank purchased them, both certificates had the highest possible rating of AAA. On December 16, 2008, their rating was downgraded to D.

FDIC claims that RBS made untrue and misleading statements and omissions about the certificates and their underlying loans in the prospectus supplements and other offering documents.

RBS argues that it is not liable because it was not an underwriter of the CMALT 2007-A3 or CMALT 2007-A5 certificates, and moves for partial summary judgment dismissing claims against it with respect to those two certificates.

---

[1] FDIC's claims against RBS with respect to a fourth securitization, WFMBS 2007-4, were dismissed with prejudice pursuant to a Stipulation and Order dated May 2, 2019 (Dkt. No. 266).

**DISCUSSION**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 25 (2d Cir. 2015), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

RBS seeks dismissal of claims pursuant to Section 11 of the Securities Act of 1933, which gives a purchaser of a security a private right of action to sue "every underwriter with respect to such security." 15 U.S.C. § 77k(a).

> Section 11 provides the purchasers of registered securities with strict liability protection for material misstatements or omissions in registration statements filed with the SEC. The imposition of strict liability is limited, however, to statutorily enumerated parties: (1) signatories of the registration statement; (2) directors or partners of the issuer at the time of filing; (3) persons consenting to be named as about to become a director or partner; (4) accountants or other experts consenting to be named as preparing or certifying part of the registration statement; and (5) underwriters of the security at issue.

In re Lehman Bros. Mortg.-Backed Sec. Litig., 650 F.3d 167, 175 (2d Cir. 2011).

Under the Securities Act, an "underwriter" is defined as

"any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." 15 U.S.C. § 77b(a)(11).

Although both securitizations' prospectus supplements list RBS (known as Greenwich Capital Markets, Inc. at the time) as an underwriter, they specify that RBS is an underwriter of the subordinated class certificates, not the senior class certificates that Colonial Bank purchased. Rather, Credit Suisse and HSBC are named as the underwriters of the senior certificates in CMALT 2007-A3 and CMALT 2007-A5, respectively. See Mann Decl. Ex. 2 at 5:

> *Underwriters*
> Credit Suisse Securities (USA) LLC (*Credit Suisse Securities*) for the offered senior certificates, other than the ratio-stripped PO and IO class certificates, and Greenwich Capital Markets, Inc. (*Greenwich Capital*) for the ratio-stripped PO and the offered subordinated class certificates.

See also id. Ex. 3 at 5 (same text but with "HSBC" in place of "Credit Suisse"). Similarly, the prospectus supplements' Plan of Distribution states that RBS would purchase and distribute the subordinated certificates:

> Subject to the terms and conditions of the underwriting agreement between Credit Suisse Securities, Citigroup and CMSI, and the underwriting agreement between Greenwich Capital, Citigroup and CMSI, Credit Suisse Securities as underwriter, will purchase the offered senior certificates

-5-

> (other than the ratio-stripped PO and IO class certificates)
> and Greenwich Capital as underwriter will purchase the ratio-
> stripped PO and the offered subordinated class certificates
> from CMSI upon issuance.
>
> Credit Suisse Securities has committed to purchase all the
> offered senior certificates (other than the ratio-stripped PO
> and IO class certificates), and Greenwich Capital has
> committed to purchase all the ratio-stripped PO and the
> offered subordinated certificates, if any certificates are
> purchased. Credit Suisse Securities will distribute the
> offered senior certificates (other than the ratio-stripped PO
> and IO class certificates), and Greenwich Capital will
> distribute the ratio-stripped PO and the offered subordinated
> certificates, from time to time in negotiated transactions or
> otherwise at varying prices to be determined at the time of
> sale.

Id. Ex. 2 at 29; see also id. Ex. 3 at 39 (same text but with "HSBC" in place of "Credit Suisse").

Additionally, the Subordinated Underwriting Agreement between RBS and Citicorp Mortgage Securities, Inc. ("CMSI"), the issuer of the securities, names RBS as the "Subordinated Underwriter." The agreement states, "CMSI agrees to sell to the Subordinated Underwriter, and the Subordinated Underwriter agrees to purchase from CMSI, all of the class A-PO and offered class B certificates at the purchase price set forth in Schedule I." Id. Exs. 6, 7 at 1.[2]

RBS is not a party to the two separate Senior Underwriting Agreements between (1) CMSI and Credit Suisse as "Senior

---

[2] FDIC argues that a provision indemnifying RBS against claims arising from breaches of warranties given by CMSI demonstrates that RBS is liable for the entire securitization. However, that provision is found in the Subordinated Underwriting Agreements, which refer only to the subordinated certificates, not the senior certificates.

-6-

Underwriter" and (2) CMSI and HSBC as "Senior Underwriter," which state, "CMSI agrees to sell to the Senior Underwriter, and the Senior Underwriter agrees to purchase from CMSI, all of the offered senior certificates at the purchase price set forth in Schedule I." Id. Exs. 4, 5 at 1.

FDIC argues that RBS's liability as an underwriter is not limited to the tranche or class of subordinated certificates. However, the right to sue that Section 11 gives a purchaser of a security is to sue "every underwriter with respect to such security," 15 U.S.C. § 77k(a), or "underwriters of the security at issue," Lehman, 650 F.3d at 175. That right does not encompass suing every underwriter with respect to the entire securitization and each of its securities. See Asset-Backed Securities, 69 Fed. Reg. 26650-01, 26688 n.212 (May 13, 2004) ("in the case of a multi-tranche registered offering of asset-backed securities, each tranche would be treated as a different security."); Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp., No. 08 Civ. 1713 (ERK), 2012 WL 601448, at *7 n.8 (E.D.N.Y. Feb. 23, 2012) ("There is no question that an offering's tranches are financially interrelated, but there is also no question that each tranche is a discrete security."). The only securities at issue here are the two senior certificates Colonial Bank purchased, which RBS did not purchase, offer, sell, or

distribute.[3]

FDIC also argues that even though RBS did not directly purchase or sell the senior certificates, RBS is still an underwriter as defined under the Securities Act because of its "direct or indirect participation" in the distribution of the senior certificates. 15 U.S.C. § 77b(a)(11).

