UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────
│ FEDERAL DEPOSIT INSURANCE
│ CORPORATION AS RECEIVER FOR COLONIAL
│ BANK,
│                        Plaintiff,
│
│             – against –
│
│ FIRST HORIZON ASSET SECURITIES INC.
│ FIRST HORIZON HOME LOAN CORPORATION,
│ CREDIT SUISSE SECURITIES (USA) LLC,
│ DEUTSCHE BANK SECURITIES INC., FTN
│ FINANCIAL SECURITIES CORP., HSBC
│ SECURITIES (USA) INC., RBS
│ SECURITIES INC., UBS SECURITIES LLC,
│ and WELLS FARGO ASSET SECURITIES
│ CORPORATION,
│                        Defendants.
└─────────────────────────────────────
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/3/23

12 Civ. 6166 (LLS)

OPINION AND ORDER

Plaintiff Federal Deposit Insurance Corporation, as Receiver for Colonial Bank, brought this action in connection with the purchase of securities that were issued or underwritten by defendants. Plaintiff filed this motion for partial summary judgement in support of its standing to sue defendants for violations of state and federal securities laws. Defendants NatWest Markets Securities Inc., formally known as RBS Securities Inc., and Credit Suisse Securities, LLC[1] (together "defendants") brought a cross motion for partial summary judgement challenging plaintiff's standing to sue defendants.

_____

[1] On July 14, 2022, plaintiff and defendant Credit Suisse Securities, LLC entered into a stipulation whereby all claims brought against Credit Suisse were dismissed with prejudice. (Dkt. No. 406). This court so ordered the dismissal the following day. (Dkt. No. 407).

For the following reasons, plaintiff's motion is granted, and defendants' cross motion is denied.

Facts

The court presumes the parties' familiarity with the case's facts and procedural history and will only recount the facts related to this decision. This case arises from CBG Investments, Inc.'s ("CBGI") purchase of residential mortgage-backed securities ("RMBS"), which was allegedly premised on false and misleading statements in the offering documents, underwritten or issued by the defendants in this case.

In 1999, Colonial Bank, an Alabama corporation, formed CBGI as a wholly owned subsidiary. Defendants' Response to plaintiff's 56.1 Statement (Dkt. No. 394) at ¶ 2. CBGI, a Nevada corporation, was created to purchase, trade, manage, and hold securities for Colonial Bank in its own name, in order to confer tax benefits provided in Nevada. Plaintiff's Response to defendants' 56.1 Statement (Dkt. No. 404) at ¶¶ 2-3. In carrying out these duties, CBGI bought the RBMS at issue from defendants in 2007. Id. at ¶ 13.

On March 23, 2009, CBGI dissolved and transferred all of its assets to Colonial Bank through a unanimous written consent. Id. at ¶27; Ex. 66 to Park Dec. (Dkt. No. 376-66). The unanimous written consent states,

2

> The board of directors and the sole shareholder find
> it is in the best interest of the Company to adopt a
> plan of complete liquidation and thereby distribute
> all of the assets of the company in [sic] the sole
> shareholder, Colonial Bank. In accordance with this
> finding, the Board of Directors and the sole
> shareholder do hereby declare a complete plan of
> liquidation by which all assets of the Company shall
> be distributed to the sole shareholder, Colonial Bank.
> Mark Daigle, Brent Hicks, David Reimer, Kamal Hosein
> and any other officer of the Company are hereby each
> individually authorized and directed to execute such
> documents, instruments, and contracts as said officer
> deems necessary to consummate the liquidation and
> distribution of the assets to the sole shareholder,
> Colonial Bank.

Ex. 66 to Park Dec. (Dkt. No. 376-66). The next day, Kamal

Hosein executed a certificate of dissolution for CBGI,

which was filed with the Nevada Secretary of State on April

9, 2009. Plaintiff's Response to defendants' 56.1 Statement

at ¶¶30, 33.

In August 2009, the Alabama State Banking Department

closed Colonial Bank, and plaintiff Federal Deposit Insurance

Corporation ("FDIC" or "plaintiff") was appointed Colonial

Bank's Receiver. Defendants' Response to plaintiff's 56.1

Statement (Dkt. No. 394) at ¶ 1. As Colonial Bank's Receiver,

FDIC succeeds to all rights of Colonial Bank against third

parties. Id.

Standing in the shoes of Colonial Bank, FDIC filed a second

amended complaint (Dkt. No. 178) alleging violations of Section

8-6-19(a) of the Alabama Securities Act (the "ASA") and Section 11 of the Securities Act of 1933 ("Section 11"). Id.

Plaintiff and defendants filed cross motions for partial summary judgment (Dkt Nos. 373 and 390) on FDIC's standing to sue for violations of the ASA and Section 11.

Legal Standards

Summary judgment is warranted if, based upon admissible evidence, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

"Nevertheless, the non[-]moving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Joseph v. N. Shore Univ. Hosp., 473 F. App'x 34, 36 (2d Cir. 2012) (quoting Shannon v. N.Y. City Transit Auth., 332 F.3d 95, 99 (2d Cir.2003)) (internal citations omitted) (alterations in the original).