> Persons may be liable for participation even though they did not themselves directly sell or offer securities or purchase securities for resale. For example, defendants might "participate" in underwriting by referring investors to sellers or offerors for a fee, cf. Sirianni v. SEC, 677 F.2d 1284, 1287 (9th Cir. 1982); organizing selling efforts, cf. Geiger v. SEC, 363 F.3d 481, 487 (D.C. Cir. 2004) (concluding defendant participated in distribution of unregistered securities by finding buyer, negotiating terms, and facilitating resale); SEC v. Int'l Chem. Dev. Corp., 469 F.2d 20, 31 (10th Cir. 1972) (concluding defendant participated in distribution of unregistered securities by role in publicizing company and interacting with transfer agent); or acting as an intermediary in a purchase of securities for resale.

Lehman, 650 F.3d at 181 n.10. "While such participation may be indirect as well as direct, the statute does not reach further to identify as underwriters persons who provide services that facilitate a securities offering, but who do not themselves participate in the statutorily specified distribution-related activities." Id. at 176.

FDIC argues that RBS participated in the distribution of the certificates by performing due diligence on the loans

---

[3] Although the court denied RBS's motion to dismiss in its September 26, 2013 Opinion and Order, it did not rule on whether RBS's underwriter liability was limited to a particular tranche. See Dkt. No. 86 at 26 ("At this stage of litigation, it is premature to decide this issue as matter of law.").

-8-

backing the certificates in the securitization, verifying the accuracy of the statements in the prospectus supplements, asking accountants to perform procedures on the prospectus supplements, obtaining counsel's opinions on the prospectus supplements, and approving the prospectus supplements' final content. Because many of the loans backing the senior certificates are the same as those backing the subordinated certificates, FDIC argues that RBS's contribution to the securitizations was not limited to the subordinated certificates.

Although RBS's performance of due diligence and review of the prospectus supplements helped facilitate the securities offerings, those activities do not involve the purchase, offer, or sale of the securities and thus are not part of their distribution. RBS's only distributional activities are in connection with the subordinated certificates. See Silvercreek Mgmt., Inc. v. Citigroup, Inc., 346 F. Supp. 3d 473, 509-10 (S.D.N.Y. 2018) (holding that Credit Suisse was an underwriter because it "sold Zero Notes directly to Plaintiffs," but dismissing section 11 claims against Deutsche Bank because its activities of "allowing itself to be identified as an initial purchaser in the registration statement, allowing its name to be featured on the front page of the initial private offering memorandum, and obtaining the right to conduct due diligence into the notes as part of the preparation of the registration

statement" did not make it an underwriter); Lehman, 650 F.3d at 184 ("we reject Wyoming's claim that the Rating Agencies' alleged review of and comments on draft prospectus supplements incorporated into the registration statements stated a § 11 claim. Similarly, we reject the Union Plaintiffs' conclusory pleading that S & P and Moody's are liable under § 11 for their alleged participation in drafting and disseminating offering documents.").

FDIC further argues that RBS participated in the underwriting of the senior certificates because its actions were essential to the distribution of the certificates to Colonial Bank. Specifically, FDIC contends that RBS's purchase, offer, and sale of the subordinate certificates "were a condition to the closing of the CMALT transactions," and thus "the senior certificates that Colonial Bank bought would never have been offered without RBS's participation." Pl. Br. at 11. "In addition, the collateral underlying the subordinate certificates, and the credit protection they provided, was material to investors like Colonial Bank when buying the senior certificates." Id. at 11-12. Even if those statements are true, those relationships are not part of the purchase, offer, or sale of the senior certificates. See Lehman, 650 F.3d at 177-78 ("plaintiffs submit that any persons playing an essential role in a public offering—including the Rating Agency

defendants—may be liable as underwriters. We disagree . . . Rather, Kern[4] is fairly construed to instruct that persons playing roles essential in the actual distribution of securities qualify as underwriters.").

> The fact that the market needed ratings to understand structured financial products or that particular ratings were essential to the certificates' eventual sale does not change the analysis. While it is certainly true that some investors will refrain from buying securities that do not bear a AAA rating, and that some banks will decline to assume the risk of pursuing a public offering unless a security receives a high credit rating, plaintiffs, once again, fail to demonstrate that the Rating Agencies were involved in a statutorily listed distributional activity.

Id. at 183.

Accordingly, there is no genuine issue whether RBS is an underwriter of the senior certificates at issue: it is not.

## CONCLUSION

RBS's motion for partial summary judgment (Dkt. No. 293) dismissing claims against it with respect to the CMALT 2007-A3 and CMALT 2007-A5 certificates is granted.

So ordered.

Dated:   New York, New York
         March 11, 2020

                                         *Louis L. Stanton*
                                         LOUIS L. STANTON
                                         U.S.D.J.

---

[4] "Congress enacted a broad definition of underwriter status in order to 'include as underwriters all persons who might operate as conduits for securities being placed into the hands of the investing public.'" S.E.C. v. Lybrand, 200 F. Supp. 2d 384, 393 (S.D.N.Y. 2002), aff'd, S.E.C. v. Kern, 425 F.3d 143 (2d Cir. 2005) (emphasis added) (quoting Thomas Lee Hazen, The Law of Securities Regulation 431 (4th Ed. 2002)).