In relevant part, Section 8-6-19(a)(2) of the ASA provides,

> Any person who sells or offers to sell a security by
> means of any untrue statement of a material fact or
> any omission to state a material fact necessary in
> order to make the statements made, in the light of the
> circumstances under which they are made, not
> misleading, the buyer not knowing of the untruth or
> omission, and who does not sustain the burden of proof
> that he did not know and in the exercise of reasonable
> care could not have known of the untruth or omission,
> is liable to the person buying the security from him
> who may bring an action to recover the consideration
> paid for the security, together with interest at six
> percent per year from the date of payment, court costs
> and reasonable attorneys' fees, less the amount of any
> income received on the security, upon the tender of
> the security, or for damages if he no longer owns the
> security.

Section 8-6-19 of the ASA is a strict liability statute, and a plaintiff need not show that a defendant had a "'reckless disregard' for the truth of a representation or that such representations were 'knowingly' made." Banton v. Hackney, 557 So. 2d 807, 826 (Ala. 1989).

In relevant part, Section 11 of the Securities Act of 1933 provides,

> any person acquiring such security (unless it is
> proved that at the time of such acquisition he knew of
> such untruth or omission) may, either at law or in
> equity, in any court of competent jurisdiction, sue
> [the persons liable. If after the issuer has meanwhile
> produced a 12-month earnings statement, the plaintiff
> must prove reliance on the registration statement.]

> 15 U.S.C.A. § 77k (West).

Discussion

FDIC argues that there are three bases on which it has
standing to sue on behalf of Colonial Bank: (1) CBGI[2] transferred
its legal claims to Colonial Bank when it executed the unanimous
written consent, (2) CBGI *de facto* merged with Colonial Bank,
its only shareholder when it dissolved, and (3) Colonial Bank is
a statutory purchaser under the law.

FDIC has standing because CBGI transferred its legal claims
against defendants to Colonial Bank through its unanimous
written consent. We need not weigh the other arguments.

As a preliminary defense, defendants contend that under
Nevada common law personal claims, such as tort claims, are
unassignable. Defs. Mot. at 8. That is true with respect to some
claims, but not these.

The Supreme Court of Nevada addressed which type of legal
claims are assignable in Reynolds v. Tufenkjian. 136 Nev. 145,
153-54 (2020). Reynolds held that "purely personal claims," such
as claims for emotional suffering, are unassignable. Id. But
claims for pecuniary relief, such as claims for negligent
representation, are assignable. Id. As that court held, "a
determination of whether a cause of action is assignable should

---

[2] The parties agree that CBGI would have standing to bring the
claims. Defendants Mot. for Summary Judgment ("Defs. Mot.") at
23.

6

be based upon an analysis of the nature of the claim to be assigned and on an examination of the public policy consideration that would be implicated if assignment were permitted." Id at 151-52.

CBGI's claims for violations of the ASA and Section 11 are assignable. The underlying allegations of the claims resulted in pecuniary loss and arise from a loss of property, namely what was paid for the RMBS based on the misleading statements. The nature of the claim does not arise from personal injury, such as physical or emotional harm. The assignment therefore does not implicate the public policy concerns limiting the assignability of purely personal claims.

The claims here resemble claims for negligent misrepresentation, which are assignable under Reynolds. The claims are premised on alleged misrepresentations, and the underlying principles support much common law respecting the tort of misrepresentation. See Omnicare, Inc. v. Laborers Dist. Council Construction Indus. Pension Fund, 575 U.S. 175, 191 ("These principles are not unique to § 11: They inhere, too, in much common law respecting the tort of misrepresentation.").

Defendants argue that the unanimous written consent did not effectuate a transfer of legal claims because the term "assets," as used in the unanimous written consent, was not defined to include legal claims and the individuals it named did not take

further steps to effectuate the transfer. Defs. Mot. at 11-16.
Those imaginative arguments are unsustainable.

The language of the unanimous written consent signed by
CBGI board members is unambiguous: "the Board of Directors and
the sole shareholder do hereby declare a complete plan of
liquidation by which all assets of the Company shall be
distributed to the sole shareholder, Colonial Bank." Ex. 66 to
Park Dec. (Dkt. No. 376-66). As stated by the Circuit Court in
Alabama, "the language 'all assets' is sufficiently broad to
include any legal claims belonging to CBGI." FDIC as Receiver
for Colonial Bank v. Credit Suisse Firt Boston Mortgage Secs.
Corp., et al. 03-cv-2012-901035.00 at 3 (Circuit Court of
Montgomery Cty., Ala. July 20, 2016).

Kamal Hosein executed a Certificate of Dissolution of CBGI
the following day, Ex. 71 to Park Dec. (Dkt. No. 376-71), and
Brent Hicks testified that he believed no further action was
necessary to effectuate the transfer. Ex. 16 to Park Dec. (Dkt.
No. 376-16).

The unanimous written consent transferred CBGI's legal
claims to Colonial Bank, providing to the FDIC ample standing,
as Colonial Bank's Receiver, to bring claims for violations of
the ASA and Section 11 against defendants.

Conclusion

Plaintiff's motion for partial summary judgement is granted, and defendants' cross motion for partial summary judgement is denied.


So ordered.

Dated:     New York, New York
           February 3, 2023

*Louis L. Stanton*

LOUIS L. STANTON
U.S.D.J.